# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

KAYLYN APPLEGATE, ROBIN BANKS,
KRISTINA BARGA, CINDY BISHOP,
DONNA JO BOWLES, JOSIE BROWN,
DONNA BRYANT, MOLLY BUEHLER,
ROBIN BURNS, SAMANTHA CASSIDY,
ROBERT CLEMENTS, JENNIFER
COLLINS, RHONDA DAVIS, CHAD
DENNEY, PATRICIA DRONE-
MCCULLOUGH, ERIKA FOWLER,
PATRICK FOWLER, DR. JOSHUA
FREDERICK, RICHARD FULKERSON,
MARZENA GASLAWSKI, DONNA
GRANT, TRACEY HARBAUGH, BRENDA
HARTMAN, KAREN HERSH, GARY
HIGGINBOTHAM, MATT HORNE,
SARAH HORNER, BRANDY KEHRT,
HEATHER KING, MADISON KUHN,
MICHELLE LANDIS, CECILIA LESCH,
TERESA LESCH, JENNIFER MAUPIN,
JOSHUA MILLER, TIFFANY MILLER,
BETHANY MONTE, MONICA NALLEY,
STEVEN OHLHEISER, SUSANA
OSBORNE, CHRIS PARR, JEMAEL
PARTLOW, AMANDA PISANO, ASHLEY
PLOUGHE, BARBARA PLUHAR,
MONICA POOLE, LEISA RANDALL,
TERESA RIDLEN, BONNIE RIPBERGER,
ROCHELLE ROTT, ROBERT RUNGE,
TINA SNEED, DANIELLA STAFFORD,
LISA STULTS, KERI STULTZ, DELLA
TAYLOR, AMANDA THIERGARTNER,
MILICA VRANIC, LISA WEBB, ALAYNAH
WEISEND, VICTORIA WILLOUR, JODI
WOLFENBARGER, ANDREW
ZENTHOFER, AND JUSTON
ZENTHOFER on behalf of Themselves
and all those similarly situated,

       **Plaintiffs,**

Cause No. 1:22-cv-1097

**vs.**

**ST. VINCENT HEALTH, INC.,
ST. JOSEPH HOSPITAL & HEALTH
CENTER, INC., ST. MARY'S HEALTH,
INC., ST. MARY'S MEDICAL GROUP,
LLC, ST. MARY'S WARRICK HOSPITAL,
INC., ST. VINCENT ANDERSON
REGIONAL HOSPITAL, INC.,
ST. VINCENT CARMEL HOSPITAL, INC.,
ST. VINCENT DUNN HOSPITAL, INC.,
ST. VINCENT FISHERS HOSPITAL, INC.,
ST. VINCENT HEART CENTER OF
INDIANA, LLC, ST. VINCENT HOSPITAL
AND HEALTH CARE CENTER, INC.,
ST. VINCENT HOSPITAL AND HEALTH
CARE CENTER, INC. D/B/A WILLIAM K.
NASSER, MD, HEALTHCARE
EDUCATION AND SIMULATION
CENTER, ST. VINCENT HOSPITAL AND
HEALTH CARE CENTER, INC. D/B/A
ASCENSION HEALTH ST. VINCENT
STRESS CENTER, ST. VINCENT
HOSPITAL AND HEALTH CARE
CENTER, INC. D/B/A ASCENSION
HEALTH ST. VINCENT WOMEN'S
HEALTH BOUTIQUE, ST. VINCENT
MEDICAL GROUP, INC., ST. VINCENT
SETON SPECIALTY HOSPITAL, INC.,
ST. VINCENT WILLIAMSPORT
HOSPITAL, INC., ASCENSION HEALTH,
INC., ASCENSION HEALTH-IS, INC.,
ASCENSION HEALTH MINISTRY
SERVICE CENTER, LLC; AND MEDXCEL
FACILITIES MANAGEMENT, LLC.**

**Defendants.**

## CLASS ACTION COMPLAINT FOR DAMAGES AND
## DEMAND FOR JURY TRIAL[1]

---

[1] As this is a related case, Plaintiffs are utilizing many of the same Exhibits previously submitted in *Paul Halczenko, et al. v. Ascension Health, Inc., and St. Vincent Hospital and*

*"Title VII does not contemplate asking employees to sacrifice their jobs to observe their religious practices."*

***Adeyeye v. Heartland Sweeteners, LLC***, 721 F.3d 444, 456 (7th Cir. 2013)

## **INTRODUCTION**

1.      This is a class action brought under Title VII of the Civil Rights Act of 1964, (Pub. L. 88-352), codified at 42 U.S.C. § 2000e et seq. ("Title VII") to remedy a pattern of religious discrimination by the nation's second largest hospital operator, Ascension Health, Inc. ("Ascension Health") against employees who requested religious accommodations from Ascension Health's mandate that its employees and the employees of Ascension Health's affiliates receive the COVID-19 vaccine.

2.      Like many hospital operators, Ascension Health announced in July 2021 that it intended to implement a COVID-19 vaccination mandate for its employees.

3.      Unlike other hospital operators, however, and contrary to its obligations under Title VII, Ascension Health established a religious exemption

---

*Health Care Center, Inc., d/b/a Ascension Health St. Vincent Hospital*, Cause No. 1:21-cv-2816-JPH-MG, specifically those exhibits identified in the Appendix of Exhibits [Dkt. 9 at 2-8], Supplemental Appendix of Exhibits [Dkt. 38 at 1-3], and the Second Supplemental Appendix of Exhibits [Dkt. 48 at 1-2]. Moreover, Plaintiffs have utilized the same numbering convention of those Exhibits found in the Appendix of Exhibits [Dkt. 9 at 2-8], Supplemental Appendix of Exhibits [Dkt. 38 at 1-3]-, and the Second Supplemental Appendix of Exhibits [Dkt. 48 at 1-2]. For any new Exhibits, Plaintiffs have continued with the numbering sequence of those Exhibits found in the Second Supplemental Appendix of Exhibits [Dkt. 48 at 2], commencing with Exhibit 121.

Plaintiffs' Exhibits referenced in this Complaint are submitted in the contemporaneously filed Appendix and cited to herein as Appendix Number and Page Number (**App. # at _____).**

review process which failed to individually and properly assess each application for religious exemption.

4.    Instead, Ascension Health established a coercive process calculated to force healthcare workers and staff to abandon their religious objections to the COVID-19 vaccination and receive the vaccination against their will.

5.    Ascension Health's pressure tactics involved delaying final decisions on requests for religious exemptions and denying applications for exemption within time frames that gave applicants little time after denial to consider options other than vaccination, among other things.

6.    Ascension Health's review process ran many employees to within a week or two of Ascension Health's arbitrary deadline for vaccination before informing them their application for religious exemption had been finally and conclusively denied.

7.    In early November when Ascension Health informed most employees requesting religious exemptions that their requests for exemptions from Ascension Health's vaccine mandate were finally denied, that they would be suspended without pay on November 12, 2021, and would be considered to have "voluntarily resigned" (i.e., they would be terminated) on January 4, 2022, if still unvaccinated by that date.

8.    Ascension Health's actions were calculated to, and did, put enormous pressure on thousands of healthcare workers to abandon their sincerely held religious beliefs and receive a COVID-19 vaccine.

9.      In many of these cases, Ascension Health's sole explanation for its denial of religious exemptions was a single sentence emailed to each requester:

10.     Due to the nature of your role, approving this accommodation poses undue hardship to the organization *due to increased risk to the workplace and patient safety*.[2]

11.     This robotic explanation given by Ascension Health to applicants for religious exemption was pretextual and symptomatic of Ascension Health's failure to consider reasonable accommodations or to properly assess and establish "undue hardship" violated Title VII.

12.     Interestingly, even employees in fully remote positions were simply informed:

> Your Religious Exemption for Covid Vaccine has been denied. Your exemption request will be reported to Associate and Occupational Health as denied, and you will be expected to comply with the vaccination requirement by November 12, 2021.[3]

13.     Ascension Health's actions left Plaintiffs with the extremely difficult (and what many would ultimately learn had been a contrived, false, and

---

[2] *See, e.g.*, 9.28.2021 Email from **Service Desk <**ascensionprod@service-now.com to KJBlanto@ascension.org; Amanda.Thiergartner@ascension.org, Subject: Religious Exemption for COVID Vaccine Submitted (**App. 122 at 1**) (Indiana). (*See also* Picchiottino Decl. ¶ 36, (**App. 81 at 8**) (Wisconsin); Brezillac Aff. ¶ 36, (**App. 77 at 7**) (Oklahoma); "Catholic Hospital Rejects 650 Workers' Religious Exemptions from the COVID Vaccine Mandate," *Christianity Daily* (Oct. 13, 2021) (**App. 25 at 1-9**) (reflecting Michigan associates were given the same justification for denials of their exemptions as associates in Indiana, Oklahoma and Wisconsin).

[3] *See, e.g.*, 11.2. 2021 and 11.9.2021 Emails from **Service Desk <**ascensionprod@service-now.com to stuart.cryder@ascension.org, Brenda.Hartman@ascension.org, Subject: The Religious Exemption for COVID Vaccine request is denied for Hartman, Brenda Kay Submitted (**App. 123 at 1 and App. 124 at 1**) (Indiana).

duplicitous) choice of either taking the COVID-19 vaccine, at the expense of their religious beliefs or losing their livelihoods.

14.    In doing so, Ascension Health violated Title VII by, among other things: failing to provide reasonable accommodations, refusing to follow federal law in assessing religious exemptions, and suspending without pay thousands of employees whose religious convictions would not permit them to receive the COVID-19 vaccines.

15.    On November 12, 2021, Plaintiffs and numerous similarly situated St. Vincent Health, Inc. ("St. Vincent Health") employees and other Ascension Health healthcare workers and staff were suspended without pay in violation of Title VII merely for exercising their Title VII right to seek religious exemptions to Ascension Health's vaccine mandate. All employees denied religious exemptions and suspended were told they would be terminated on January 4, 2022, if they did not submit to vaccination before then.

16.    Ascension Health's and St. Vincent Health's violations of Title VII caused healthcare workers and staff to face the stressful and discouraging prospect of immediate loss of income just before the holiday season and imminent loss of employment at the outset of the new year.

17.    Ascension Health maintained its illegal, coercive, suspension without pay program for more than a month from November 12, 2021, through at least December 17, 2021, during which time Plaintiffs and other St. Vincent Health and

Ascension Health healthcare workers and staff who had sought religious exemptions were not permitted to work and were not paid.

18.     During this time, Ascension Health faced legal pushback as hundreds of healthcare workers filed Equal Employment Opportunity Commission (EEOC) charges of religious discrimination against Ascension Health and St. Vincent Health. Also, during November a number of lawsuits were filed against Ascension Health around the country, including the lawsuit filed in *Dr. Paul Halczenko, et al. v. Ascension Health, Inc., and St. Vincent Hospital and Health Care Center, Inc., d/b/a Ascension Health St. Vincent Hospital,* Cause No. 1:21-cv-2816-JPH-MG.

19.     Overreaching vaccine mandates such as Ascension Health's mandate also induced legislative initiatives in several states which sought to equip employees with additional protections against discriminatory conduct.

20.     Additionally, Ascension Health and St. Vincent Health faced shortages of healthcare workers and staff in many locations as Ascension Health's and St. Vincent Health's failure to follow federal employment law and their arbitrary suspensions of employees seeking religious exemptions resulted in putting patients at risk and diminishing the quality of healthcare Ascension Health was able to provide.

21.     Ascension Health and St. Vincent's religious exemption process created a crisis of conscience causing those denied exemptions to unfairly and improperly choose between following their faith and losing their job.

22.     Under pressure of loss of income and impending loss of his job, Plaintiff Patrick Fowler, who had sought religious exemption relented and received the vaccination against his conscience. Similarly, Plaintiff Robert Runge, who had sought religious exemption relented and received the first dose of the vaccination against his conscience.

23.     However, Ascension Health's unlawful actions and pressure tactics were ultimately not enough to force a sufficient number of those with religious objections to Ascension Health's vaccine mandate to capitulate and be vaccinated against their religious beliefs.

24.     Consequently, Ascension Health recognized that it would need to reverse course on its widespread and unlawful refusal to properly assess religious exemption requests and its suspensions of many employees who had sought them.

25.     Beginning on or about December 17, 2021, Ascension Health and St. Vincent Health began informing many previously suspended unvaccinated employees whose religious exemptions had been denied that they could return to work with no restrictions beyond those imposed on vaccinated employees.

26.     Nevertheless, not all employees denied a religious exemption and suspended without pay were brought back in December. Some were not brought back until later. Still others, were never brought back.

27.     The fact that hundreds of St. Vincent Health employees and thousands of previously suspended Ascension Health healthcare workers and staff were contacted and told that they could return to work with no additional restrictions

just over a month after they were suspended without pay for not being vaccinated demonstrates that Ascension Health's robotic claim that these individuals were denied religious exemptions due to "risk" to the workplace and others was false and pretextual.

28.     Ascension Health has identified no change in "risk" related factors that supported its decision to bring back those whose religious exemptions had previously been allegedly denied solely on the basis of increased risk.

29.     Ultimately, while many Plaintiffs in this case were called back to work, Ascension Health has refused to issue backpay to each of these Plaintiffs, and others similarly situated, for the approximately six-to-fifteen week period (depending on each individual's precise circumstances regarding a return to work) that they were suspended without pay.

30.     Although many Plaintiffs were recalled to work, the below four (4) Plaintiffs with written contracts were not:

> (a)     Adult-Gerontology Acute Care Nurse Practitioner-Board Certified ("AGACNP-BC") Jennifer Maupin;
>
> (b)     Certified Nurse Midwife ("CNM") Bethany Monte;
>
> (c)     Nurse Practitioner ("NP") Daniella Stafford; and
>
> (d)     Advanced Nurse Practitioner ("ANP") Alaynah Weisend.

31.     AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend each received a letter either via certified mail or hand delivery regarding their employment status at St. Vincent Health.

32.     On December 20, 2021, AGACNP-BC Maupin received a letter via certified mail and electronic mail from Terry Metzger, Chief Operating Officer, Ascension Health St. Vincent. Mr. Metzger's letter stated that AGACNP-BC Maupin's employment with St. Vincent Health was being "terminated effective December 20, 2021."

33.     Thus, St. Vincent Health and St. Vincent-Indianapolis claims it was entitled to place AGACNP-BC Maupin on unpaid suspension on November 12, 2021, but not terminate her employment until December 20, 2021, requiring AGACNP-BC Maupin to serve a thirty-nine (39) day period of unpaid suspension before terminating her employment and purporting to extend her covenant not to compete until one year after the December 20, 2021 termination date set forth in Mr. Metzger's letter.

34.     On January 21, 2022, CNM Monte received a letter via certified mail from Mr. Metzger. Mr. Metzger's letter stated that Monte's employment with St. Vincent Health was being "terminated effective January 22, 2022."

35.     Thus, St. Vincent Health and St. Vincent Medical Group claims it was entitled to place CNM Monte on unpaid suspension on November 12, 2021, but not terminate her employment until January 22, 2022, requiring CNM Monte to serve a seventy-two (72) day period of unpaid suspension before terminating her and purporting to extend her covenant not to compete until one year after the January 22, 2022 termination date set forth in Mr. Metzger's letter.

36.     On November 19, 2021, NP Stafford received a letter via certified mail and electronic email from Mr. Metzger stating that NP Stafford was in breach of her employment agreement with St. Vincent Health and St. Vincent Medical Group. Specifically, Mr. Metzger's letter stated that NP Stafford must receive and provide proof of the initial dose of either the (i) Pfizer or Moderna vaccines within ten (10) days of the letter and the second dose within the recommended timeframe or (ii) a single dose of the Johnson & Johnson vaccine within ten (10) days of the letter, or her "employment w[ould] be terminated for cause as provided in [her] Agreement."

37.     On November 29, 2021, NP Stafford urged St. Vincent Health and St. Vincent Medical Group to reconsider her religious exemption and allow her to continue to serve the community.

38.     Over two hundred days later, NP Stafford has yet to be provided any written response to her request to reconsider her request for religious exemption. On or about December 21, 2021, NP Stafford sought to ascertain information as to whether she would be permitted to return to work and was told in a telephone call to Human Resources that she was allegedly terminated on December 20, 2021. However, NP Stafford has received no written notice of termination. She has not been paid nor permitted to work though her employment contract, despite not being terminated.

39.     Additionally, while ANP Weisend was temporarily recalled on December 26, 2021, nineteen (19) days later, on January 14, 2022, she was terminated. ANP Weisend was hand delivered a letter from Brad McNabb, Chief

Operating Officer, Ascension Health Medical Group stating that "Ascension Health Medical Group St. Vincent Health has made the difficult decision to eliminate your position due to a reduction in force affecting your department. This position elimination within your department is expected to be permanent and will result in the termination of your employment."

40.     In Mr. McNabb's letter, he stated that ANP Weisend's last date of work would be January 21, 2022. However, her effective termination date would not be until eighty-three (83) days later on April 14, 2022.

41.     Thus, St. Vincent Health and the St. Vincent Medical Group claims that it was entitled to place ANP Weisend on unpaid suspension twice. The first instance being on November 12, 2021 then again on January 21, 2022, requiring ANP Weisend to serve a total unpaid suspension of 183 days before terminating her and extending her covenant not to compete until one year after the April 14, 2022 termination date set forth in Mr. McNabb's letter. On information and belief, there was no reduction in force and this was not an accurate reason for ANP Weisend's termination.

42.     Neither St. Vincent Health nor Ascension Health has provided any explanation for the disparate treatment of AGACNP-BC Maupin, CNM Monte, NP Stafford or ANP Weisend. There is no apparent explanation for this disparate treatment other than retaliation against AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend for asserting their Title VII rights.

43. AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend have not been compensated for the wages lost during their period of unpaid suspension.

44. In each case where St. Vincent terminated an employee's written contract for not submitting to Ascension Health's demand that they be vaccinated, St. Vincent vindictively sought to prevent the employee from being employed elsewhere by seeking to enforce the employee's covenant not to compete, despite having little to no legitimate business interest in enforcing the covenant not to compete.

45. On information and belief, unvaccinated individuals who sought religious exemptions and have been terminated by Ascension Health and St. Vincent Health have been replaced by vaccinated individuals.

46. In each case, the terminated employee was meeting the legitimate performance expectations of their employer and the reason for their termination was their application for religious exemption.

### BRIEF OVERVIEW OF PLAINTIFFS' KEY CLAIMS AND CONTENTIONS UNDER TITLE VII

47. The development of the COVID-19 vaccines was a groundbreaking scientific, medical, and logistical wonder. It is therefore a tragic irony that one of the groundbreaking scientific breakthroughs of all time was aggressively relied upon by Ascension Health–one of the nation's largest healthcare employers–to justify a sweeping disregard of long-standing statutory commands regarding how

employers are to balance health and safety concerns with the rights of their employees.

48.     Simply, under Title VII if an employee seeks a religious accommodation American employers cannot summarily impose employer-preferred workplace rules which abridge an employee's sincerely held religious beliefs without genuine and good-faith dialogue and consideration of proposed accommodations and objective evidence.

49.     Here, Ascension Health upended Title VII's requirements and sought to capitalize on the COVID-19 vaccines' existence as justification to run rough-shod over its legal obligations and summarily suspend without pay, and threaten with termination, scores of employees.

50.     The paucity of evidence and reasoning Ascension Health has offered to justify trammeling its employees' religious rights is appalling. Ascension Health, like many healthcare employers, hailed its employees as "healthcare heroes"[4] throughout the early pandemic period because they risked their lives to fill a critical need; yet overnight they became expendable without Ascension Health providing them any explanation, data or metrics that could justify such an about-face.

51.     Ascension Health's one-sentence justification, for most, that granting religious objections to the COVID-19 vaccines would create "increased risk to the workplace and patient safety" is pretextual, unsupported by Plaintiffs' experiences,

---

[4] See, e.g., Ascension TV commercial entitled, "Healthcare Heroes," available at: https://www.ispot.tv/ad/nAo4/ascension-health-healthcare-heroes; Ascension produced video describing its employees as "Healthcare Heroes." available at: https://healthcare.ascension.org/blog/2020/04/COVID-1919-healthcare-heroes.

and is believed to be inconsistent with Ascension Health's own experience and whatever data it may have from its healthcare facilities over the course of the pandemic (which Ascension Health has unfortunately not shared with its employees).

52.     Indeed, the pretextual nature of Ascension Health's many religious exemption denials was laid bare when it recalled hundreds of unvaccinated employees to patient-facing positions in December 2021.

53.     For some plaintiffs, no justification for denial of their religious exemption request was provided; Ascension Health merely denied it and demanded compliance with the vaccination requirement by November 12, 2021.

54.     The idea that employees seeking religious accommodation may be suspended or terminated merely upon a claim of "increased risk" is flawed as a matter of law.

55.     Title VII does not permit an employer to deny a requested accommodation because of "increased risk." Rather, under Title VII the employer's burden is to show "undue hardship"—and merely "increased" does not without more equal "undue." *See, e.g., Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013) ("Title VII requires proof . . .of hardship, and 'undue' hardship at that."); *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 402 (9th Cir. 1978) ("Undue hardship means something greater than hardship.").[5]

---

[5] To be clear, Plaintiffs do not concede they posed any increased risk whatsoever.

56.     Thus, merely incanting the abstract notion of "increased risk" is not equivalent to showing "undue" hardship and was therefore insufficient to satisfy Ascension Health's statutory responsibility to identify undue hardship.

57.     Ascension Health's reliance on "increased risk" was an attempt to import a wholly new legal standard, not countenanced by any statute, rule, regulation or case, to justify summarily discharging employees seeking religious exemptions.

58.     Ascension Health has not even bothered to show that accommodating Plaintiffs would have imposed an undue hardship.

59.     The law sensibly imposes a qualitative/quantitative, evidence-based standard for assessing undue hardship. *See*, *e.g.*, *Nottelson v. Smith Steel Workers D.A.L.U. 19806, AFL-CIO*, 643 F.2d 445, 452 (7th Cir. 1981) (rejecting "conjectural" undue hardship claim); *Brown v. Gen. Motors Corp.*, 601 F.2d 956, 961 (8th Cir. 1979) (speculation not sufficient to discharge burden to prove undue hardship); *Anderson*, 589 F.2d at 402 ("Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts."); *Drazewski v. Waukegan Dev. Ctr.*, 651 F. Supp. 754, 758 (N.D. Ill. 1986) (speculation does not meet undue hardship standard).

60.     Furthermore, Ascension Health's own policies, practices, experience, publicly available government data, and other available information demonstrate that Ascension Health cannot even meet the exceedingly low (and unlawful) bar— that is the low bar of establishing increased risk—it attempted to set for itself.

61.     Moreover, numerous additional inconsistencies suggest that Ascension Health's reliance on alleged "increased risk" was pretextual and not the true reason for its' initial wholesale denial of religious exemptions.

62.     *First*, as explained above, Ascension Health's and St. Vincent Health's actions of calling thousands of unvaccinated employees back to work who had been suspended without pay for not receiving the vaccine just thirty days or so prior without imposing any additional restrictions on their return to work demonstrates that "risk" was not the true basis for the massive number of religious exemption denials.

63.     *Second*, Ascension Health's own documents are inconsistent with its claim. A Question and Answer document circulated by Ascension Health states that if an individual receives a religious or medical exemption, Ascension Health "follow[s] [its] normal accommodations process and *the exempted associate [is] able to care for patients but . . . need[s] to wear required personal protective equipment (PPE) at all times while on Ascension Health property*." [6]

64.     If Ascension Health had evidence that unvaccinated individuals increased risk to patients sufficient to satisfy the undue hardship standard it would not have permitted unvaccinated employees to continue to engage in patient care.

65.     *Third*, in practice Ascension Health approved medical exemptions from its vaccine mandate and allowed unvaccinated employees with medical exemptions to continue to provide patient care.

---

[6] *See* Questions and Answers about Ascension's Associate COVID--19 Vaccination Policy ((Ascension Vaccination Q&A"), at 5 (added August 12, 2021) (**App. 12 at 1-13**).

66.     Ascension Health's illogical position was that those giving a secular (*e.g.*, medical) reason for not being vaccinated can provide patient care but it is too risky for individuals with a religious reason to provide such care.

67.     *Fourth*, Ascension Health had a twenty (20) month track record of dealing with the COVID-19 pandemic in its healthcare facilities at the time it began suspending employees without pay on November 12, 2021, and is believed to lack any data-driven, evidentiary basis for claiming that religious objectors who did not take the vaccines would have materially increased workplace risks.

68.     Ascension Health has never sought to support its vaccination mandate through any examples of healthcare worker-to-patient transmission of the virus at its facilities.

69.     Additionally, Ascension Health has never sought to support its vaccination mandate through any examples of how remote staff or those who provide telehealth or telemedicine services outside of the hospital setting transmit the virus and impact patients or other employees. Nor has Ascension Health explained how the many employees denied religious exemptions who were in non-patient facing positions increased risk to patients.

70.     Many Plaintiffs report, based on their own extensive experience, that there have not been significant healthcare worker-to-patient transmissions of the SARS-CoV-2 virus within Ascension Health healthcare facilities since Ascension Health healthcare employees began employing rigorous *mitigation measures* (such

18

as temperature monitoring, health assessments, masking and other measures at the outset of the pandemic) to prevent workplace transmission of the virus.

71.     According to widely available scientific research these *mitigation measures are what keep Ascension Health patients safe* from transmission of the virus in Ascension Health facilities and are what have kept patients and healthcare workers safe since the outbreak of the pandemic.[7]

72.     *Mitigation measures* are a proven, effective, scientific, strategy that can ensure the protection of Ascension Health patients going forward.

73.     *Fifth*, available information from the U.S. Food & Drug Administration ("U.S. FDA") was inconsistent with Ascension Health's one-sentence justification.

74.     Except on this one point, Ascension Health, relied on the U.S. FDA's guidance regarding the COVID-19 vaccines, frequently citing to FDA information about the vaccines on Ascension Health's website.

---

[7] *See* collection of scientific studies cited in CMS Interim Final Rule (cited in the Federal Register at 86 Fed. Reg. 61,570 (Nov. 5, 2021)) submitted in Plaintiff's Appendix as Exhibits 63 to 71 (**App. 63 at 1-30; App. 64 at 1-2; App. 65 at 1-9; App. 66 at 1-20; App. 67 at 1-20; App. 68 at 1-13; App. 69 at 1-4; App. 70 at 1-13; and App. 71 at 1-7**) "Hospital-Acquired SARS CoV-2 Infection: Lessons for Public Health," Aaron Richterman, M.D. *et al*, 324 JAMA, 2155–56 (2020) (**App. 64 at 1-2**) *available at*: https://jamanetwork.com/journals/jama/fullarticle/2773128; *see also* "Hospital-acquired COVID-19 tends to be picked up from other patients, not from healthcare workers," *Science Daily*, (Aug. 24, 2021) (**App. 74 at 1-3**) *available at*: https://www.sciencedaily.com/releases/2021/08/210824083504.htm; "Study Shows Low Risk of COVID-19 Transmission in Hospital Among Patients Undergoing Surgery," New York-Presbyterian Newsroom (Feb. 24, 2021) (**App. 73 at 1-3**) *available at*: https://www.nyp.org/news/study-shows-low-risk-of-covid-19-transmission-in-hospital-among-patients-undergoing-surgery; "Could We Do Better on Hospital Acquired COVID-19 In a Future Wave?" David Oliver, 372 BMJ (Jan 13, 2021) (**App. 72 at 1-2**) *available at*: https://www.bmj.com/content/372/bmj.n70.

75.     At the time of Ascension Health's denials of religious exemptions, the

U.S. FDA acknowledged that while it was hoped that the COVID-19 vaccines would

reduce or prevent the *transmission* of the virus, "the scientific community does not

yet know if the COVID-19 Vaccine[s] will reduce such transmission."[8]

76.     *Sixth*, U.S. Centers for Disease Control and Prevention ("CDC")

Director, Dr. Rochelle Walensky, stated on October 8, 2021, about COVID-19

vaccines that, "what they cannot do any more is prevent transmission."[9]

77.     *Seventh*, many other healthcare providers with vaccination mandates

did not resort to the wholesale rejection of religious exemptions. Numerous other

Indianapolis hospitals permitted healthcare workers with religious exemptions to

continue to provide patient care.[10]

78.     For many Plaintiffs, Ascension Health violated Title VII by

substituting an "increased risk" standard for the statutory "undue hardship"

standard and failed to adequately address Plaintiffs' requested accommodations

under the undue hardship standard.

---

[8] *See, e.g.*, *Pfizer-BioNTech COVID-19 Vaccine Frequently Asked Questions*, Food and Drug Administration, *available at*: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine-frequently-asked-questions (**App. 47 at 1-10**)
[9] CDC Director, Dr. Rochelle Walensky, Oct. 8, 2021, *available at*: https://youtu.be/swlUv2SbmT8 .
[10] "Hospitals offer exemption for COVID-19 vaccine mandate. Many employees took it," Rudavsky, Shari, *Indianapolis Star* (Oct. 13, 2021) (**App. 80 at 1-3**); Rentschler Aff. ¶¶ 5-8 (**App. 76 at 1**) (Eskenazi Hospital Respiratory Therapist); Haerr Aff. ¶¶ 4-7 (**App. 75** at 1) (Community North (Kokomo), direct patient care).

79.     For the others, Ascension Health simply ignored the "undue hardship" standard and failed to address Plaintiffs' requested accommodations under the undue hardship standard.

80.     There is abundant evidence Ascension Health's "increased risk" justification was pretextual and a cover for religious discrimination.

81.     Moreover, many Plaintiffs, were subjected to unwelcomed harassment due to their request for religious exemption. For these Plaintiffs, their supposedly confidential religious exemption request generated ridicule by other Ascension Health and St. Vincent Health associates and subjected those seeking religious exemptions to unwelcomed harassment regarding their request. Instead of this ridicule being properly addressed, it was simply ignored by Ascension Health.

82.     Plaintiffs filed their charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and have received Notice of Right to Sue letters from the EEOC.

## JURISDICTION & VENUE

83.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, 1343, 1367 and 42 U.S.C. § 2000e-5(f)(3).

84.     The amount in controversy between Ascension Health and each Plaintiff exceeds the sum or value of $75,000.

85.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events complained of herein occurred in this District and Division.

## THE PARTIES

A.   St. Vincent Health, Inc.;

St. Joseph Hospital & Health Center, Inc.;

St. Mary's Health, Inc.;

St. Mary's Medical Group, LLC;

St. Mary's Warrick Hospital, Inc.;

St. Vincent Anderson Regional Hospital, Inc.;

St. Vincent Carmel Hospital, Inc.;

St. Vincent Dunn Hospital, Inc.;

St. Vincent Fishers Hospital, Inc.;

St. Vincent Heart Center of Indiana, LLC;

St. Vincent Hospital and Health Care Center, Inc.;

St. Vincent Hospital and Health Care Center, Inc. d/b/a William K. Nasser, MD, Healthcare Education and Simulation Center;

St. Vincent Hospital and Health Care Center, Inc. d/b/a Ascension Health St. Vincent Stress Center;

St. Vincent Hospital and Health Care Center, Inc. d/b/a Ascension Health St. Vincent Women's Health Boutique;

St. Vincent Medical Group, Inc.;

St. Vincent Seton Specialty Hospital, Inc.;

St. Vincent Williamsport Hospital, Inc.;

Ascension Health, Inc.;

Ascension Health-IS, Inc.;

Ascension Health Ministry Service Center, LLC; and

Medxcel Facilities Management, LLC.

86.     Plaintiffs are employed at various St. Vincent Health and Ascension Health locations and with various legal entities.

87.     St. Vincent Health is an Indiana Corporation with its principal place of business located at 250 W. 96th Street, Suite 400, in Indianapolis, Indiana.

88.     St. Vincent Health owns and/or operates and/or is organized to perform the functions and purposes of various healthcare entities, which are separately named as defendants and include those thirteen (13) entities referenced below in paragraphs 89-101.

89.     St. Joseph Hospital & Health Center, Inc. (referred to herein as "St. Vincent Kokomo") is an Indiana Corporation with its principal place of business located at 1907 W. Sycamore Street in Kokomo, Indiana.

90.     St. Mary's Health, Inc. (referred to herein as "St. Vincent Evansville") is an Indiana Corporation with its principal place of business located at 3700 Washington Avenue in Evansville, Indiana.

91.     St. Mary's Medical Group, LLC (referred to herein as "St. Mary's Medical Group") is a Limited Liability Corporation with its principal place of business located at 3700 Washington Avenue in Evansville, Indiana.

92.     St. Mary's Warrick Hospital, Inc. (referred to herein as "St. Vincent Warrick") is an Indiana Corporation with its principal place of business located at 1116 Millis Avenue in Boonville, Indiana.

93.     St. Vincent Anderson Regional Hospital, Inc. (referred to herein as "St. Vincent Anderson") is an Indiana Corporation with its principal place of business located at 2015 Jackson Street in Anderson, Indiana.

94.     St. Vincent Carmel Hospital, Inc. (referred to herein as "St. Vincent Carmel") is an Indiana Corporation with its principal place of business in Carmel, Indiana. St. Vincent Carmel owns and operates healthcare facilities in Indiana, including the St. Vincent Carmel Hospital located at 13500 N. Meridian Street in Carmel, Indiana and the St. Vincent Breast Center Carmel-Mammography located at 13420 N. Meridian Street in Carmel, Indiana.

95.     St. Vincent Dunn Hospital, Inc. (referred to herein as "St. Vincent Dunn") is an Indiana Corporation with its principal place of business located at 1600 23rd Street in Bedford, Indiana.

96.     St. Vincent Fishers Hospital, Inc. (referred to herein as "St. Vincent Fishers") is an Indiana Corporation with its principal place of business located at 13861 Olio Road in Fishers, Indiana.

97.     St. Vincent Heart Center of Indiana, LLC (referred to herein as "St. Vincent Heart Center") is an Indiana Limited Liability Corporation with its principal place of business located at 10580 N. Meridian Street in Carmel, Indiana.

98.     St. Vincent Hospital and Health Care Center, Inc. (referred to herein as "St. Vincent – Indianapolis," "St. Vincent Hospital-Indianapolis," or "Ascension Health-St. Vincent-Indianapolis") is an Indiana Corporation with its principal place of business in Indianapolis, Indiana. St. Vincent-Indianapolis owns and operates

healthcare facilities in Indiana, including Ascension Health St. Vincent, the

St. Vincent Stress Center, and the Ascension Health St. Vincent Women's Health

Boutique all located at 2001 W. 86th Street in Indianapolis, Indiana and the

William K. Nasser, MD, Healthcare Education and Simulation Center (referred to

herein as "Healthcare Education and Simulation Center") located at 1801 W. 86th

Street in Indianapolis, Indiana.

99.    St. Vincent Medical Group, Inc. (referred to herein as "St. Vincent

Medical Group" and/or "Ascension Health Medical Group St. Vincent") is an Indiana

Corporation with its principal place of business located at 250 W. 96th Street,

Suite 520, in Indianapolis, Indiana.

100.    St. Vincent Seton Specialty Hospital, Inc. (referred to herein as

"St. Vincent Seton") is an Indiana Corporation with its principal place of business

located at 8071 Township Line Road, Suite 200, in Indianapolis, Indiana.

101.    St. Vincent Williamsport Hospital, Inc. (referred to herein as

"St. Vincent Williamsport") is an Indiana Corporation with its principal place of

business located at 412 N. Monroe Street in Williamsport, Indiana.

102.    St. Vincent Health is owned by Ascension Health. [11]

103.    St. Vincent Health, and the thirteen (13) entities named above in

paragraphs 89-101, are part of the national health care system which is sought to

---

[11] Unless stated otherwise, St. Vincent Kokomo, St. Vincent Evansville, St. Mary's Medical Group, St. Vincent Warrick, St. Vincent Anderson, St. Vincent Carmel, St. Vincent Dunn, St. Vincent Fishers, St. Vincent Heart Center, St. Vincent -Indianapolis and/or St. Vincent Hospital-Indianapolis and/or Ascension St. Vincent-Indianapolis, St. Vincent Medical Group, St. Vincent Seton and St. Vincent Williamsport are intended to be included in any reference to St. Vincent Health.

be controlled and directed in all aspects by Ascension Health's corporate headquarters.

104.    Ascension Health is a Missouri Corporation with its principal place of business located at 4600 Edmundson Road in St. Louis, Missouri. Ascension Health is not deemed a citizen of Indiana.

105.    Ascension Health also owns and/or operates and/or is organized to carry out of the functions and purposes of various healthcare entities, including those separately named defendants set forth in paragraphs 106-110.

106.    Ascension Health Ministry Service Center, LLC ("Ascension Health Ministry Service Center") is an Indiana Limited Liability Corporation with its principal place of business located at 4040 Vincennes Drive, Building MSC, in Indianapolis, Indiana.

107.    Ascension Health-IS Inc. ("Ascension Health-IS") is a Missouri Corporation with its principal place of business located at 4600 Edmundson Road in St. Louis, Missouri. Ascension Health-IS is not deemed a citizen of Indiana.

108.    Ascension Health Ministry Service Center and Ascension Health-IS are part of the national health care system which are sought to be controlled and directed in all aspects by Ascension Health's corporate headquarters.

109.    Ascension Health's work is also carried out through a number of subsidiaries, including Medxcel Facilities Management, LLC (referred to herein as "Medxcel").

110.    Medxcel is a Limited Liability Corporation with its principal place of business located at 7702 Woodland Drive, Suite 200, in Indianapolis, Indiana.

111.    As its subsidiary, Ascension Health directly or indirectly controls and directs Medxcel.

112.    As explained herein, Ascension Health has frequently exercised direction and control over the activities of St. Vincent Health (*including St. Vincent Kokomo, St. Vincent Evansville, St. Mary's Medical Group, St. Vincent Warrick, St. Vincent Anderson, St. Vincent Carmel, St. Vincent Dunn, St. Vincent Fishers, St. Vincent Heart Center, St. Vincent -Indianapolis and/or St. Vincent Hospital-Indianapolis and/or Ascension Health St. Vincent-Indianapolis, St. Vincent Medical Group, St. Vincent Seton and St. Vincent Williamsport*), Ascension Health Ministry Service Center, Ascension Health-IS, and Medxcel, including making final decisions in relation to employees who applied for religious exemptions to the Ascension Health vaccine mandate described below.[12]

113.    By virtue of the control exercised by Ascension Health over Ascension Health Entities and their employees, Ascension Health and the individual Ascension Health Entities may be considered employers of Plaintiffs within the meaning of 42 U.S.C. § 2000e(b) and Plaintiffs may be considered employees of both

---

[12] Unless stated otherwise, for purposes of this Complaint, "Ascension Health Entities" is defined to include St. Vincent Health, St. Vincent Kokomo, St. Vincent Evansville, St. Mary's Medical Group, St. Vincent Warrick, St. Vincent Anderson, St. Vincent Carmel, St. Vincent Dunn, St. Vincent Fishers, St. Vincent Heart Center, St. Vincent -Indianapolis and/or St. Vincent Hospital-Indianapolis and/or Ascension St. Vincent-Indianapolis, St. Vincent Medical Group, St. Vincent Seton and St. Vincent Williamsport, Ascension Ministry Service Center, Ascension Health-IS, and Medxcel.

Ascension Health and their individual Ascension Health Entities within the meaning of 42 U.S.C. § 2000e(f).

114.    Within the meaning of 42 U.S.C. § 2000e(b) Ascension Health and the Ascension Health Entities acted as agents of each other in relation to the employment actions described in this Complaint. Ascension Health conspired with the Ascension Health Entities to impose Ascension Health's vaccine mandate on Ascension Health Entities' employees and to breach several written contracts of employment.

115.    Within the meaning of Title VII, Ascension Health and the Ascension Health Entities, each separately employ more than fifteen (15+) employees at numerous locations. Ascension Health separately employs more than fifteen (15+) employees at numerous other locations, including at its corporate headquarters in Missouri.

116.    Ascension Health, though its national healthcare system, controls or operates more than 2,600 sites of care – including 142 hospitals and more than 40 senior living facilities – in 19 states and the District of Columbia, while providing a variety of services including clinical and network services, venture capital investing, investment management, biomedical engineering, facilities management, risk management, and contracting through Ascension Health's own group purchasing organization. https://www.Ascension Health.org/About?intent_source=nav_footer&_ga=2.257679630.406585572.1634768 682-256273680.1634270751.

117.    Across its system Ascension Health claims to employ more than 150,000 healthcare workers whom it refers to as "associates" and 40,000 aligned providers. *Id.*

118.    Title VII applies to Ascension Health's healthcare workforce including all "Ascension Health associates" and Ascension Health's doctors, nurse practitioners, registered nurses, healthcare technicians and other healthcare workers and staff who may be considered "employees" of Ascension Health and or any Ascension Health Entity within the meaning of Title VII.

119.    Ascension Health and the hospitals it controls or operates are required to comply with Title VII in administering its COVID-19 vaccination, medical and religious exemption processes for its employees and "associates" in its national healthcare system (including all doctors, nurses, healthcare technicians, and other healthcare workers) including Plaintiffs and the class Plaintiffs seek to represent.

## B.    The Plaintiffs

### St. Vincent Kokomo

**Nurse Teresa Ridlen**

120.    Nurse Teresa Ridlen is an employee of Ascension Health and St. Vincent Health at St. Vincent Kokomo in Kokomo, Indiana. Nurse Ridlen has been employed by St. Vincent Kokomo since May 2014. Nurse Ridlen is a citizen and resident of Howard County, Indiana. Nurse Ridlen works in the Wound Care department where she assesses, monitors, and identifies treatment plans for patients with complex wounds and ostomies. As a wound care nurse, Nurse Ridlen

works closely with treatment providers, patients, and nursing staff to ensure that personalized treatment plans are followed in order to prevent future infection or injury.

121.   Nurse Ridlen requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

122.   Ascension Health, St. Vincent Health, and St. Vincent Kokomo denied Nurse Ridlen's request for a religious exemption and she was suspended without pay on November 12, 2021.

123.   However, Ascension Health, St. Vincent Health, and St. Vincent Kokomo failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

124.   Ascension Health, St. Vincent Health, and St. Vincent Kokomo could have granted Nurse Ridlen's religious exemption without undue hardship and should have granted her requested religious exemption.

125.   However, Ascension Health, St. Vincent Health, and St. Vincent Kokomo simply ignored the undue hardship standard and violated Title VII.

126.   During Nurse Ridlen's unjustified suspension, she experienced significant stress and health issues. As a single individual, Nurse Ridlen is responsible for all household expenses, including her mortgage, utilities, medical insurance coverage, and all other bills. Additionally, Nurse Ridlen was fearful that at her age, she would be unable to find another position. She constantly worried

about losing her job and potentially losing her home. The fear of being homeless wreaked havoc on her blood pressure and contributed to elevated stress levels.

127.   Although Nurse Ridlen was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension by St. Vincent. Nurse Ridlen has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Practitioner Lisa Stults**

128.   Nurse Practitioner ("NP") Lisa Stults is an employee of Ascension Health and St. Vincent Health at St. Vincent Kokomo in Kokomo, Indiana. NP Stults has been employed by St. Vincent Kokomo since July 2017. NP Stults is a citizen and resident of Marshall County, Indiana. NP Stults works for Trinity Behavioral at St. Vincent Kokomo where she admits, diagnoses, creates treatment plans and prescribes medication for chemically dependent patients, as well as helps patients manage their mental health (i.e., depression, anxiety etc.).

129.   NP Stults requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

130.   Ascension Health, St. Vincent Health, and St. Vincent Kokomo denied NP Stults' request for a religious exemption.

131.   However, Ascension Health, St. Vincent Health, and St. Vincent Kokomo failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

132.    Ascension Health, St. Vincent Health, and St. Vincent Kokomo could have granted NP Stults' religious exemption without undue hardship and should have granted her requested religious exemption.

133.    However, Ascension Health, St. Vincent Health, and St. Vincent Kokomo simply ignored the undue hardship standard and violated Title VII.

134.    The threat of her November 12, 2021 suspension and potential termination thereafter caused her severe anxiety and stress.

135.    As a result of this anxiety and stress, which was incapacitating, NP Stults was placed on short term medical leave on November 4, 2021, and consequently lost income.

136.    Additionally, NP Stults has still not received written confirmation that St. Vincent has granted her religious exemption.

## St. Vincent Evansville

### Nurse Patricia Drone-McCullough

137.    Nurse Patricia Drone-McCullough was an employee of Ascension Health and St. Vincent Health at St. Vincent Evansville in Evansville, Indiana. Nurse Drone-McCullough had been employed by St. Vincent Evansville since November 2019. Nurse Drone-McCullough is a citizen and resident of Posey County, Indiana. Nurse Drone-McCullough worked at St. Vincent Evansville in the Acute Dialysis Department where she provided bedside care for inpatient hemodialysis and apheresis patients. As part of her job, Nurse Drone-McCullough remains at

bedside to troubleshoot immediate clinical needs of the patient and the dialysis equipment.

138.    Nurse Drone-McCullough requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

139.    Ascension Health, St. Vincent Health, and St. Vincent Evansville denied Nurse Drone-McCullough's request for a religious exemption and she was suspended without pay on November 12, 2021.

140.    However, Ascension Health, St. Vincent Health, and St. Vincent Evansville failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

141.    Ascension Health, St. Vincent Health, and St. Vincent Evansville could have granted Nurse Drone-McCullough's religious exemption without undue hardship and should have granted her requested religious exemption.

142.    However, Ascension Health, St. Vincent Health, and St. Vincent Evansville simply ignored the undue hardship standard and violated Title VII.

143.    Nurse Drone-McCullough's unjustified suspension without pay on November 12, 2021 caused her to experience stress and anxiety. Nurse Drone-McCullough was a single parent and sole provider for her children. The unjustified suspension and threatened termination of employment imposed drastic financial hardship upon her and her children, including the ability to assist with paying their college tuition, which increased her stress. Additionally, due to her unjustified suspension, and the lack of transparency regarding medical insurance coverage,

Nurse Drone-McCullough and her (now) husband moved their wedding date in order to ease her anxiety regarding a potential lapse of medical insurance. While Nurse Drone-McCullough and her husband initially planned a wedding for 2023, they had a hurried wedding on November 21, 2021, so that both Nurse Drone-McCullough and her children could have affordable medical insurance. Her unjustified suspension and threat of termination, coupled with the need to rush her wedding plans, contributed to Nurse Drone-McCullough's stress and anxiety.

144.    Although Nurse Drone-McCullough was ultimately recalled, she was not paid for some five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Drone-McCullough has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Nevertheless, the stress from Ascension Health's coerced process of forcing healthcare workers to abandon their religious objections and receive the vaccination against their will, resulted in Nurse Drone-McCullough's constructive termination and decision not to return to St. Vincent.

**Nurse Donna Grant**

145.    Nurse Donna Grant is an employee of Ascension Health and St. Vincent Health at St. Vincent Evansville in Evansville, Indiana. Nurse Grant has been employed by St. Vincent Evansville since April 2020. Nurse Grant is a citizen and resident of Vanderburgh County, Indiana. Nurse Grant works in the St. Vincent Cancer Center where she interviews, assesses, and documents clinical data for new patients.

146.   Nurse Grant requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

147.   Ascension Health, St. Vincent Health, and St. Vincent Evansville denied Nurse Grant's request for a religious exemption and she was suspended without pay on November 12, 2021.

148.   However, Ascension Health, St. Vincent Health, and St. Vincent Evansville failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

149.   Ascension Health, St. Vincent Health, and St. Vincent Evansville could have granted Nurse Grant's religious exemption without undue hardship and should have granted her requested religious exemption.

150.   Nurse Grant's unjustified suspension without pay on November 12, 2021 and threatened termination of employment impacted her mental health. Nurse Grant's income helps support her family, which includes her husband and two (2) children. With no source of income, Nurse Grant was unable to contribute financially to her family, which increased her stress.

151.   Although Nurse Grant was ultimately recalled, she was not paid for approximately five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Grant has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

## St. Mary's Medical Group

**Ms. Della Taylor**

152.    Ms. Della Taylor was an employee of Ascension Health and St. Vincent Health at St. Mary's Medical Group in Evansville, Indiana. Ms. Taylor had been employed with St. Mary's Medical Group since March 2007. Ms. Taylor is a citizen and resident of Vanderburgh County, Indiana. Ms. Taylor worked as a Certified Medical Assistant ("CMA") and assisted with the treatment and care ordered by providers. As a CMS, Ms. Taylor performed select clinical duties and performed intake of patients, which included, but was not limited to, preparing treatment rooms, conducting patient interviews, and taking vital sign measurements.

153.    Ms. Taylor requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

154.    Ascension Health, St. Vincent Health, and St. Mary's Medical Group denied Ms. Taylor's request for a religious exemption and she was suspended without pay on November 12, 2021.

155.    However, Ascension Health, St. Vincent Health, and St. Mary's Medical Group failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

156.    Ascension Health, St. Vincent Health, and St. Mary's Medical Group could have granted Ms. Taylor's religious exemption without undue hardship and should have granted her requested religious exemption.

157.    Although Ms. Taylor was recalled by St. Vincent on January 10, 2022, she was soon thereafter terminated on or about January 26, 2022. Ms. Taylor's unjustified suspension and termination caused her to experience substantial financial hardship. With no source of income, Ms. Taylor felt she had no choice but to withdraw funds from her retirement in order to make payments towards her Chapter 13 bankruptcy. Prior to her suspension, Ms. Taylor was making substantial efforts to repay all of her debt identified in her bankruptcy. However, after she was unjustly suspended, then terminated, Ms. Taylor was left with no option but to withdraw a substantial amount of her retirement to ensure that she could adhere to her repayment plan schedule. If not, Ms. Taylor understood she would be left with no option but to sell her home. Both the retirement withdrawal and the fear of losing her home continue to cause her great stress.

158.    Ms. Taylor was not paid for some eight (8) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Taylor has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

159.    Ms. Taylor was performing all reasonable requirements of her job and believes she was terminated because she sought a religious exemption.

160.    Ironically, on March 7, 2022, after her termination, Ms. Taylor received a congratulatory fifteen (15) year pin from "President and Chief Executive Officer Joseph R. Impicciche, JD, MBA" congratulating her for her commitment and dedication, as her "contributions [we]re important to [their] national ministry–One Ascension Health—and to the communities we serve."

161.   This communication is further confirmation Ms. Taylor was terminated without cause.

## St. Vincent Warrick

### Nurse Molly Buehler

162.   Nurse Molly Buehler is an employee of Ascension Health and St. Vincent Health at St. Mary's Medical Group at St. Vincent Warrick in Jasper, Indiana. Nurse Buehler has been employed with St. Vincent Warrick since November 2013. Nurse Buehler helps facilitate the Women, Infant, and Children's program, which provides nutritional programming, supplemental foods and referrals to health and social services to eligible pregnant and postpartum women and children.

163.   Nurse Buehler requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

164.   Ascension Health, St. Vincent Health, St. Mary's Medical Group and St. Vincent Warrick denied Nurse Buehler's request for a religious exemption and she was suspended without pay on November 12, 2021.

165.   However, Ascension Health, St. Vincent Health, St. Mary's Medical Group and St. Vincent Warrick failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

166.   Ascension Health, St. Vincent Health, St. Mary's Medical Group and St. Vincent Warrick could have granted Nurse Buehler's religious exemption

without undue hardship and should have granted her requested religious exemption.

167.    Nurse Buehler's unjustified suspension and threatened termination resulted in her experiencing fear, stress, and anxiety. Nurse Buehler's income is critical to the financial stability of her family, which includes her husband and three (3) school-aged children. As Nurse Buehler's husband is self-employed, the cost of medical insurance coverage from the market is unreasonable for a family of five. The possibility of not having medical insurance coverage caused Nurse Buehler to experience a tremendous amount of stress and anxiety. If something were to happen to the health of one of the members of her young family, this event could have been financially catastrophic. Additionally, Nurse Buehler's children attend a private school affiliated with their faith, for which Nurse Buehler and her husband are obligated to make ongoing payments for tuition. Without her income, it appeared very likely that she would have to withdraw her children from the private school, which caused her to experience additional anxiety and stress. Consequently, this increased anxiety and stress began to distract her from her daily life, including her family needs. Nurse Buehler began to experience insomnia and physical exhaustion.

168.    Although Nurse Buehler was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Buehler has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

## St. Vincent Anderson

**Nurse Sarah Horner**

169.    Nurse Sarah Horner is an employee of Ascension Health, St. Vincent Health at St. Vincent Anderson in Anderson, Indiana. Nurse Horner has been employed by St. Vincent Anderson since February 2016. Nurse Horner is a citizen and resident of Madison County, Indiana. Nurse Horner works at the Anderson Center Behavioral Health location providing mental health inpatient services for those patients requiring crisis stabilization.

170.    Nurse Horner requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

171.    Ascension Health, St. Vincent Health, and St. Vincent Anderson denied Nurse Horner's request for a religious exemption and she was suspended without pay on November 12, 2021.

172.    However, Ascension Health, St. Vincent Health, and St. Vincent Anderson failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

173.    Ascension Health, St. Vincent Health, and St. Vincent Anderson could have granted Nurse Horner's religious exemption without undue hardship and should have granted her requested religious exemption.

174.    Nurse Horner's unjustified suspension without pay on November 12, 2021 and threatened termination from employment caused her to experience significant stress, anxiety, and insomnia.

175.    While Nurse Horner was ultimately recalled, she continues to worry about the stigma associated with her period of suspension which she understands remains in her personnel file.

176.    Additionally, Nurse Horner was not paid for some seven (7) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Horner has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Monica Nalley**

177.    Ms. Monica Nalley is an employee of Ascension Health and St. Vincent Health at Ascension Health Medical Group in Anderson, Indiana. Ms. Nalley has been employed with Ascension Health Medical Group since September 2002. Ms. Nalley is a citizen and resident of Henry County, Indiana. Ms. Nalley provides administrative support for the Ascension Health Medical Group where she is responsible for checking patients in/out, billing and coding, and claim resolutions.

178.    Ms. Nalley requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

179.    Ascension Health, St. Vincent Health, and St. Vincent Anderson denied Ms. Nalley's request for a religious exemption and she was suspended without pay on November 12, 2021.

180.    However, Ascension Health, St. Vincent Health, and St. Vincent Anderson failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

181.    Ascension Health, St. Vincent Health, and St. Vincent Anderson could have granted Ms. Nalley's religious exemption without undue hardship and should have granted her requested religious exemption.

182.    Ms. Nalley's unjustified suspension without pay on November 12, 2021 and threatened termination of employment negatively impacted her mental health and emotional well-being. Ms. Nalley's income helps support her family, which includes her husband and two (2) children. As her husband's work slows down in the winter months, her family relies on her income. Without Ms. Nalley's income, her family was living off their savings, which was quickly diminishing during her suspension. The lack of income significantly increased her stress levels.

183.    Although Ms. Nalley was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Nally has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Barbara Pluhar**

184.    Ms. Barbara Pluhar is an employee of Ascension Health and St. Vincent Health at Ascension Health Medical Group in Anderson, Indiana. Ms. Pluhar has been employed with Ascension Health Medical Group since February 2002. Ms. Pluhar is a citizen and resident of Madison County, Indiana. Ms. Pluhar is a Certified Clinical Medical Assistant ("CCMA") and provides administrative support for Ascension Health Medical Group.

185.    Ms. Pluhar requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

186.    Ascension Health, St. Vincent Health, and St. Vincent Anderson denied Ms. Pluhar's request for a religious exemption and she was suspended without pay on November 12, 2021.

187.    Ascension Health, St. Vincent Health, and St. Vincent Anderson failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

188.    Ascension Health, St. Vincent Health, and St. Vincent Anderson could have granted Ms. Pluhar's religious exemption without undue hardship and should have granted her requested religious exemption.

189.    During Ms. Pluhar's unjustified suspension without pay, she experienced feelings of anxiety and stress, which began to manifest physically. Ms. Pluhar's income helps support her family, which includes her husband. Concerned that she would soon be terminated, Ms. Pluhar submitted numerous job applications during her unjustified suspension. Many of the positions for which she applied would have required long commutes and paid less. Ever increasing concerns about driving so far for less money and the strain this would put on her family generated significant anxiety and stress for Ms. Pluhar.

190.    Although Ms. Pluhar was ultimately recalled, she was not paid for some seven (7) weeks while unilaterally and arbitrarily placed on unpaid

suspension. Ms. Pluhar has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**St. Vincent Carmel**

**Ms. Cindy Bishop**

191.    Ms. Cindy Bishop is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Bishop has been employed by St. Vincent Carmel since July 2019. Ms. Bishop is a citizen and resident of Hamilton County, Indiana. Ms. Bishop works in Imaging and serves as a radiology technologist performing a variety of radiographic procedures used in the diagnostic treatment of illness and injuries.

192.    Ms. Bishop requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

193.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Bishop's request for a religious exemption and she was suspended without pay on November 12, 2021.

194.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

195.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Bishop's religious exemption without undue hardship and should have granted her requested religious exemption.

196. However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

197. During Ms. Bishop's unjustified suspension without pay, she experienced anxiety, stress, and depression due to Defendants' actions. Ms. Bishop suffered from extreme stress from the loss of her income. She incurred unexpected debt due to her unjustified suspension. Moreover, as a newer radiology technologist, Ms. Bishop worried that her skillset would deteriorate during her suspension and could prevent her from finding a comparable job.

198. Although Ms. Bishop was ultimately recalled, she was not paid for approximately seven (7) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Bishop has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Donna Jo Bowles**

199. Nurse Donna Jo Bowles is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Nurse Bowles has been employed by St. Vincent since June 2007. Nurse Bowles is a citizen and resident of Hamilton County, Indiana. Nurse Bowles works in the Pediatrics, Postpartum, Nursery and Neonatal Intensive Care Unit, where she cares for mothers and infants post-delivery until discharge. Her care includes, but is not limited to, monitoring both the mother and infant, carrying out physician and nursing orders, and providing education to mothers.

200.    Nurse Bowles requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

201.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Nurse Bowles' request for a religious exemption and she was suspended without pay on November 12, 2021.

202.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

203.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Nurse Bowles' religious exemption without undue hardship and should have granted her requested religious exemption.

204.    During Nurse Bowles' period of unjustified suspension without pay, she experienced overwhelming feelings of sadness. She also experienced the loss of self-worth and began to experience paralyzing stomach discomfort, weight loss, and repeated nights with loss of sleep. Due to Nurse Bowles' increased stress, her psoriasis, which had been in remission for more than ten (10) years, re-appeared, causing her additional anxiety.

205.    Although Nurse Bowles was ultimately recalled, she was not paid for some three (3) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Bowles has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Donna Bryant**

206.   Nurse Donna Bryant was an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Nurse Bryant had been employed by St. Vincent since December 1985. Nurse Bryant is a citizen and resident of Hamilton County, Indiana. Nurse Bryant worked in Outpatient Surgery as a pre-operative nurse. As a pre-operative nurse, Nurse Bryant assisted patients in the preparation and discharge from same day surgery, which included performing electrocardiograms, drawing patient blood, and obtaining patient history.

207.   Nurse Bryant requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

208.   Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Nurse Bryant's request for a religious exemption and she was suspended without pay on November 12, 2021.

209.   However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

210.   Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Nurse Bryant's religious exemption without undue hardship and should have granted her requested religious exemption.

211.   After thirty-six (36) years of employment with Ascension Health and St. Vincent Health, Nurse Bryant was constructively discharged. Her suspension

without pay, threatened termination and the uncertainty it caused was nerve racking and an extreme source of stress for Nurse Bryant. Nurse Bryant's husband is critically injured, having suffered a spinal cord injury in October 2015. As an incomplete quadriplegic, Nurse Bryant's husband requires continuous care for his condition and symptoms. During her unjustified suspension, Nurse Bryant worried endlessly about her husband's care, including the need for a new physician and medication or not having access to those physicians or doctors due to the lack of health insurance coverage. Ultimately, the stress of the situation became too great for her, and Nurse Bryant determined that she would have to move on and leave her St. Vincent employment resulting in her constructive discharge.

212. Nurse Bryant has not been compensated for her suspension and constructive discharge. Nurse Bryant has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Samantha Cassidy**

213. Ms. Samantha Cassidy is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Cassidy had been employed by St. Vincent Carmel since May 2012. Ms. Cassidy is a citizen and resident of Hamilton County, Indiana. Ms. Cassidy works in the Surgery Department as a Certified Surgical Technologist ("CST") and Certified Surgical First Assistant ("CSFA") and she serves on the Gynecology/Genitourinary team. As a CST and CSFA, Ms. Cassidy works under the supervision of a surgeon to facilitate the safe and effective conduct of surgical procedures. She also ensures that the

48

operating room environment is safe, that equipment functions properly, and that operative procedure is conducted under conditions that maximize patient safety.

214.    Ms. Cassidy requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

215.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Cassidy's request for a religious exemption and she was suspended without pay on November 12, 2021.

216.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

217.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Cassidy's religious exemption without undue hardship and should have granted her requested religious exemption.

218.    Ms. Cassidy's unjustified suspension without pay and threatened job loss impacted both her mental and physical health. Ms. Cassidy's income helps support her family, which includes her husband and two (2) children. During her suspension, Ms. Cassidy worried about their ability to pay the mortgage. The emotional anxiety and stress from the suspension and threatened termination was overwhelming and resulted in many sleepless nights.

219.    Although Ms. Cassidy was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension.

Ms. Cassidy has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

220. Additionally, although Ms. Cassidy was recalled, St. Vincent Carmel recalled to her to a different work shift, which created an additional hardship for her and her family. As a mother of two (2) young children, the importance of being home in the evenings is invaluable and was available prior to Ms. Cassidy's suspension.

221. Ms. Cassidy sought to recover her prior shift but was not allowed to do so by St. Vincent Carmel.

222. Had Ms. Cassidy not been wrongfully suspended without pay, she would have retained her prior shift.

223. Ultimately, Ms. Cassidy was constructively discharged and required to give up her job due to the failure to return her to her prior shift.

224. Ms. Cassidy is entitled to lost wages and reinstatement due to this constructive discharge and the failure to pay her during the time period she was wrongfully suspended.

**Ms. Erika Fowler**

225. Ms. Erika Fowler was an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Fowler had been employed by St. Vincent Carmel since August 2008. Ms. Fowler is a citizen and resident of Boone County, Indiana. Ms. Fowler worked at St. Vincent Carmel in the Surgery department as a CST where she prepared surgical suites for surgery,

provided surgeons instruments and other supplies during surgery, and assists with preparing, transporting, positioning, and draping patients during surgery. Ms. Fowler also served as the orthopedic team lead where she was responsible for training staff for equipment use during surgery.

226.    Ms. Fowler requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

227.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Fowler's request for a religious exemption and she was suspended without pay on November 12, 2021.

228.    Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

229.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Fowler's religious exemption without undue hardship and should have granted her requested religious exemption.

230.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

231.    Ms. Fowler was suspended without pay on November 12, 2021 and threatened with termination from employment. As a single mother of three (3), her salary supports her family. The threat of termination meant losing her ability to pay her mortgage, the possible loss of her home, and inability to pay for her eldest

son's books, computer fees, and lunch meals. The stress from her suspension and the threat of termination caused her to experience significant stress and anxiety.

232.    Although Ms. Fowler was ultimately recalled, she was not paid for some fifteen (15) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Fowler has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

233.    Additionally, although Ms. Fowler was recalled, St. Vincent Carmel recalled to her to a different work shift, which created an additional hardship for her and her family. As a mother of three (3) young children, the importance of being home in the evenings is invaluable and was available prior to Ms. Fowler's suspension.

234.    Ms. Fowler persistently sought to recover her prior shift but was not allowed to do so by St. Vincent Carmel.

235.    Had Ms. Fowler not been wrongfully suspended without pay, she would have retained her prior shift.

236.    Ultimately, Ms. Fowler was constructively discharged and required to give up her job due to the failure to return her to her prior shift.

237.    Ms. Fowler is entitled to lost wages and reinstatement due to this constructive discharge and the failure to pay her during the time period she was wrongfully suspended.

**Mr. Richard Fulkerson**

238.   Mr. Richard Fulkerson was an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Mr. Fulkerson had been employed by St. Vincent since February 2006. Mr. Fulkerson is a citizen and resident of Delaware County, Indiana. Mr. Fulkerson worked as an inpatient pharmacist in the pharmacy department where he played a critical role in the appropriate selection, dosing, administering, and dispensing of medication. Additionally, Mr. Fulkerson reviewed and assessed medication orders to identify, prevent, and resolve potential and actual drug related problems. Further, as a pharmacist, Mr. Fulkerson provided drug information and education to medical staff and patients.

239.   Mr. Fulkerson requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

240.   Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Mr. Fulkerson's request for a religious exemption and he was suspended without pay on November 12, 2021.

241.   However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

242.   St. Vincent Carmel could have granted Mr. Fulkerson's religious exemption without undue hardship and should have granted his requested religious exemption.

243.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

244.    Mr. Fulkerson was ultimately recalled on December 17, 2021. However, soon afterward, Mr. Fulkerson was terminated on January 5, 2022. Mr. Fulkerson's termination was due to him seeking a religious exemption. Mr. Fulkerson's unjustified suspension and termination of employment has created substantial financial hardship on his family. While missing one (1) paycheck created a serious loss, missing four (4) paychecks, then being terminated has had a devastating impact on his family. Mr. Fulkerson is responsible for providing medical insurance coverage for his family. The loss of medical insurance coverage has required both Mr. Fulkerson and his wife to forego medical treatment and medication. With nearly forty (40) years as a pharmacist in Indiana, and over fifteen (15) years with St. Vincent Health and St. Vincent Carmel, Mr. Fulkerson is without work and has been unable to locate comparable work. This situation may force him into an early retirement. Additionally, loss of his job has caused Mr. Fulkerson and his wife significant stress. Their adult son has autism. As their son's primary caregivers, they have created a structured environment here in Indiana, which helps with his condition. However, the uncertainty of Mr. Fulkerson's future as a result of the termination of his employment has created significant concern for Mr. Fulkerson and his wife due to the lack of stability and structure that resulted from loss of Mr. Fulkerson's job, may undermine their son's well-being and the care that he receives.

245.    Mr. Fulkerson was not paid for some five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Mr. Fulkerson has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Marzena Gaslawski**

246.    Nurse Marzena Gaslawski is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Nurse Gaslawski has been employed by St. Vincent Carmel since September 2018. Nurse Gaslawski is a citizen and resident of Hamilton County, Indiana. Nurse Gaslawski works in the Medical Surgical department as a Charge Nurse and works with other healthcare professionals to treat patients with various injuries, illnesses, or disabilities to ensure their continued well-being.

247.    Nurse Gaslawski requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

248.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Nurse Gaslawski's request for a religious exemption and she was suspended without pay on November 12, 2021.

249.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

250.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Gaslawski's religious exemption without undue hardship and should have granted her requested religious exemption.

251.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

252.    Nurse Gaslawski's unjustified suspension without pay on November 12, 2021 and threatened termination of employment impacted her mental well-being and stress levels, resulting in increased anxiety, stress, and weight gain.

253.    Although Nurse Gaslawski was ultimately recalled, she was not paid for approximately six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Gaslawski has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Karen Hersh**

254.    Ms. Karen Hersh is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel Breast Center–Mammography in Carmel, Indiana. Ms. Hersh has been employed by St. Vincent Carmel Breast Center–Mammography since December 2015. Ms. Hersh is a citizen and resident of Hamilton County, Indiana. Ms. Hersh works as a mammographer technologist and assists physicians in the performance of diagnostic and/or therapeutic procedures by preparing the patient and operating the mammographic equipment in order to obtain diagnostic images.

255.    Ms. Hersh requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

256.   Ascension Health, St. Vincent Health, and St. Vincent Carmel Breast Center–Mammography denied Ms. Hersh's request for a religious exemption and she was suspended without pay on November 12, 2021.

257.   However, Ascension Health, St. Vincent Health, and St. Vincent Carmel Breast Center–Mammography failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

258.   Ascension Health, St. Vincent Health, and St. Vincent Carmel Breast Center–Mammography could have granted Ms. Hersh's religious exemption without undue hardship and should have granted her requested religious exemption.

259.   However, Ascension Health, St. Vincent Health, and St. Vincent Carmel Breast Center–Mammography simply ignored the undue hardship standard and violated Title VII.

260.   Ms. Hersh's unjustified suspension without pay on November 12, 2021, and threatened termination from employment caused her to experience extreme stress. Due to her suspension, Ms. Hersh withdrew funds from her savings account to pay her mortgage. The fear of running out of money and losing her home contributed to her stress. This extreme stress began to impact her health and she experienced sleepless nights, depression, anxiety, gastrointestinal issues, and weight loss.

261.   Although Ms. Hersh was ultimately recalled, she was not paid for approximately six (6) weeks while unilaterally and arbitrarily placed on unpaid

suspension. Ms. Hersh has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Brandy Kehrt**

262.    Ms. Brandy Kehrt was an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Kehrt had been employed by St. Vincent Carmel since February 2013. Ms. Kehrt is a citizen and resident of Marion County, Indiana. Ms. Kehrt worked in the Surgery Department as a CST, under the supervision of a surgeon to facilitate the safe and effective conduct of surgical procedures. As a CST, Ms. Kehrt ensured that the operating room environment was safe, that equipment functioned properly, and that operative procedures were conducted under conditions that maximized patient safety.

263.    Ms. Kehrt requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

264.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Kehrt's request for a religious exemption and she was suspended without pay on November 12, 2021.

265.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

266.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Kehrt's religious exemption without undue hardship and should have granted her requested religious exemption.

267.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

268.    Ms. Kehrt's unjustified suspension without pay and threatened job loss created extreme stress and adversely impacted her mental health. During her suspension, Ms. Kehrt began to experience depression, headaches, and nausea. She cried daily and was exhausted from this emotional time period.

269.    Although Ms. Kehrt was ultimately recalled, she was not paid for some four (4) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Kehrt has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Cecilia Lesch**

270.    Nurse Cecilia Lesch was an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Nurse Lesch had been employed with St. Vincent Carmel since June 2020. Nurse Lesch is a citizen and resident of Huntington County, Indiana. Nurse Lesch worked in Perioperative Services, where she prepared patients for surgery and provided after care for patients in the acute postoperative/post-anesthesia phase, monitoring and treating for any complications.

271.    Nurse Lesch requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

272.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Nurse Lesch's request for a religious exemption and she was suspended without pay on November 12, 2021.

273.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

274.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Nurse Lesch's religious exemption without undue hardship and should have granted her requested religious exemption.

275.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

276.    Nurse Lesch's unjustified suspension without pay created significant stress and impacted her mental health and finances. Newly into her career, and having the sole responsibility for her finances, the unjustified suspension and threat of termination left Nurse Lesch with no other option but to relocate to Northern Indiana for new employment. She left St. Vincent Carmel and was constructively discharged.

277.    Nurse Lesch was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Lesch has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. She also has not been compensated for the constructive discharge and damages she suffered as a result including moving expenses and a reduction in wages.

**Nurse Teresa Lesch**

278.    Nurse Teresa Lesch is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Nurse Lesch has been employed with St. Vincent Carmel since March 2008. Nurse Lesch is a citizen and resident of Marion County, Indiana. Nurse Lesch works in the Surgery Department where she serves as the primary coordinator for well-coordinated patient care.

279.    Nurse Lesch requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

280.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Nurse Lesch's request for a religious exemption and she was suspended without pay on November 12, 2021.

281.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

282.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Nurse Lesch's religious exemption without undue hardship and should have granted her requested religious exemption.

283.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

284.    Nurse Lesch's unjustified suspension without pay and threatened termination of her employment adversely impacted her stress levels and mental health significantly. Nurse Lesch's income supports her family, including her son's

private education expenses. Without her income, Nurse Lesch was concerned about how she and her husband would be able to afford their son's continued education. Additionally, after thirteen (13) years with St. Vincent Carmel, it was very stressful and challenging to find comparable employment. Instead of enjoying the holidays, Nurse Lesch spent countless hours seeking new employment. This job search contributed to her stress.

285.    Although Nurse Lesch was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Lesch has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Leisa Randall**

286.    Ms. Leisa Randall is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Randall has been employed with St. Vincent Carmel since December 2001. Ms. Randall is a citizen and resident of Hamilton County, Indiana. Ms. Randall works as a Unit Support Representative/Patient Care Technician in the Emergency Room, where she communicates with patients, families, physicians, and other healthcare team members about patient care. In addition, Ms. Randall schedules patients for individual appointments, assembles and maintains patient charts, coordinates and schedules meetings, and assists with maintaining supplies.

287.    Ms. Randall requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

288.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Randall's request for a religious exemption and she was suspended without pay on November 12, 2021.

289.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

290.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Randall's religious exemption without undue hardship and should have granted her requested religious exemption.

291.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

292.    Ms. Randall's income helps support her family. Due to her suspension, Ms. Randall and her husband had to rely on their limited savings for basic necessities, including gasoline, food, and other needed items. The stress and worry over the loss of financial security caused Ms. Randall extreme anxiety. The severe stress caused by her suspension, and lack of income, impacted her health, and she began to experience sleepless nights and her eczema significantly worsened.

293.    Although Ms. Randall was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Randall has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Victoria Willour**

294.    Ms. Victoria Willour is an employee of Ascension Health and St. Vincent Health at St. Vincent Carmel in Carmel, Indiana. Ms. Willour is a citizen and resident of Hamilton County, Indiana. Ms. Willour has been employed by St. Vincent Carmel since May 2014. Ms. Willour works in the Mother/Baby unit as a Unit Services Clerk providing compassionate care to newborns and their families. This care may include admitting newborns, managing charts, preparing paternity affidavits and birth certificates, processing transfers, and answering telephone calls.

295.    Ms. Willour requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

296.    Ascension Health, St. Vincent Health, and St. Vincent Carmel denied Ms. Willour's request for a religious exemption and she was suspended without pay on November 12, 2021.

297.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

298.    Ascension Health, St. Vincent Health, and St. Vincent Carmel could have granted Ms. Willour's religious exemption without undue hardship and should have granted her requested religious exemption.

299.    However, Ascension Health, St. Vincent Health, and St. Vincent Carmel simply ignored the undue hardship standard and violated Title VII.

300.   Ms. Willour was suspended without pay on November 12, 2021 and threatened with termination from employment. As a single parent without any familial support, Ms. Willour faced one of the hardest decisions of her life – abandoning her religious beliefs or losing her job and facing the uncertainty as to whether she could provide for her son. While Ms. Willour had some limited savings, it was not enough to cover her living expenses. She continued to borrow money and dug herself into a financial hole. The constant battle between choosing to follow her religious beliefs or succumbing to her employers' coercive tactics so that she could guarantee stability for her son created significant stress, anxiety, and worry for Ms. Willour.

301.   Although Ms. Willour was ultimately recalled, she was not paid for some five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Willour has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

### St. Vincent Dunn

**Nurse Monica Poole**

302.   Nurse Monica Poole was an employee of Ascension Health and St. Vincent Health at St. Vincent Dunn in Bedford, Indiana. Nurse Poole had been employed with St. Vincent Dunn since June 2008. Nurse Poole is a citizen and resident of Lawrence County, Indiana. Nurse Poole worked in the Medical Surgical Unit and was responsible for patient care, which included, but was not limited to, admitting patients and assessing and reporting their conditions and concerns to

treatment providers, discussing patient concerns and updates with family, and educating patients and their families about their health and continued treatment.

303.    Nurse Poole requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

304.    Ascension Health, St. Vincent Health, and St. Vincent Dunn denied Nurse Poole's request for a religious exemption and she was suspended without pay on November 12, 2021.

305.    However, Ascension Health, St. Vincent Health, and St. Vincent Dunn failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

306.    Ascension Health, St. Vincent Health, and St. Vincent Dunn could have granted Nurse Poole's religious exemption without undue hardship and should have granted her requested religious exemption.

307.    However, Ascension Health, St. Vincent Health, and St. Vincent Dunn simply ignored the undue hardship standard and violated Title VII.

308.    During Nurse Poole's suspension, she had no income and had to cash out her paid time off to pay for basic necessities. She suffered stress, worry and anxiety about her unjustified suspension and loss of financial security, which caused Nurse Poole to experience insomnia, anxiousness, and irritability. As a result, Nurse Poole was constructively discharged from her employment.

309.    Although Nurse Poole was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension.

Nurse Poole consequently left employment with Ascension Health, St. Vincent Health, and St. Vincent Dunn. Nurse Poole has not been compensated for the wages lost by being wrongfully placed on unpaid suspension and constructively discharged.

**Nurse Keri Stultz**

310.   Nurse Keri Stultz is an employee of Ascension Health and St. Vincent Health at St. Vincent Dunn in Bedford, Indiana. Nurse Stultz is a citizen and resident of Lawrence County, Indiana. Nurse Stultz has been employed by St. Vincent Dunn since September 2013. Nurse Stultz works in the Case Management department as a Critical Access Case Manager and had previously served as a case manager for three (3) of the seven (7) critical access hospitals in the State of Indiana. As the Critical Access Case Manager, she was responsible for planning and coordinating care for patients from pre-admission through post-discharge by working collaboratively with the multidisciplinary team. Through her efforts, she ensured that patients were assigned the appropriate level of care, received appropriate services, and were transitioned to the proper post-discharge level of care.

311.   Nurse Stultz requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

312.   Ascension Health, St. Vincent Health, and St. Vincent Dunn denied Nurse Stultz's request for a religious exemption and she was suspended without pay on November 12, 2021.

313.    However, Ascension Health, St. Vincent Health, and St. Vincent Dunn failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

314.    Ascension Health, St. Vincent Health, and St. Vincent Dunn could have granted Nurse Stultz's religious exemption without undue hardship and should have granted her requested religious exemption.

315.    However, Ascension Health, St. Vincent Health, and St. Vincent Dunn simply ignored the undue hardship standard and violated Title VII.

316.    During Nurse Stultz's unjustified suspension without pay, her family, which includes her husband and four (4) children, faced extreme financial hardship and both Nurse Stultz and her husband had to find immediate alternative and additional employment. Due to limited available options, Nurse Stultz accepted a position which required more physical labor. Unfortunately, this position exacerbated a prior medical condition which caused her to experience physical pain. Even with her temporary work, Nurse Stultz's family had to seek out charitable food donations, which caused her to experience significant stress.

317.    Although Nurse Stultz was ultimately recalled, she was demoted. Moreover, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Stultz has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Nor has she been compensated for the diminished wages received as a result of her wrongful

demotion which is entirely attributable to the fact that she was wrongfully denied a religious exemption.

## St. Vincent Fishers

**Mr. Patrick Fowler**

318.    Mr. Patrick Fowler is an employee of Ascension Health and St. Vincent Health at St. Vincent Fishers in Fishers, Indiana. Mr. Fowler has been employed by St. Vincent Fishers since August 2015. Mr. Fowler is a citizen and resident of Clinton County, Indiana. Mr. Fowler works as a Security Officer for St. Vincent Fishers and in that capacity, he assists, aids, and protects hospital patients and employees through the execution and enforcement of St. Vincent's Health System and Security Program.

319.    Mr. Fowler requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

320.    Ascension Health, St. Vincent Health, and St. Vincent Fishers denied Mr. Fowler's request for a religious exemption.

321.    However, Ascension Health, St. Vincent Health, and St. Vincent Fishers failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

322.    Ascension Health, St. Vincent Health, and St. Vincent Fishers could have granted Mr. Fowler's religious exemption without undue hardship and should have granted his requested religious exemption.

323.    However, Ascension Health, St. Vincent Health, and St. Vincent Fishers simply ignored the undue hardship standard and violated Title VII.

324.    Consequently, facing uncertainty as to whether he could financially provide for his family, Mr. Fowler received the COVID-19 vaccine despite the fact that to do so contradicted his religious convictions. This was a gut wrenching and emotional decision for Mr. Fowler who ultimately felt he had to put his obligation as a father to provide for his family over the exercise of his religious faith.

325.    This decision has caused him to experience extreme stress and turmoil. On September 16, 2021, after receiving the COVID vaccine, Mr. Fowler suffered a heart attack. Mr. Fowler believes that the stress, anxiety and crisis of conscience created by Ascension's mandate and failure to approve his religious exemption caused or contributed tohis heart attack.

**Mr. Matt Horne**

326.    Mr. Matthew Horne is an employee of Ascension Health and St. Vincent Health at St. Vincent Fishers in Fishers, Indiana. Mr. Horne has been employed by St. Vincent Fishers since August 2018. Mr. Horne is a citizen and resident of Hamilton County, Indiana. Mr. Horne works as a Staff Chaplain in the Spiritual Care department where he provides religious and spiritual care and counsel to patients, their families, and staff.

327.    Mr. Horne requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

328.    Ascension Health, St. Vincent Health, and St. Vincent Fishers denied Mr. Horne's request for a religious exemption and he was suspended without pay on November 12, 2021.

329.    However, Ascension Health, St. Vincent Health, and St. Vincent Fishers failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

330.    Ascension Health, St. Vincent Health, and St. Vincent Fishers could have granted Mr. Horne's religious exemption without undue hardship and should have granted his requested religious exemption.

331.    However, Ascension Health, St. Vincent Health, and St. Vincent Fishers simply ignored the undue hardship standard and violated Title VII.

332.    Mr. Horne's unjustified suspension without pay on November 12, 2021 and threatened termination of his employment caused him to experience significant stress, as Mr. Horne's income is essential to provide for his family. Due to his unjustified suspension, the weight of his family's financial obligations rested solely on his wife's income, which caused Mr. Horne to experience extreme stress, loss of purpose, loss of self-esteem, and motivation. This loss began to manifest physically through a loss of appetite and weight loss.

333.    Although Mr. Horne was ultimately recalled, he was not paid for approximately six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Mr. Horne has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Mr. Steven Ohlheiser**

334.   Mr. Steven Ohlheiser is an employee of Ascension Health and St. Vincent Health at St. Vincent Fishers in Fishers, Indiana. Mr. Ohlheiser has been employed with St. Vincent Fishers since August 2019. Mr. Ohlheiser is a citizen and resident of Madison County, Indiana. Mr. Ohlheiser works as a Security Officer. He is responsible for providing for the safety and well-being of others and deterring criminal activity through implementation of the facility's security measures and rules. As a security officer, Mr. Ohlheiser protects the hospital's property, employees, patients, and visitors. He also provides training to other officers.

335.   Mr. Ohlheiser requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

336.   Ascension Health, St. Vincent Health, and St. Vincent Fishers denied Mr. Ohlheiser's request for a religious exemption and he was suspended without pay on November 12, 2021.

337.   However, Ascension Health, St. Vincent Health, and St. Vincent Fishers failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

338.   Ascension Health, St. Vincent Health, and St. Vincent Fishers could have granted Mr. Ohlheiser's religious exemption without undue hardship and should have granted his requested religious exemption.

339.   However, Ascension Health, St. Vincent Health, and St. Vincent Fishers simply ignored the undue hardship standard and violated Title VII.

340.   Mr. Ohlheiser's unjustified suspension without pay on November 12, 2021, and threatened termination from employment impacted his stress levels and mental and emotional health. As Mr. Ohlheiser's income provides for the essential needs of his family, his suspension caused his family to experience a substantial financial hardship, which contributed to his anxiety and stress.

341.   Although Mr. Ohlheiser was ultimately recalled, he was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Mr. Ohlheiser has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Lisa Webb**

342.   Nurse Lisa Webb was an employee of Ascension Health and St. Vincent Health at St. Vincent Fishers in Fishers, Indiana. Nurse Webb is a citizen and resident of Madison County, Indiana. Nurse Webb worked as a registered nurse in various departments, including the Operating Room ("OR"), Emergency Department ("ED"), and Home Health Care. Generally, Nurse Webb directed patient care and monitoring in each department. While in the OR and ED, her duties included, but were not limited to, assisting with surgeries, providing wound care, and IV administration.

343.   While employed with St. Vincent Fishers, Nurse Webb requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

344.   Ascension Health, St. Vincent Health, and St. Vincent Fishers denied Nurse Webb's request for a religious exemption and she was suspended without pay on November 12, 2021.

345.   However, Ascension Health, St. Vincent Health, and St. Vincent Fishers failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

346.   Ascension Health, St. Vincent Health, and St. Vincent Fishers could have granted Nurse Webb's religious exemption without undue hardship and should have granted her requested religious exemption.

347.   However, Ascension Health, St. Vincent Health, and St. Vincent Fishers simply ignored the undue hardship standard and violated Title VII.

348.   Nurse Webb's unjustified suspension without pay on November 12, 2021 and subsequent January 22, 2022 termination has caused Nurse Webb to experience significant grief. She was performing well in her job and her suspension and termination were solely due to the refusal to grant her a religious exemption. Due to her unjustified suspension and termination, she is unable to financially support her family. Nurse Webb is unable to pay her car payment, help buy groceries, or provide health insurance for her family. Her unjustified suspension and termination have caused her to experience physical, emotional, spiritual, and

financial grief. Further, Nurse Webb faces concerns, stress and uncertainty as to whether this termination will act like a "Scarlet Letter," making it difficult to find work elsewhere and impairing her successful career as a nurse.

349.    Nurse Webb was not paid while unilaterally and arbitrarily placed on unpaid suspension. Nurse Webb has not been compensated for the wages lost by being wrongfully placed on unpaid suspension and for being wrongfully terminated.

## St. Vincent Heart Center

### Kristina Barga

350.    Nurse Kristina Barga is an employee of Ascension Health and St. Vincent Health at the St. Vincent Heart Center in Indianapolis, Indiana. Nurse Barga has been employed by the St. Vincent Heart Center since March 2021. Nurse Barga is a citizen and resident of Hamilton County, Indiana. Nurse Barga works in the Short Stay Unit where she serves as a primary care coordinator and provides well-coordinated patient care including admitting and preparing patients for cardiac surgeries, carrying out physician orders, and assessing and coordinating patient discharge planning needs.

351.    Nurse Barga requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

352.    Ascension Health, St. Vincent Health, and the St. Vincent Heart Center denied Nurse Barga's request for a religious exemption and she was suspended without pay on November 12, 2021.

353.    However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

354.    Ascension Health, St. Vincent Health, and the St. Vincent Heart Center could have granted Nurse Barga's religious exemption without undue hardship and should have granted her requested religious exemption.

355.    However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center simply ignored the undue hardship standard and violated Title VII.

356.    During Nurse Barga's unjustified suspension without pay, she did not have medical insurance coverage. Consequently, she had to cancel a series of physical therapy and dental appointments. Moreover, due to the lack of medical insurance coverage, she had to pay full cost for her seizure medication, which was previously covered. Both circumstances created significant stress and anxiety. Additionally, Nurse Barga lost countless hours of sleep due to her unjustified suspension, which began to impact many of her personal relationships.

357.    Although Nurse Barga was ultimately recalled, she was not paid for some five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Barga has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Tracey Harbaugh**

358.    Nurse Tracey Harbaugh is an employee of Ascension Health and St. Vincent Health at the St. Vincent Heart Center in Indianapolis, Indiana.

Nurse Harbaugh has been employed by the St. Vincent Heart Center since March 2003. Nurse Harbaugh is a citizen and resident of Hamilton County, Indiana. Nurse Harbaugh works in the Short Stay Unit where she prepares patients for procedures including cardiac catheterizations, TEEs, cardioversions, PV surgeries, and open-heart surgery, as well as assisting recovering patients from these procedures and providing discharge instructions and follow-up.

359.   Nurse Harbaugh requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

360.   Ascension Health, St. Vincent Health, and the St. Vincent Heart Center denied Nurse Harbaugh's request for a religious exemption and she was suspended without pay on November 12, 2021.

361.   However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

362.   Ascension Health, St. Vincent Health, and the St. Vincent Heart Center could have granted Nurse Harbaugh's religious exemption without undue hardship and should have granted her requested religious exemption.

363.   However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center simply ignored the undue hardship standard and violated Title VII.

364.   During Nurse Harbaugh's unjustified suspension without pay, she had to put off necessary doctor visits until her new insurance was in place. She also had to withdraw money from her savings account in order to make ends meet. She was

heartbroken that after fifteen (15) years of faithful service, she was denied a religious exemption and had to seek employment elsewhere. St. Vincent's disloyalty and lack of regard for her service caused her significant stress, anxiety, disappointment, emotional pain and suffering.

365.    Although Nurse Harbaugh was ultimately recalled, she was not paid for at least four (4) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Harbaugh has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Michelle Landis**

366.    Nurse Michelle Landis is an employee of Ascension Health and St. Vincent Health at the St. Vincent Heart Center in Indianapolis, Indiana. Nurse Landis has been employed with the St. Vincent Heart Center since January 2021. Nurse Landis is a citizen and resident of Hamilton County, Indiana. Nurse Landis works in the Progressive Coronary Care Unit where she provides care to inpatients experiencing diseases of the heart.

367.    Nurse Landis requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

368.    Ascension Health, St. Vincent Health, and the St. Vincent Heart Center denied Nurse Landis' request for a religious exemption and she was suspended without pay on November 12, 2021.

369.   However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

370.   Ascension Health, St. Vincent Health, and the St. Vincent Heart Center could have granted Nurse Landis' religious exemption without undue hardship and should have granted her requested religious exemption.

371.   However, Ascension Health, St. Vincent Health, and the St. Vincent Heart Center simply ignored the undue hardship standard and violated Title VII.

372.   Nurse Landis' unjustified suspension without pay and threatened termination of her employment caused great stress and significantly impacted her emotional well-being. Nurse Landis is the sole income provider for her family, as her husband continues to pursue his degree and cares for the home and children. Consequently, her income is the sole source for her family to pay for all necessities, including rent, utilities, medical insurance coverage, and groceries. Her unjustified suspension and threatened termination caused to her experience severe stress, as she was uncertain how she would provide for her family.

373.   Although Nurse Landis was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Landis has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

### St. Vincent-Indianapolis, St. Vincent Hospital-Indianapolis, or Ascension Health-St. Vincent-Indianapolis

**Nurse Josie Brown**

374.    Nurse Josie Brown was an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Nurse Brown had been employed by St. Vincent-Indianapolis since June 2019. Nurse Brown is a citizen and resident of Marion County, Indiana. Nurse Brown worked in the Trauma Neuro Intensive Care Unit, where she provided specialized care for patients suffering from various injuries and/or ailments, including but not limited to, strokes, traumatic brain injuries, gunshot wounds, seizures, organ failure, broken necks, and injuries from motor vehicle accidents.

375.    Nurse Brown requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

376.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Brown's request for a religious exemption and she was suspended without pay on November 12, 2021.

377.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

378.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Brown's religious exemption without undue hardship and should have granted her requested religious exemption.

379.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

380.    Nurse Brown was not paid for some eight (8) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Brown has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

381.    As it became clear that Ascension Health's coercive process and religious discrimination was forcing healthcare workers to abandon their religious objections and receive the vaccination against their will, Nurse Brown left her employment with St. Vincent-Indianapolis and was constructively discharged. While Nurse Brown was able to obtain new employment, her income has suffered, as she took a substantial pay cut. The loss of income has contributed to further stress and anxiety.

**Nurse Robin Burns**

382.    Nurse Robin Burns is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Nurse Burns has been employed by St. Vincent-Indianapolis since April 1994. Nurse Burns is a citizen and resident of Marion County, Indiana. Nurse Burns works in the Mother/Baby Unit where she cares for mothers and infants post-delivery.

383.    Nurse Burns requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

384.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Burns' request for a religious exemption and she was suspended without pay on November 12, 2021.

385.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

386.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Burns' religious exemption without undue hardship and should have granted her requested religious exemption.

387.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

388.    As result of Nurse Burns' unjustified suspension without pay she suffered from high levels of stress. Due to her unjustified suspension, she experienced embarrassment, humiliation, stress, and shame, which created emotional turmoil and anxiety.

389.    Although Nurse Burns was ultimately recalled, she was not paid for some seven (7) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Burns has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Chad Denney**

390.    Nurse Chad Denney is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana.

Nurse Denney has been employed by St. Vincent-Indianapolis since May 2001. Nurse Denney is a citizen and resident of Boone County, Indiana. Nurse Denney works in the Adult Emergency Room as a Clinical Supervisor. As the Clinical Supervisor, Nurse Denney oversees patient care and is responsible for staffing, patient assignments, and communication with the providers and other nursing leadership.

391.   Nurse Denney requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

392.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Denney's request for a religious exemption and he was suspended without pay on November 12, 2021.

393.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

394.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Denney's religious exemption without undue hardship and should have granted his requested religious exemption.

395.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

396.   As result of Nurse Denney's unjustified suspension without pay, he suffered from physical and mental distress, loss of sleep, exhaustion, and anxiety. Additionally, he has suffered substantial financial and professional losses. While

St. Vincent-Indianapolis ultimately granted Nurse Denney's religious exemption on or about February 2, 2022, he was only given the prospect of returning to a non-supervisory position and only on an as needed basis. In order to provide for and protect his family, Nurse Denney, who is the sole provider, sought alternative employment due to the voluntary resignation status communicated by Ascension. Nurse Denney is currently working on a short-term contract with another healthcare provider as Ascension has not made full time work available to him. The contract job does not provide paid time-off. As a result, Nurse Denney has lost the work-life balance that money cannot replace. As stated on Ascension Health's website, "…work-life balance is vital to your ability to flourish personally and professionally." As a St. Vincent-Indianapolis nurse, Nurse Denney earned generous paid time-off that allowed him to rest and recharge with his family. He lost his seniority paid time off, which would have allowed him to spend over six (6) weeks per year with his wife and children. Nurse Denney has lost memories and experiences with his family that cannot be replaced or fully compensated. Due to his demotion, he has lost a significant amount of yearly pay.

397.   Additionally, although Nurse Denney was ultimately recalled, he was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Moreover, as stated above, Nurse Denney was not recalled to an equivalent position. Nurse Denney has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. He is losing wages every week as he

works in a less well-paying job, waiting for St. Vincent-Indianapolis to restore him to his former position.

**Dr. Joshua Frederick**

398.    Joshua Frederick, M.D. served as a physician for Ascension Health and St. Vincent Health at St. Vincent-Indianapolis from June 2016. He is a citizen and resident of Boone County, Illinois. Dr. Frederick served in a variety of roles, including as the Chief Resident of the Internal Medicine and Family Medicine residency. Dr. Frederick became a part of the faculty for the Family Medicine residency program. Dr. Frederick also worked in the labor and delivery unit delivering babies and caring for newborns and postpartum mothers and as a hospitalist. The remainder of his time was spent in the primary care center clinic. As an upper-level resident, he was called in multiple times for additional shifts to help care for many COVID patients in the medical ICU. He also regularly took care of hospitalized COVID patients on the inpatient units as a resident and as faculty.

399.    Dr. Frederick, like all physicians with St. Vincent Health and St. Vincent-Indianapolis, was employed at all times pursuant to a written employment contract for a specific term between Dr. Frederick, and St. Vincent-Indianapolis. Dr. Frederick's written employment contract contains a provision at paragraph 8.8 stating that the provider "will not distribute this Agreement or any part thereof[.]

400.    Dr. Frederick requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

401.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Dr. Frederick's request for a religious exemption and he was to be suspended without pay on November 12, 2021.

402.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

403.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Dr. Frederick's religious exemption without undue hardship and should have granted his requested religious exemption.

404.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

405.    Ascension Health's and St. Vincent Health's threatened termination of Dr. Frederick created severe hardship for Dr. Frederick and operated as a constructive discharge.

406.    Dr. Frederick recognized that he would have to immediately resign from St. Vincent otherwise once he was terminated as St. Vincent told him he would be, he would face extreme difficulties in being re-credentialed and would find it difficult to find work as a physician elsewhere. St. Vincent advised him that he would be terminated "for cause" and Dr. Frederick recognized that a termination "for cause" would impair his ability to be employed elsewhere and potentially restrict his advancement in the profession. Furthermore, St. Vincent advised that it

would enforce his covenant not to compete thereby barring him from employment in Indianapolis, Indiana.

407.    Accordingly, Dr. Frederick was required to immediately seek work elsewhere and although he was able to find employment in Illinois in the Beloit Health System, he was unable to begin work until January 31, 2022, due to credentialing and transitioning issues. Therefore, the failure to grant Dr. Frederick a religious exemption caused him to be without income for more than two and-a-half months. Dr. Frederick has not been compensated for his suspension and constructive discharge. Dr. Frederick has not been compensated for the wages lost by being wrongfully placed on unpaid leave.

408.    Dr. Frederick incurred substantial additional losses and expenses from his suspension and constructive discharge which he reasonably believes total more than $170,000.

409.    Additionally, Dr. Frederick and his wife experienced extreme stress as a result of these circumstances including the need to leave the Indianapolis community. Dr. Frederick's wife was nineteen weeks (19) pregnant at the time of his suspension and the couple lost their baby at twenty-three (23) weeks. Both Dr. Frederick and his wife believe the extreme stress of this situation resulted in the loss of their child. The mental and emotional stress and turmoil of this situation has been overwhelming for Dr. Frederick and his wife.

**Mr. Gary Higginbotham**

410.   Mr. Gary Higginbotham is an employee of Ascension Health and
St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana.
Mr. Higginbotham has been employed by St. Vincent-Indianapolis since June 2012.
Mr. Higginbotham is a citizen and resident of Hamilton County, Indiana.
Mr. Higginbotham works as the Clinic Coordinator in the Rehabilitation Services
department where he serves as a physical therapist providing patients with
physical therapy and implementing care plans to improve or restore his patients'
strength and range of motion.

411.   Mr. Higginbotham requested a religious exemption from Ascension
Health's mandate that he receive the COVID-19 vaccine.

412.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis
denied Mr. Higginbotham's request for a religious exemption and he was suspended
without pay on November 12, 2021.

413.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis
failed to individually evaluate and properly assess his request for a religious
exemption and establish "undue hardship."

414.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis
could have granted Mr. Higginbotham's religious exemption without undue
hardship and should have granted his requested religious exemption.

415.   However, Ascension Health, St. Vincent Health, and St. Vincent-
Indianapolis simply ignored the undue hardship standard and violated Title VII.

416.    Mr. Higginbotham's unjustified suspension without pay on November 12, 2021 and threatened termination of his employment caused him to experience significant stress. Mr. Higginbotham was further very concerned about his ability to provide for the needs of his family if terminated as Ascension Health and St. Vincent threatened. His family was living off of savings which was diminishing during the suspension. He spent many hours seeking new employment. Being concerned that at his age he would be unable to find another position, added to the stress. Normally, since paid time off is earned with each paycheck, he was denied those additional paid hours. Likewise, he was forced to forfeit his retirement deposits and matching employer contributions.

417.    Ironically, Mr. Higginbotham was given a congratulatory plaque the day before his impending suspension. It states, "In appreciation of service excellence to Ascension St. Vincent Physical Therapy, unwavering commitment to compassionate patient care, exemplary teamwork and dedication to ministry, you have our respect, our thanks, and our hearts."

418.    Although Mr. Higginbotham was ultimately recalled, he was not paid for approximately six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Mr. Higginbotham has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Adult-Gerontology Acute Care Nurse Practitioner Board Certified Jennifer Maupin**

419.    Adult-Gerontology Acute Care Nurse Practitioner Board Certified ("AGACNP-BC") Jennifer Maupin served as Nurse Practitioner for Ascension

Health and St. Vincent Health at St. Vincent-Indianapolis from July 20, 2020, and
is a citizen and resident of Marion County, Indiana.

420.   As an adult-gerontology acute care nurse practitioner, she managed
trauma patients at a Level 1 Trauma Center. At this Center, AGACNP-BC Maupin
provided direct treatment and management of health conditions, including
diagnosis and treatment, and ordering and interpreting of diagnostic studies. She
also assisted ten (10) trauma surgeons with 24/7 in-house trauma coverage.

421.   AGACNP-BC Maupin, like all advanced care nurse practitioners with
St. Vincent Health and St. Vincent-Indianapolis, was at all times employed
pursuant to a written employment contract for a specific term between
AGACNP-BC Maupin and St. Vincent-Indianapolis. AGACNP-BC Maupin's written
employment contract contains a provision at paragraph 8.8 stating that the
provider "will not distribute this Agreement or any part thereof[.]

422.   AGACNP-BC Maupin requested a religious exemption from Ascension
Health's mandate that she receive the COVID-19 vaccine.

423.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis
failed to individually evaluate and properly assess her request for a religious
exemption and establish "undue hardship."

424.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis
denied AGACNP-BC Maupin's request for a religious exemption and she was
suspended without pay on November 12, 2021.

425.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted AGACNP-BC Maupin's religious exemption without undue hardship and should have granted her requested religious exemption.

426.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

427.    As previously referenced, on December 20, 2021, AGACNP-BC Maupin received a letter via certified mail from Mr. Metzger stating that AGACNP BC Maupin's employment was being "terminated effective December 20, 2021."

428.    Thus, St. Vincent Health and St. Vincent-Indianapolis claims it was entitled to place AGACNP-BC Maupin on unpaid suspension on November 12, 2021, but not terminate her employment until December 20, 2021, requiring AGACNP BC Maupin to serve a thirty-nine (39) day period of unpaid suspension before terminating her and purporting to extend her covenant not to compete until one year after the December 20, 2021 termination date set forth in Mr. Metzger's letter.

429.    AGACNP-BC Maupin's suspension and termination have been both stressful and depressing and have negatively impacted her relationship with her partner and family. AGACNP-BC Maupin has experienced a substantial financial loss and is exploring alternative career opportunities, as her mortgage, utilities, and other expenses do not wait. Additionally, the emotional stress that goes with her termination is debilitating. For AGACNP-BC Maupin, nursing is not what she does

for a living but is a part of her identity as a person. She has consequently lost a very significant aspect of her daily existence and purpose and this is disorienting and discouraging to her. By insisting on enforcing her covenant not to compete and thereby trying to keep her out of the work force, Ascension Health and St. Vincent have increased AGACNP-BC Maupin's stress and sense of hopelessness.

430.    Additionally, as a result of wrongful termination of her employment, AGACNP-BC Maupin has been unable to renew her Basic Life Support and Advanced Cardiac Life support certifications, which are maintained by use of equipment at the hospital. Further, the ability to obtain the continuing education requirements for AGACNP-BC Maupin's credentials have been halted due to wrongful termination.

431.    The non-compete and non-solicitation clause in her employment contract, which Ascension Health and St. Vincent insist on enforcing, is an impediment to her from seeking employment as a nurse practitioner within the surrounding area.

**Ms. Susana Osborne**

432.    Ms. Susana Osborne is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Ms. Osborne has been employed with St. Vincent-Indianapolis since August 2004. Ms. Osborne is a citizen and resident of Marion County, Indiana. Ms. Osborne works in the Interpreting/Community Outreach department as an interpreter, where she assists in bridging language gaps between the provider and the patient.

Ms. Osborne also works as the store manager at the Beds and Britches, Etc. store, at St. Vincent-Indianapolis which provides coupons to parents who utilize health care and social services.

433.   Ms. Osborne requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

434.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Ms. Osborne's request for a religious exemption and she was suspended without pay on November 12, 2021.

435.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

436.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Ms. Osborne's religious exemption without undue hardship and should have granted her requested religious exemption.

437.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

438.   Ms. Osborne's unjustified suspension without pay on November 12, 2021 and threat of termination caused her worry and stress about her finances, as Ms. Osborne and her husband were forced to survive off their savings to pay for basic necessities.

439.   Although Ms. Osborne was ultimately recalled, she was not paid for some eleven (11) weeks while unilaterally and arbitrarily placed on unpaid

suspension. Ms. Osborne has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Jemael Partlow**

440.    Ms. Jemael Partlow was an employee of Ascension Health and St. Vincent Health at St. Vincent at St. Vincent-Indianapolis in Indianapolis, Indiana. Ms. Partlow had been employed with St. Vincent-Indianapolis since April 2008. Ms. Partlow is a citizen and resident of Howard County, Indiana. Ms. Partlow worked in the Surgery Department as a CST and prepared the sterile field for surgery, hands instruments to surgeons during surgery, and anticipates surgeon needs during procedures.

441.    Ms. Partlow requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

442.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Ms. Partlow's request for a religious exemption and she was suspended without pay on November 12, 2021.

443.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

444.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Ms. Partlow's religious exemption without undue hardship and should have granted her requested religious exemption.

445.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

446.    Ms. Partlow's unjustified suspension without pay on November 12, 2021 and threatened termination of her employment resulted in her experiencing severe angst, stress, worry and depression. After dedicating over thirteen (13) years to St. Vincent-Indianapolis, Ms. Partlow felt immense feelings of hopelessness.

447.    For months during the earlier part of the COVID-19 pandemic, Ms. Partlow worked long hours providing ongoing support and care for patients. Despite her dedication, she felt she had been discarded. As a result of her unjustified suspension, Ms. Partlow became increasingly depressed and worried. She was uncertain as to whether she would acquire a new position prior to her utilities being cut off and felt abandoned and unsupported. As a result, Ms. Partlow was constructively discharged.

448.    Although Ms. Partlow was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Partlow consequently left employment with Ascension Health, St. Vincent Health and St. Vincent-Indianapolis. Ms. Partlow has not been compensated for the wages lost by being wrongfully placed on unpaid suspension and constructively discharged.

**Nurse Amanda Pisano**

449.    Nurse Amanda Pisano is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana.

Nurse Pisano has been employed with St. Vincent-Indianapolis since March 2016. Nurse Pisano is a citizen and resident of Boone County, Indiana. Nurse Pisano works as a Regional Resource Float and supplements staffing throughout the regional network of hospitals to meet nursing shortages.

450.    Nurse Pisano requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

451.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

452.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Pisano's request for a religious exemption and she was suspended without pay on November 12, 2021.

453.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Pisano's religious exemption without undue hardship and should have granted her requested religious exemption.

454.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

455.    Nurse Pisano's unjustified suspension without pay on November 12, 2021 and threatened termination of her employment caused Nurse Pisano to experience extreme stress. As a single parent and the only source of income in her household, her suspension and threatened job loss meant the inability to pay her

mortgage, the possible loss of her home, and the inability to pay her daughter's college tuition.

456.    Although Nurse Pisano was ultimately recalled, she was not paid for some fifteen (15) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Pisano has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Ashley Ploughe**

457.    Nurse Ashley Ploughe was an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana and St. Vincent Kokomo in Kokomo, Indiana. Nurse Ploughe had been employed with St. Vincent Health since January 2019. Nurse Ploughe is a citizen and resident of Howard County, Indiana. Nurse Ploughe worked in the Medical Oncology Outpatient Chemotherapy Clinic and Cancer Center, where she is responsible for admitting and discharging patients, obtaining patient history and performing assessments via observation, interviewing and examining patients, and initiating and discontinuing chemotherapy treatments.

458.    Nurse Ploughe requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

459.    Ascension Health, St. Vincent Health, St. Vincent-Indianapolis, and St. Vincent Kokomo denied Nurse Ploughe's request for a religious exemption and she was suspended without pay on November 12, 2021.

460.    However, Ascension Health, St. Vincent Health, St. Vincent-Indianapolis, and St. Vincent Kokomo failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

461.    Ascension Health, St. Vincent Health, St. Vincent-Indianapolis, and St. Vincent Kokomo could have granted Nurse Ploughe's religious exemption without undue hardship and should have granted her requested religious exemption.

462.    However, Ascension Health, St. Vincent Health, St. Vincent-Indianapolis, and St. Vincent Kokomo simply ignored the undue hardship standard and violated Title VII.

463.    Nurse Ploughe's unjustified suspension without pay on November 12, 2021 and threatened termination of her employment caused Nurse Ploughe to experience extreme stress, anxiety, and depression, which negatively impacted her personal relationships. In lieu of celebrating the holidays, Nurse Ploughe spent the holidays worried and searching for employment.

464.    Although Nurse Ploughe was ultimately recalled, she was not paid for some nine (9) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Ploughe has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Further, Nurse Ploughe was constructively discharged from her position and has suffered damages as a result of her constructive discharge. Had she been promptly granted a religious exemption, Nurse Ploughe would still be employed at St. Vincent.

**Nurse Bonnie Ripberger**

465.   Nurse Bonnie Ripberger was an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Nurse Ripberger had been employed by St. Vincent-Indianapolis since November 2019. Nurse Ripberger is a citizen and resident of Tipton County, Indiana. Nurse Ripberger worked in the Outpatient Infusion and Procedure Center, where she provides care to those patients with compromised immune systems, pre/post operative care of patients receiving foot, hand, pain control, tumors/cysts removal procedures, performed inter-muscular and subcutaneous injections, lab draws, started IV's and provided discharge instructions.

466.   Nurse Ripberger requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

467.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Ripberger's request for a religious exemption and she was suspended without pay on November 12, 2021.

468.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

469.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Ripberger's religious exemption without undue hardship and should have granted her requested religious exemption.

470.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

471.   Nurse Ripberger's unjustified suspension without pay on November 12, 2021 and threatened termination from employment caused her to experience emotional distress and many sleepless nights. Nurse Ripberger's income helps support her family. Since she shares the household expenses with her husband, she was unable to assist financially with those expenses during her suspension. Consequently, Nurse Ripberger identified money saving tactics to ensure that they could pay for their necessities, including utilities, mortgage payments, and groceries. Unfortunately, other bills continued to accumulate during her suspension, increasing her stress.

472.   Although Nurse Ripberger was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Ripberger has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Due to the uncertainty as to her employment, Nurse Ripberger was constructively discharged and had to take outside employment where she makes less money than at St. Vincent Health. Had she been promptly granted a religious exemption Nurse Ripberger would still be employed at St. Vincent Health.

**Nurse Rochelle Rott**

473.   Nurse Rochelle Rott is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Nurse Rott

has been employed by St. Vincent-Indianapolis since September 2020. Nurse Rott is a citizen and resident of Hamilton County, Indiana. Nurse Rott works as an Intensive Care Unit ("ICU") Regional Resource Nurse and she supplements staffing throughout the regional network of hospitals to meet ICU nursing shortages.

474.   Nurse Rott requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

475.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Rott's request for a religious exemption and she was suspended without pay on November 12, 2021.

476.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

477.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Rott's religious exemption without undue hardship and should have granted her requested religious exemption.

478.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

479.   Nurse Rott's unjustified suspension without pay on November 12, 2021 and threatened termination from employment caused Nurse Rott to suffer extreme stress. Nurse Rott is a single parent and obligated to make ongoing tuition payments to send her daughter to private school. Without any income, Nurse Rott feared that her daughter would have to withdraw from school. The risk of this

potential disruption to her daughter caused Nurse Rott extreme stress and concern. Additionally, as the only source of income for her family, she is responsible for paying rent, utilities, groceries, and all other expenses. Being unable to provide for these necessities increased Nurse Rott's stress, as it meant a loss of stability for her daughter.

480.   Although Nurse Rott was ultimately recalled, she was not paid for some ten (10) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Rott has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Tina Sneed**

481.   Ms. Tina Sneed is an employee of Ascension Health and St. Vincent Health at St. Vincent-Indianapolis in Indianapolis, Indiana. Ms. Sneed is a citizen and resident of Boone County, Indiana. Ms. Sneed has been employed by St. Vincent-Indianapolis since September 2020. Ms. Sneed works in the Surgery department as a CSFA and provides direct assistance to surgeons during surgical procedures.

482.   Ms. Sneed requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

483.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Ms. Sneed's request for a religious exemption and she was suspended without pay on November 12, 2021.

484.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

485.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Ms. Sneed's religious exemption without undue hardship and should have granted her requested religious exemption.

486.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

487.    After thirty-nine (39) years of dedicated service and care to her patients, Ms. Sneed's unjustified suspension and threatened job loss impacted her stress level and her mental and physical health. The emotional anxiety and stress from the suspension and threatened termination was overwhelming and resulted in many sleepless nights.

488.    Although Ms. Sneed was ultimately recalled, she was not paid for the weeks she was unilaterally and arbitrarily placed on unpaid suspension. Ms. Sneed has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Physician Assistant Amanda Thiergartner**

489.    Physician Assistant Certified ("PA-C") Amanda Thiergartner has served as a physician assistant for Ascension Health and St. Vincent Health at St. Vincent-Indianapolis since February 23, 2015. She is a citizen and resident of Hamilton County, Indiana. As a physician assistant with the Trauma Surgery

department, she provides emergent care to critically ill patients with traumatic injuries. This care includes, but is not limited to, ordering appropriate diagnostic studies and directly treating injuries, assisting trauma surgeons in the OR, and performing/facilitating life-saving interventions. PA-C Thiergartner manages care of all trauma patients at this Level 1 trauma center.

490.    PA-C Thiergartner, like all physician assistants with St. Vincent Health and St. Vincent-Indianapolis, has been employed at all times pursuant to a written employment contract for a specific term between PA-C Thiergartner and St. Vincent-Indianapolis. PA-C Thiergartner's written employment contract contains a provision at paragraph 8.8 stating that the provider "will not distribute this Agreement or any part thereof[.]

491.    PA-C Thiergartner requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine. In addition, in communications with Ascension during this time she made clear that she was pregnant and that her pregnancy and desire not to harm her baby by taking a vaccine with unknown effect on developing babies supported her request for exemption from the COVID-19 vaccines.

492.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied PA-C Thiergartner's request for a religious exemption and she was suspended without pay on November 12, 2021.

493.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

494.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted PA-C Thiergartner's religious exemption without undue hardship and should have granted her requested religious exemption.

495.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

496.    PA-C Thiergartner's unjustified suspension without pay and threatened job loss impacted her family financially. Due to the loss of income, PA-C Thiergartner experienced extreme stress that impacted her mental and emotional health. As a pregnant mother, this additional stress worried her throughout her pregnancy and detracted from, and made more difficult, the experience of pregnancy.

497.    PA-C Thiergartner believes the extreme stress she experienced due to Ascension's denial of her religious exemption, suspension without pay and threatened termination adversely impacted her pregnancy. While all ultrasounds of her pregnancy through early November were normal, including the 20-week detailed anatomy ultrasound, at some point thereafter her baby stopped growing normally. PA-C Thiergartner's baby had to be emergently delivered at thirty-four (34) weeks in February and was only 3 pounds, 13 ounces at birth. PA C Thiergartner believes the extreme stress from St. Vincent's refusal to grant

her exemption request and its coercive efforts in relation to the exemption process adversely impacted her pregnancy and the development of her baby daughter.

498.   Although PA-C Thiergartner was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. PA-C Thiergartner has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Milica Vranic**

499.   Nurse Milica Vranic is an employee of Ascension Health and St. Vincent at St. Vincent-Indianapolis in Indianapolis, Indiana. Nurse Vranic has been employed with St. Vincent-Indianapolis since July 2021. Nurse Vranic is a citizen and resident of Marion County, Indiana. She works in the Observation/Medical Surgical unit, where she provides direct bedside care to patients with a variety of acute illnesses ranging from infection, altered mental status, diabetes, and fall-related injuries.

500.   Nurse Vranic requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

501.   Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis denied Nurse Vranic's request for a religious exemption and she was suspended without pay on November 12, 2021.

502.   However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

503.    Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis could have granted Nurse Vranic's religious exemption without undue hardship and should have granted her requested religious exemption.

504.    However, Ascension Health, St. Vincent Health, and St. Vincent-Indianapolis simply ignored the undue hardship standard and violated Title VII.

505.    Nurse Vranic's unjustified suspension without pay on November 12, 2021 and threatened termination of her employment caused Nurse Vranic to experience significant stress. Nurse Vranic provides medical insurance coverage for herself. During her suspension, she lost her medical insurance coverage and was unable to seek medical treatment for her yearly preventive physical. Additionally, she was unable to seek treatment regarding a series of symptoms involving shortness of breath, headaches, and skin issues. As an individual who values her health, this unjustified suspension and threat of termination, as well as the inability to properly care for health needs, created additional stress and took a further toll on her health. Moreover, Nurse Vranic's family includes her twin sister who she supports. Due to Nurse Vranic's unjustified suspension, her sister was forced to shift her focus from her coursework to working extra shifts to pay for their household expenses. This caused Nurse Vranic to be stressed, as her sister's focus should have been on her coursework.

506.    Although Nurse Vranic was ultimately recalled, she was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension.

Nurse Vranic has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

## Healthcare Education and Simulation Center

### Nurse Rhonda Davis

507.   Nurse Rhonda Davis was an employee of Ascension Health and St. Vincent Health at the Healthcare Education and Simulation Center in Indianapolis Indiana. Nurse Davis had been employed by the Healthcare Education and Simulation Center since April 2020 and was terminated on or about January 27, 2022. Nurse Davis is a citizen and resident of Montgomery County, Indiana. Nurse Davis worked as the Internal Medicine Clinic Team Lead and was responsible for operations, including but not limited to, clinical staff, patient care, and provider support procedures.

508.   Nurse Davis requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

509.   Ascension Health, St. Vincent Health, and the Healthcare Education and Simulation Center denied Nurse Davis' request for a religious exemption and she was suspended without pay on November 12, 2021.

510.   However, Ascension Health, St. Vincent Health, and the Healthcare Education and Simulation Center failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

511.   Ascension Health, St. Vincent Health, and the Healthcare Education and Simulation Center could have granted Nurse Davis' religious exemption

without undue hardship and should have granted her requested religious exemption.

512.   However, Ascension Health, St. Vincent Health, and the Healthcare Education and Simulation Center simply ignored the undue hardship standard and violated Title VII.

513.   Nurse Davis' unjustified suspension without pay and subsequent termination caused her extreme stress. Nurse Davis' salary helps provide for the essential needs of her family. Due to her unjustified suspension and termination, she has suffered a significant loss of income and been unable to support her family. Additionally, due to termination, Nurse Davis lost her health, dental and vision insurance, vacation and sick time, forfeited 401k contributions, life insurance, and the tenure of her position. Her family coverage for health, dental and vision is minimal in comparison and costs considerably more than her group health plan. She also has a substantially higher deductible for her family plan. These losses have contributed to her stress.

514.   Nurse Davis was ultimately terminated on January 27, 2022. She did not receive any written notice regarding her termination. Moreover, she has not been paid for the ten (10) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Davis has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Nurse Davis was fulfilling all legitimate requirements of her job and was wrongfully terminated merely because she was denied a religious exemption.

## St. Vincent Stress Center

**Mr. Chris Parr**

515.    Mr. Chris Parr was an employee of Ascension Health and St. Vincent Health at the St. Vincent Stress Center. Mr. Parr had been employed with the St. Vincent Stress Center since October 2021. Mr. Parr is a citizen and resident of Lawrence County, Indiana. Mr. Parr worked as a Mental Health Counselor and conducted psychological assessments to determine the appropriate level of care needed for patients at the St. Vincent Stress Center. Additionally, as the COVID-19 pandemic created unprecedent needs for mental health support, Mr. Parr provided telehealth for sister hospitals that required support.

516.    Mr. Parr requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

517.    Ascension Health, St. Vincent Health, and the St. Vincent Stress Center denied Mr. Parr's request for a religious exemption and he was suspended without pay on November 12, 2021.

518.    However, Ascension Health, St. Vincent Health, and the St. Vincent Stress Center failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

519.    Ascension Health, St. Vincent Health, and the St. Vincent Stress Center could have granted Mr. Parr's religious exemption without undue hardship and should have granted his requested religious exemption.

520.   However, Ascension Health, St. Vincent Health, and the St. Vincent Stress Center simply ignored the undue hardship standard and violated Title VII.

521.   Mr. Parr's unjustified suspension without pay and termination has caused him to experience significant stress. Mr. Parr's income helps provide for the essential needs of his family. Without income, Mr. Parr has faced incredible financial hardship and has dealt with continued angst, stress and strain resulting from being unable to pay his bills. Despite Mr. Parr's willingness to provide continued mental health care support during the pandemic, it was demoralizing to be removed from his position due to his sincerely held religious beliefs.

522.   Mr. Parr was ultimately terminated on February 3, 2022. He was not paid while unilaterally and arbitrarily placed on unpaid suspension. Mr. Parr has not been compensated for the wages lost by being wrongfully placed on unpaid suspension. Mr. Parr was fulfilling all legitimate requirements of his job and was wrongfully terminated because he was denied a religious exemption.

### St. Vincent Medical Group and/or Ascension Health Medical Group St. Vincent

**Heather King**

523.   Nurse Heather King is an employee of Ascension Health and St. Vincent Health for the St. Vincent Medical Group in Indianapolis, Indiana. Nurse King has been employed with the St. Vincent Medical Group since September 2021. Nurse King is a citizen and resident of Hamilton County, Indiana. Nurse King works in the Pastoral Spiritual Care department as a Remote Clergy

Care Nurse Navigator and provides concierge style nursing services for the priests within the Archdiocese of Indianapolis.

524.    Nurse King requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

525.    Ascension Health, St. Vincent Health, and the St. Vincent Medical Group failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

526.    Ascension Health, St. Vincent Health, and the St. Vincent Medical Group denied Nurse King's request for a religious exemption and she was suspended without pay on November 12, 2021.

527.    Ascension Health, St. Vincent Health, and the St. Vincent Medical Group could have granted Nurse King's religious exemption without undue hardship and should have granted her requested religious exemption.

528.    However, Ascension Health, St. Vincent Health, and the St. Vincent Medical Group simply ignored the undue hardship standard and violated Title VII.

529.    Nurse King's unjustified suspension without pay and threatened termination of employment caused her extreme stress and impacted her mental and emotional well-being. Nurse King's income helps provide for her family. Both Nurse King and her husband are obligated to make tuition payments to send their children to a Christian school so that they are educated, not just academically, but in their faith. During her suspension, Nurse King's family was unable to pay tuition and had to request an assessment based on her reduced income. While the school

offered to reduce their tuition, she needed to provide the school proof of her job loss.

However, the St. Vincent Medical Group would not provide her with a termination

letter, which caused her to experience additional stress.

530.    Although Nurse King was ultimately recalled, she was not paid for

some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension.

Nurse King has not been compensated for the wages lost by being wrongfully placed

on unpaid suspension.

**Certified Nurse Midwife Bethany Monte**

531.    Certified Nurse Midwife ("CNM") Bethany Monte has served as a

Certified Nurse Midwife for Ascension Health and St. Vincent Health for the

St. Vincent Medical Group from February 12, 2018, and is a citizen and resident of

Marion County, Indiana.

532.    CNM Monte, like all certified nurse midwives with the St. Vincent

Medical Group, was at all times employed pursuant to a written employment

contract for a specific term between CNM Monte and St. Vincent Medical Group.

CNM Monte's written employment contract contains a provision at paragraph 8.8

stating that the provider "will not distribute this Agreement or any part thereof[.]

533.    As a certified nurse midwife, CNM Monte provided care, support and

advice during pregnancy, labor, and birth. As a certified nurse midwife, she also

addressed women's care as a whole, including yearly exams and wellness care.

534.    CNM Monte requested a religious exemption from Ascension Health's

mandate that she receive the COVID-19 vaccine.

535.   Ascension Health, St. Vincent Health and the St. Vincent Medical Group failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

536.   Ascension Health, St. Vincent Health and the St. Vincent Medical Group denied CNM Monte's request for a religious exemption and she was suspended without pay on November 12, 2021.

537.   Ascension Health, St. Vincent Health and the St. Vincent Medical Group could have granted CNM Monte's religious exemption without undue hardship and should have granted her requested religious exemption.

538.   However, Ascension Health, St. Vincent Health and the St. Vincent Medical Group simply ignored the undue hardship standard and violated Title VII.

539.   As previously mentioned, on January 21, 2022, CNM Monte received a letter via certified mail from Mr. Metzger. Mr. Metzger's letter stated that CNM Monte's employment with the St. Vincent Medical Group was being "terminated effective January 22, 2022."

540.   Thus, the St. Vincent Medical Group claims it was entitled to place CNM Monte on unpaid suspension on November 12, 2021, but not terminate her employment until January 22, 2022, requiring CNM Monte to serve a seventy-two (72) day period of unpaid suspension before terminating her and purporting to extend her covenant not to compete until one year after the January 22, 2022 termination date set forth in Mr. Metzger's letter.

541.    As a result of CNM Monte's suspension and termination, on information and belief, her reputation in the medical community and with her patients has been damaged. She was directed to leave patients that she cared for over the last three (3) to four (4) years. Unfortunately, St. Vincent Health and the St. Vincent Medical Group failed to inform her patients as to her departure and many assumed that she left the practice due to non-compliance with the vaccine mandate. Thus, St. Vincent's conduct harmed CNM Monte's reputation in the community. As she moves forward in her career, CNM Monte worries about restoring her professional reputation.

542.    Additionally, CNM Monte provided medical, dental, and vision insurance coverage for her family, including her husband and two (2) children. While she has obtained insurance coverage, this increased expense has caused a great financial hardship on her family.

543.    Moreover, there is a non-compete and non-solicitation clause in her employment contract that Ascension Health and St. Vincent have insisted on enforcing, which has caused her to lose patients that she provided care for prior to this Agreement. This loss has been debilitating to her practice and discouraging to her as she is unable to provide care to individuals to whom she is deeply committed. She has found the vindictiveness of Ascension's and St. Vincent's enforcement of the covenant not to compete particularly disheartening.

544.    CNM Monte has not been compensated for the time period she was wrongfully placed on suspension. Additionally, she has lost substantial income as

the result of the wrongful termination of her employment which came about solely because she was improperly denied a religious exemption.

**Nurse Practitioner Daniella Stafford**

545.    Nurse Practitioner ("NP") Daniella Stafford served as a Family Nurse Practitioner for Ascension Health and St. Vincent Health for the St. Vincent Medical Group from June 19, 2017, and is a citizen and resident of Delaware County, Indiana.

546.    As a nurse practitioner, she provided a variety of care, which included but was not limited to, performing preventative health assessments, screening, and immunizations; ordering, performing, and interpreting diagnostic studies; counseling and educating patients and their families; and performing minor procedures such as suturing or stapling lacerations.

547.    NP Stafford, like all nurse practitioners with the St. Vincent Medical Group, was at all times employed pursuant to a written employment contract for a specific term between NP Stafford and the St. Vincent Medical Group. NP Stafford's written employment contract contains a provision at paragraph 8.8 stating that the provider "will not distribute this Agreement or any part thereof[.]

548.    NP Stafford requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

549.    Ascension Health, St. Vincent Health and the St. Vincent Medical Group denied NP Stafford's request for a religious exemption and she was suspended without pay on November 12, 2021.

550.    However, Ascension Health, St. Vincent Health and the St. Vincent Medical Group failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

551.    Ascension Health, St. Vincent Health and the St. Vincent Medical Group could have granted NP Stafford's religious exemption without undue hardship and should have granted her requested religious exemption.

552.    However, Ascension Health, St. Vincent Health and the St. Vincent Medical Group simply ignored the undue hardship standard and violated Title VII.

553.    As mentioned previously, over two hundred days have lapsed since her suspension and NP Stafford has yet to be provided any written response to her request to reconsider her request for religious exemption. On or about December 21, 2021, NP Stafford sought to ascertain information as to whether she would be permitted to return to work and was told in a telephone call that she was allegedly terminated on December 20, 2021. However, NP Stafford has still received no written confirmation of her employment status and never received a termination letter. She has been left in limbo and this has created uncertainty and stress.

554.    The impact on NP Stafford of the conduct of Ascension Health and St. Vincent Health has been devastating. After working as a nurse practitioner for nine (9) years, learning and cultivating her skills and confidence, her position was abruptly taken from her without explanation. NP Stafford has experienced feelings of worry and despair, as her income helps support her family financially. Without

her income, both NP Stafford and her husband have been worried about their mortgage, being able to make payments, or potentially losing their home.

555. There is also a non-compete and non-solicitation clause in her employment contract, which is an impediment to her seeking employment as a nurse practitioner within the surrounding area. While NP Stafford eventually obtained an offer, due to credentialing, she was unable to begin the position until at least May 1, 2022, which is twenty-four (24) weeks after her suspension. For a family with accumulating expenses, the twenty-four (24) week delay has been emotionally difficult and very stressful.

556. NP Stafford's termination was wrongful and in violation of Title VII. Had she received a religious exemption, she would still be employed at St. Vincent Health. She is therefore entitled to receive in front pay the difference between what she would have made at St. Vincent and any salary she makes in her new position.

**Advanced Nurse Practitioner Alaynah Weisend**

557. Advanced Nurse Practitioner ("ANP") Alaynah Weisend served as an Advanced Nurse Practitioner for Ascension Health and St. Vincent Health for the St. Vincent Medical Group from October 22, 2020, and is a citizen and resident of Miami County, Indiana.

558. ANP Weisend requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

559.   Ascension Health, St. Vincent Health and the St. Vincent Medical Group denied ANP Weisend's request for a religious exemption and she was suspended without pay on November 12, 2021.

560.   However, Ascension Health, St. Vincent Health and the St. Vincent Medical Group failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

561.   Ascension Health, St. Vincent Health and the St. Vincent Medical Group could have granted ANP Weisend's religious exemption without undue hardship and should have granted her requested religious exemption.

562.   However, Ascension Health, St. Vincent Health and the St. Vincent Medical Group simply ignored the undue hardship standard and violated Title VII.

563.   As an advanced nurse practitioner in the Cardiology Department, she provided care in a variety of ways which included, but was not limited to, performing preventative health assessments, screening, and immunizations; and ordering, performing, and interpreting diagnostic studies of its cardiology patients.

564.   ANP Weisend, like all nurse practitioners with St. Vincent Health and St. Vincent Medical Group, was at all times employed pursuant to a written employment contract for a specific term between ANP Weisend and the St. Vincent Medical Group. ANP Weisend's written employment contract contains a provision at paragraph 8.8 stating that the provider "will not distribute this Agreement or any part thereof[.]

119

565.    While ANP Weisend was temporarily recalled on December 26, 2021, nineteen (19) days later, on January 14, 2022, she was terminated. However, her effective termination date would not be until eighty-three (83) days later on April 14, 2022. ANP Weisend received a hand delivered a letter from Mr. McNabb stating that "Ascension Health Medical Group St. Vincent has made the difficult decision to eliminate your position due to a reduction in force affecting your department. This position elimination within your department is expected to be permanent and will result in the termination of your employment."

566.    Thus, St. Vincent Health and the St. Vincent Medical Group claims that it was entitled to place ANP Weisend on suspension twice. St. Vincent Health and St. Vincent Medical Group required ANP Weisend to serve a forty-four (44) day unpaid suspension before temporarily recalling her on December 26, 2021. Nineteen days later, on January 21, 2022, she was terminated which extended her covenant not to compete until one year after the April 14, 2022 termination date set forth in Mr. McNabb's letter. This conduct is wrongful and vindictive and obviously calculated to simply extend ANP Weisend's non-compete and prevent her from being re-employed.

567.    ANP Weisend is both mentally and emotionally drained from her suspension and later termination. As a single parent of three young children, ages twelve (12), six (6), and one (1), her position provided not only financial security for her family but the flexibility to be a mother and have a career. After sacrificing

many evenings, events, and moments with her children, to lose her position due to her religious beliefs has been devastating.

568.    The non-compete and non-solicitation clause in her employment contract, which St. Vincent has wrongfully extended, is an impediment to her seeking employment as a nurse practitioner within the surrounding area. As a single parent and mother who seeks stability for her children and cannot easily move to obtain alternative employment, these clauses impede her career and livelihood.

569.    The suspension without pay and termination of ANP Weisend were wrongful and in violation of Title VII. ANP Weisend was meeting all legitimate expectations of her job before she was suspended. She was adversely treated solely because she sought a religious exemption and it was denied.

## St. Vincent Seton

### Jennifer Collins

570.    Nurse Jennifer Collins is an employee of Ascension Health and St. Vincent Health at St. Vincent Seton in Indianapolis, Indiana. Nurse Collins has been employed by St. Vincent since January 1999. Nurse Collins is a citizen and resident of Howard County, Indiana. Nurse Collins works in the Wound Care Department, where she assesses, monitors, and identifies treatment plans for patients with complex wounds and ostomies. As a wound care nurse, Nurse Collins works closely with treatment providers, patients, and nursing staff to ensure that

personalized treatment plans are followed in order to prevent future infection or injury.

571.    Nurse Collins requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

572.    Ascension Health, St. Vincent Health, and St. Vincent Seton denied Nurse Collins' request for a religious exemption and she was suspended without pay on November 12, 2021.

573.    However, Ascension Health, St. Vincent Health, and St. Vincent Seton failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

574.    Ascension Health, St. Vincent Health, and St. Vincent Seton could have granted Nurse Collins' religious exemption without undue hardship and should have granted her requested religious exemption.

575.    However, Ascension Health, St. Vincent Health, and St. Vincent Seton simply ignored the undue hardship standard and violated Title VII.

576.    Nurse Collins' unjustified suspension without pay caused her to experience significant stress as her salary helps provide for the essential needs of her family. Without her income, her family experienced a significant loss in monthly income.

577.    Although Nurse Collins was ultimately recalled, she was not paid for some seven (7) weeks while unilaterally and arbitrarily placed on unpaid

suspension. Nurse Collins has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

## St. Vincent Williamsport

**Ms. Kaylyn Applegate**

578.    Ms. Kaylyn Applegate is an employee of Ascension Health and St. Vincent Health at St. Vincent Williamsport in Williamsport, Indiana. Ms. Applegate has been employed by St. Vincent Williamsport since September 2020. Ms. Applegate is a citizen and resident of Fountain County, Indiana. Ms. Applegate works in the Radiology Department, where she serves as a multi-modality technologist performing a variety of radiographic procedures used in the diagnostic treatment of illness and injuries.

579.    Ms. Applegate requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

580.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport denied Ms. Applegate's request for a religious exemption and she was suspended without pay on November 12, 2021.

581.    However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

582.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport could have granted Ms. Applegate's religious exemption without undue hardship and should have granted her requested religious exemption.

583.   However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport simply ignored the undue hardship standard and violated Title VII.

584.   During Ms. Applegate's unjustified suspension without pay, she experienced significant anxiety, stress, and depression. Ms. Applegate is a single parent and sole provider for her ten (10) year-old child. As a single parent, and with no alternative source of income, Ms. Applegate relied on credit cards while suspended without pay for basic necessities and household needs, which contributed to her anxiety and stress.

585.   Although Ms. Applegate was ultimately recalled, she was not paid for approximately eight (8) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Applegate has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Nurse Madison Kuhn**

586.   Nurse Madison Kuhn is an employee of Ascension Health and St. Vincent Health at St. Vincent Williamsport in Williamsport, Indiana. Nurse Kuhn has been employed with St. Vincent Williamsport since May 2021. Nurse Kuhn is a citizen and resident of Tippecanoe County, Indiana. Nurse Kuhn works in the Emergency Department where she assesses, treats, and monitors emergency situations to ensure well-coordinated patient care.

587.   Nurse Kuhn requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

588.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport denied Nurse Kuhn's request for a religious exemption and she was suspended without pay on November 12, 2021.

589.    However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

590.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport could have granted Nurse Kuhn's religious exemption without undue hardship and should have granted her requested religious exemption.

591.    However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport simply ignored the undue hardship standard and violated Title VII.

592.    Nurse Kuhn's unjustified suspension without pay on November 12, 2021 and threatened termination of her employment created significant stress and anxiety. Nurse Kuhn's income helps support her family, which includes her husband and newborn daughter. Due to her suspension, she was unable to contribute financially to family expenses. Consequently, her husband obtained a part-time job to make up for her lost income. While her husband planned to apply to paramedic school, due to her loss of income, he was unable to pursue this goal. Consequently, her husband worked every day between both jobs and was unable to spend time with their newborn child. This lost bonding time with their newborn child caused stress within their marriage.

593.    Although Nurse Kuhn was ultimately recalled, she was not paid for some five (5) weeks while unilaterally and arbitrarily placed on unpaid suspension. Nurse Kuhn has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Mr. Joshua Miller**

594.    Mr. Joshua Miller is an employee of Ascension Health and St. Vincent Health at St. Vincent Williamsport in Williamsport, Indiana. Mr. Miller has been employed with St. Vincent Williamsport since August 2005. Mr. Miller is a citizen and resident of Vermillion County, Indiana. Mr. Miller works in the radiology department as an X-Ray Technician, where he performs x-rays to aid in the diagnosis of medical problems.

595.    Mr. Miller requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

596.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport denied Mr. Miller's request for a religious exemption and he was suspended without pay on November 12, 2021.

597.    However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

598.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport could have granted Mr. Miller's religious exemption without undue hardship and should have granted his requested religious exemption.

126

599.    However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport simply ignored the undue hardship standard and violated Title VII.

600.    Mr. Miller's unjustified suspension and threatened termination of employment significantly impacted his mental health and caused him to experience significant stress. Mr. Miller's income helps support his family. Due to his unjustified suspension, Mr. Miller had no other option but to borrow money to pay his rent and other expenses, which increased his stress.

601.    Although Mr. Miller was ultimately recalled, he was not paid for some six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension. Mr. Miller has not been compensated for the wages lost by being wrongfully placed on unpaid suspension.

**Ms. Tiffany Miller**

602.    Ms. Tiffany Miller is an employee of Ascension Health and St. Vincent Health at St. Vincent Williamsport in Williamsport, Indiana. Ms. Miller has been employed with St. Vincent Williamsport since July 2004. Ms. Miller is a citizen and resident of Vermillion County, Indiana. Ms. Miller works in the Radiology department as a Sonographer and Radiographer.

603.    Ms. Miller requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

604.    Ascension Health, St. Vincent Health, and St. Vincent Williamsport denied Ms. Miller's request for a religious exemption and she was suspended without pay on November 12, 2021.

605.   However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

606.   Ascension Health, St. Vincent Health, and St. Vincent Williamsport could have granted Ms. Miller's religious exemption without undue hardship and should have granted her requested religious exemption.

607.   However, Ascension Health, St. Vincent Health, and St. Vincent Williamsport simply ignored the undue hardship standard and violated Title VII.

608.   Ms. Miller's unjustified suspension and threatened termination of her employment adversely impacted her mental health. Ms. Miller's income supports her family of six (6). Although her husband was able to work some overtime, her family was only barely able to make payments to keep the household running. The combination of her suspension during the holidays and the inability to pay her bills caused Ms. Miller to experience significant stress.

609.   Although Ms. Miller was ultimately recalled, she was not paid for some seven (7) weeks while unilaterally and arbitrarily placed on unpaid suspension. Ms. Miller has not been compensated for the wages lost by being wrongfully placed on unpaid suspension by St. Vincent.

## Ascension Health-IS

**Mr. Robert Runge**

610.   Mr. Robert Runge was a remote employee of Ascension Health at Ascension Health-IS. Mr. Runge is a citizen and resident of Butler County, Ohio. Mr. Runge had been employed by Ascension Health-IS since June 2017 as an offsite

technical engineering analyst and he was responsible for handling endpoint detection and threat responses for the devices of Ascension Health's end-users. Mr. Runge oversaw the deployment, tuning, and maintenance of anti-malware/anti-virus solutions, identified and addressed endpoint issues to enhance application performance, and maintained the technical integrity of the Ascension Health enterprise environment. As a remote employee, Mr. Runge's job did not require him to come into regular contact with either co-workers or patients.

611.    Mr. Runge requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

612.    However, Ascension Health and Ascension Health-IS failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

613.    Ascension Health and Ascension Health-IS simply ignored the undue hardship standard and violated Title VII.

614.    Consequently, Mr. Runge was improperly denied a religious exemption.

615.    Mr. Runge was coerced to abandon his religious objections to the COVID-19 vaccination in order to maintain employment. Fearing he would be unable to provide for his family if he was terminated by Ascension Health, Mr. Runge received the first dose of the COVID-19 vaccine and soon became ill. Mr. Runge then requested a second religious accommodation but was denied, again.

616.    Again, Ascension Health and Ascension Health-IS failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

617.    Ascension Health and Ascension Health-IS could have granted Mr. Runge's religious exemption without undue hardship and should have granted his requested religious exemption.

618.    However, Ascension Health and Ascension Health-IS simply ignored the undue hardship standard and violated Title VII.

619.     Mr. Runge consequently left employment with Ascension Health and Ascension Health-IS. He was constructively discharged as a result of the wrongful refusal to grant him a religious exemption. Mr. Runge has lost significant income and experienced significant stress and emotional turmoil as a result of the foregoing violations of Title VII and being put into a position where he had to decide between providing for his family or following his religious convictions.

### Ascension Health Ministry Service Center

**Mr. Robert Clements**

620.    Mr. Robert Clements was a remote employee of Ascension Health at Ascension Health Ministry Service Center in Indianapolis, Indiana. Mr. Clements had been employed by Ascension Health Ministry Service Center since July 2018. Mr. Clements is a citizen and resident of Hamilton County, Indiana. Mr. Clements worked as a Senior Financial Analyst in the Centralized Market/Clinic Accounting Department, and provided financial and accounting services, including but not limited to, preparing monthly journal entries related to hospital and clinic

operations, analyzing financial statements for business units and departments to identify year-to-year and month-to-month trends variances, and preparing reports related to the divesture of business units. Mr. Clements has no healthcare patient contact in his job as he worked remotely since March 2020.

621.   Mr. Clements requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

622.   Ascension Health and Ascension Health Ministry Service Center denied Mr. Clements' request for a religious exemption and he was suspended without pay on November 12, 2021.

623.   However, Ascension Health and Ascension Health Ministry Service Center failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

624.   Ascension Health and Ascension Health Ministry Service Center could have granted Mr. Clements' religious exemption without undue hardship and should have granted his requested religious exemption.

625.   However, Ascension Health and Ascension Health Ministry Service Center simply ignored the undue hardship standard and violated Title VII.

626.   Mr. Clements' unjustified suspension without pay caused him extreme stress. Mr. Clements' salary helps provide for the essential needs of his family, which includes, but is not limited to their mortgage, groceries, and utilities. During his suspension, Mr. Clements experienced daily stress and anxiety concerning his ability to pay these expenses. The daily strain of looking for new employment,

coupled with the anxiety of being unable to financially provide for his family, began to take a toll on his mental and emotional health.

627.   Although Mr. Clements was ultimately recalled by Ascension Health Ministry Service Center, due to the immense stress from loss of his income and potential termination and being concerned about whether he could maintain a religious exemption long-term with Ascension, he accepted alternative employment and was constructively discharged. Nevertheless, Mr. Clements was not paid for some four (4) weeks while unilaterally and arbitrarily placed on unpaid suspension by Ascension Health Ministry Service Center. Mr. Clements has not been compensated for the wages lost by being wrongfully placed on unpaid suspension by Ascension Health Ministry Service Center.

628.   Mr. Clements' loss of employment at Ascension constituted a constructive discharge and is causing him continuing damages.

**Ms. Brenda Hartman**

629.   Ms. Brenda Hartman was an employee of Ascension Health at Ascension Health Ministry Service Center in Indianapolis, Indiana. Ms. Hartman had been employed by Ascension Health Ministry Service Center since April 2011. Ms. Hartman is a citizen and resident of Marion County, Indiana. Ms. Hartman worked as a remote employee in the finance department as the manager of payroll initiatives and manages the Garnishment team. Additionally, Ms. Hartman served as the payroll system operations subject matter expert and was responsible for representing payroll on all internal and external projects, including mergers,

acquisitions, divestitures, and software upgrades. Ms. Hartman did not have direct patient contact in her job.

630.    Ms. Hartman requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

631.    Ascension Health and Ascension Health Ministry Service Center denied Ms. Hartman's request for a religious exemption and she was suspended without pay on November 12, 2021.

632.    However, Ascension Health and Ascension Health Ministry Service Center failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

633.    Ascension Health and Ascension Health Ministry Service Center could have granted Ms. Hartman's religious exemption without undue hardship and should have granted her requested religious exemption.

634.    However, Ascension Health and Ascension Health Ministry Service Center simply ignored the undue hardship standard and violated Title VII.

635.    Ms. Hartman is the sole provider for her household. Had she not been recalled, Ms. Hartman would have been unable to pay her mortgage, utilities, and other expenses, and her temporary loss of income caused her to experience significant stress.

636.    Although Ms. Hartman was ultimately recalled by Ascension Health Ministry Service Center, she was not paid for approximately six (6) weeks while unilaterally and arbitrarily placed on unpaid suspension by Ascension Health

Ministry Service Center. Ms. Hartman has not been compensated for the wages lost by being wrongfully placed on unpaid suspension by Ascension Health Ministry Service Center.

**Ms. Jodi Wolfenbarger**

637.    Ms. Jodi Wolfenbarger is an employee of Ascension Health at Ascension Health Ministry Service Center at the Health and Wellness Center in Bedford, Indiana. Ms. Wolfenbarger is a citizen and resident of Orange County, Indiana. Ms. Wolfenbarger has been employed with St. Vincent Ascension Health Ministry Service Center at the Health and Wellness Center since 2016 but originally began her employment with Ascension Health Medical Group in March 2005. Ms. Wolfenbarger works as a Representative-Biller.

638.    Due to Ms. Wolfenbarger's underlying health condition, Ms. Wolfenbarger initially requested a medical exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

639.    Ascension Health and Ascension Health Ministry Service Center denied Ms. Wolfenbarger's request for a medical exemption then she requested a religious exemption.

640.    Ascension Health and Ascension Health Ministry Service Center denied Ms. Wolfenbarger's requests for both medical and religious exemptions.

641.    As it relates to the religious exemption, Ascension Health and Ascension Health Ministry Service Center failed to individually evaluate and

properly assess her request for a religious exemption and establish "undue hardship."

642.    Ascension Health and Ascension Health Ministry Service Center could have granted Ms. Wolfenbarger's religious exemption without undue hardship and should have granted her requested religious exemption.

643.    However, Ascension Health and Ascension Health Ministry Service Center simply ignored the undue hardship standard and violated Title VII.

644.    While Ms. Wolfenbarger has been on short term medical leave since November 9, 2021, the threat of the November 12, 2021 suspension and termination has caused her to experience great stress, anxiety and nightmares, exasperating her medical condition. After fifteen (15) years of dedicated service, Ms. Wolfenbarger faced the unimaginable possibility of being suspended without pay and terminated, as she continued to treat a chronic health condition.

645.    Ms. Wolfenbarger is entitled to have her religious exemption granted but it has still not been granted.

## Medxcel

**Ms. Robin Banks**

646.    Ms. Robin Banks was an employee of Ascension Health at Medxcel in Indianapolis, Indiana. Ms. Banks had been employed with Medxcel since May 15, 2016. Ms. Banks is a citizen and resident of Marion County, Indiana. Ms. Banks worked as a Purchasing Specialist and was responsible for executing purchase related tasks and duties to ensure the cost-effective procurement of goods and

services. Ms. Banks did not have any patient contact or patient care responsibilities in her job.

647.    Ms. Banks requested a religious exemption from Ascension Health's mandate that she receive the COVID-19 vaccine.

648.    Ascension Health and Medxcel denied Ms. Banks' request for a religious exemption and she was suspended without pay on November 12, 2021.

649.    However, Ascension Health and Medxcel failed to individually evaluate and properly assess her request for a religious exemption and establish "undue hardship."

650.    Ascension Health and Medxcel could have granted Ms. Banks' religious exemption without undue hardship and should have granted her requested religious exemption.

651.    However, Ascension Health and Medxcel simply ignored the undue hardship standard and violated Title VII.

652.    Ms. Banks was suspended without pay on November 12, 2021 and terminated from employment on January 1, 2022 simply because she was wrongfully not granted a religious exemption. Consequently, Ms. Banks left Medxcel and was constructively discharged. As a result of Ms. Banks' unjustified suspension and termination, Ms. Banks is without any income and has taken out personal loans to cover basic necessities. Ms. Banks continues to suffer from stress due to her unjustified suspension, termination, and loss of income.

653.    Ms. Banks has not been compensated for the wages lost by being wrongfully placed on unpaid suspension by Medxcel and has also not been compensated for the wages lost by being constructively discharged.

**Mr. Andrew Zenthofer**

654.    Mr. Andrew Zenthofer was an employee of Ascension Health at Medxcel. Mr. Zenthofer had been employed by Medxcel since November 2019. Mr. Zenthofer is a citizen and resident of Warrick County, Indiana. Mr. Zenthofer worked as a Facilities Supervisor and supervised on-site associates and projects.

655.    Mr. Zenthofer requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

656.    Ascension Health and Medxcel denied Mr. Zenthofer's request for a religious exemption and he was suspended without pay on November 12, 2021.

657.    However, Ascension Health and Medxcel failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

658.    Ascension Health and Medxcel could have granted Mr. Zenthofer's religious exemption without undue hardship and should have granted his requested religious exemption.

659.    However, Ascension Health and Medxcel simply ignored the undue hardship standard and violated Title VII.

660.    Mr. Zenthofer's unjustified suspension and constructive discharge has required him to spend all of his savings to pay for basic necessities. While he has

now obtained new employment, his suspension, his recall to a lower paying position, and constructive termination, have caused him great stress.

661.    Although Mr. Zenthofer was ultimately recalled by Medxcel, he was offered a painter position at significantly lower pay. Consequently, Mr. Zenthofer left Medxcel and was constructively discharged. Nonetheless, he has not been paid for some six (6) weeks during which he was unilaterally and arbitrarily placed on unpaid suspension by Medxcel. Mr. Zenthofer has also not been compensated for the wages lost by being constructively discharged.

**Mr. Juston Zenthofer**

662.    Mr. Juston Zenthofer was an employee of Ascension Health at Medxcel. Mr. J. Zenthofer had been employed by Medxcel since August 2020. Mr. J. Zenthofer is a citizen and resident of Vanderburgh County, Indiana. Mr. J. Zenthofer worked as a Facilities Technician II and performed maintenance of facility equipment and systems at St. Vincent Hospital-Indianapolis.

663.    Mr. J. Zenthofer requested a religious exemption from Ascension Health's mandate that he receive the COVID-19 vaccine.

664.    Ascension Health and Medxcel denied Mr. J. Zenthofer's request for a religious exemption and he was suspended without pay on November 12, 2021.

665.    However, Ascension Health and Medxcel failed to individually evaluate and properly assess his request for a religious exemption and establish "undue hardship."

666.    Ascension Health and Medxcel could have granted Mr. J. Zenthofer's religious exemption without undue hardship and should have granted his requested religious exemption.

667.    However, Ascension Health and Medxcel simply ignored the undue hardship standard and violated Title VII.

668.    Mr. Zenthofer was never recalled by Medxcel and was not paid for some four (4) weeks while unilaterally and arbitrarily placed on unpaid suspension by Medxcel. Mr. Zenthofer has not been compensated for the wages lost by being wrongfully placed on unpaid suspension and ultimately not recalled by Medxcel.

669.    Mr. J. Zenthofer's unjustified suspension and the failure to recall him to work impacted his financial stability and caused significant stress and anxiety. When Mr. J. Zenthofer recognized he was not being recalled to work, and considered he had been constructively discharged, he took a lower paying job. Despite finding subsequent employment, Mr. Zenthofer is unable to acquire medical insurance until he completes his probationary period. With the rising costs of living, Mr. Zenthofer cannot afford his medication without medical insurance and has been left with little choice but to forego his medication.

## ADDITIONAL FACTUAL ALLEGATIONS

A.    **The COVID-19 Pandemic**

670.    By Spring 2020, the Alpha variant of the novel coronavirus SARS-CoV-2 had spread around much of the world including in the United States.

671.   In response, Ascension Health began implementing mitigation procedures for its workforce, including the following requirements for its employees:

(a)   daily personal assessments of both personal health (including temperature, symptoms, etc.) and required disclosure of any potential exposure to others with COVID-19,

(b)   daily onsite temperature testing,

(c)   periodic COVID-19 testing,

(d)   the obligation to not work when symptomatic or potentially exposed to COVID-19 pursuant to CDC Guidelines,

(e)   submission to any required contact tracing,

(f)   handwashing and hygiene, and

(g)   use of personal protective equipment (PPE), including masking, face shields, gowns, and disposable gloves as required under the circumstances.

672.   The foregoing mitigation procedures appear to have been highly effective in preventing the spread of the SARS-CoV-2 virus and its variants within Ascension Health facilities.

673.   Many Ascension Health employees, including Plaintiffs and other employees of Ascension Health and employees of the Ascension Entities, are unaware of any cases of documented transmission of the SARS-CoV-2 virus and/or its variants from any Ascension Health employee to another Ascension Health employee or to a patient (or any Ascension Entities employee to another Ascension Entities employee or to a patient).

674.    This is not surprising, robust research attributes prevention of transmission of the virus in a hospital setting to mitigation procedures such as those listed above.[13]

675.    Since the early days of the pandemic, three separate COVID-19 vaccines have been developed and authorized for use in the United States. The FDA issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 11, 2020. A week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

676.    On August 23, 2021, the FDA issued full approval for the Pfizer vaccine Comirnaty for individuals 16 years of age and older. Pfizer's EUA also remains in place.

677.    To date, the FDA has not yet issued any other approvals for either the Moderna or Johnson & Johnson vaccine.).

---

[13] *See* collection of scientific studies cited in CMS Interim Final Rule (cited in the Federal Register at 86 Fed. Reg. 61,570 (Nov. 5, 2021) submitted in Plaintiffs' Appendix as Exhibits 63 to 71 (**(App. 63 at 1-30; App. 64 at 1-2; App. 65 at 1-9; App. 66 at 1-20; App. 67 at 1-20; App. 68 at 1-13; App. 69 at 1-4; App. 70 at 1-13; and App. 71 at 1-7)** "Hospital-Acquired SARS CoV-2 Infection: Lessons for Public Health," Aaron Richterman, M.D. *et al*, 324 JAMA, 2155–56 (2020) **(App. 64 at 1-2)** *available at*: https://jamanetwork.com/journals/jama/fullarticle/2773128; *see also* "Hospital-acquired COVID-19 tends to be picked up from other patients, not from healthcare workers," *Science Daily*, (Aug. 24, 2021) **(App. 74 at 1-3)** *available at*: https://www.sciencedaily.com/releases/2021/08/210824083504.htm; "Study Shows Low Risk of COVID-19 Transmission in Hospital Among Patients Undergoing Surgery," New York-Presbyterian Newsroom (Feb. 24, 2021) **(App. 73 at 1-3)** *available at*: https://www.nyp.org/news/study-shows-low-risk-of-covid-19-transmission-in-hospital-among-patients-undergoing-surgery; "Could We Do Better on Hospital Acquired COVID-19 In a Future Wave?" David Oliver, 372 BMJ (Jan 13, 2021) **(App. 72 at 1-2)** *available at*: https://www.bmj.com/content/372/bmj.n70.

678.   The Pfizer, Moderna and Johnson & Johnson vaccines were all developed to address the Alpha variant, the original strain of the SARS-CoV-2 virus.

679.   On July 27, 2021, the same date that Ascension Health adopted its vaccine mandate, the U.S. CDC released updated guidance which included a recommendation for "everyone in areas of substantial or high transmission to wear a mask in public indoor places, even if they are fully vaccinated."[14]

680.   CDC issued this new guidance due to recent developments, including new data "that the *Delta variant was more infectious* and was leading to increased transmissibility when compared with other variants, *even in some vaccinated individuals*."[15]

681.   "As of August 28, 2021, the Delta variant of concern (B.1.617.2) [was] the predominant variant in the United States, with 99% of sequenced specimens being identified as Delta."[16]

682.   From the time that Ascension Health announced its vaccination mandate through the time Plaintiffs were suspended without pay on November 12,

---

[14] "Delta Variant: What We Know About the Science," *CDC website* (updated Aug. 26, 2021) ("CDC Delta Variant Resource"), *available at*: https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (**App. 45 at 1-3**).

[15] *Id.* (emphasis added).

[16] "Science Brief: COVID-19 Vaccines and Vaccination," *CDC website* (updated Sept. 15, 2021), *available at*: https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (hereafter "CDC Brief"). (**App. 89 at 1-20**).

2021, the Delta variant remained the predominant variant of SARS-CoV-2 in the U.S.[17]

683.    As of October 27, 2021, the CDC's "Nowcast" model which seeks to track recent proportions of circulating variants in the United States reported that the Delta variant comprised 99.6% of the variants recently detected throughout the U.S.[18]

684.    As of October 27, 2021, the Nowcast model found the prevalence of the original Alpha variant to be 0.0% nationally.[19]

685.    The CDC data tracker information for Indiana for the week of October 23, 2021, likewise, reported the Delta variant predominance at over 99% and the Alpha variant at 0.03%.[20]

686.    It was well understood from late July 2021 when Ascension Health's vaccine mandate was announced that the Delta variant was "spreading in settings where there is high vaccine coverage[.]"[21]

---

[17] This is in line with the experience in other western countries. *See, e.g.*, "SARS-CoV-2 variants of concern and variants under investigation in England, Technical Briefing 20" Public Health England (Aug. 6, 2021), ("England Public Health Briefing") (**App. 57 at 1-44**) *available at*: https://assets.publishing.service.gov.uk/government/uploads/system/uploads/attachment_data/file/1009243/Technical_Briefing_20.pdf ("Delta variant accounted for approximately 99% of sequenced and 98% genotyped cases from 25 July to 31 July 2021").
[18] CDC COVID-19 Data Tracker, Variant Proportions, *CDC website* (for week ending Oct. 23, 2021) (**App. 46 at 1-5**), *available at*: https://COVID-19.cdc.gov/COVID-19-data-tracker/#variant-proportions.
[19] *Id.*
[20] *Id.*
[21] "Vaccinated and unvaccinated individuals have similar viral loads in communities with a high prevalence of the SARS-CoV-2 delta variant," University of Wisconsin (July 31, 2021) (**App. 88 at 1-13**) ("University of Wisconsin Study") at 1; *available at*: https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v1.

687.   The high transmissibility of the Delta variant among those who had been vaccinated was confirmed repeatedly in research studies accessible to Ascension Health and St. Vincent.[22]

688.   These studies indicated that vaccinated individuals were susceptible to infection with the Delta variant and presented a risk of transmitting SARS-CoV-2 to others.[23]

689.   Ascension Health admitted that at the time its mandate was adopted Ascension Health had no data regarding the effectiveness of the Johnson & Johnson and Moderna vaccines against the Delta variant.[24]

690.   Ascension Health conceded at that time that "recent data has shown that there has been an increase in breakthrough infections in vaccinated individuals related to the Delta variant."[25]

691.   The researchers in a University of Wisconsin Study within the relevant time frame concluded that, "a substantial proportion of individuals with SARS-CoV-2 vaccine breakthrough infections during [their] study period ha[d] levels of SARS-

---

[22] *See, e.g.*, Wisconsin Study at 2-3, *available at*: ; "Outbreak of SARS-CoV-2 B.1.617.2 (Delta) Variant Infections Among Incarcerated Persons in a Federal Prison — Texas, July–August 2021," *CDC* (Sept. 24, 2021) (**App. 50 at 1-11**) ("CDC Prison Study") at 1 ("During a COVID--19 outbreak involving the Delta variant in a highly vaccinated incarcerated population, transmission rates were high, even among vaccinated persons."); *available at*: https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e3.htm.
[23] University of Wisconsin Study at 2-3.
[24] *Questions and Answers about Ascension's Associate COVID--19 Vaccination Policy* (added October 4, 2021) (not publicly available, available only on the Ascension intranet) at 8. (**App. 12 at 1-12**).
[25] *Id.*

CoV-2 RNA in nasal secretions . . . consistent with the ability to transmit the virus to others."[26]

692.   Studies that Ascension Health and the Ascension Entities had access to had found that once an individual contracts the Delta variant there was "limited difference in viral load between those who are vaccinated and unvaccinated."[27]

693.   In other words, it was known to Ascension Health and Ascension Entities at the time that a vaccinated person may be as contagious as a non-vaccinated person once they contract the Delta variant.[28]

694.   CDC Director Dr. Rochelle Walensky stated on October 8, 2021, about COVID-19 vaccines that, "what they cannot do any more is prevent transmission."[29]

695.   The inability of the COVID-19 vaccines to prevent the *transmissibility* of SARS-CoV-2, particularly as to highly transmissible variants of concern, was well known by late July 2021 when Ascension Health adopted its vaccine mandate[30] and knowledge of this limitation of the vaccines was known to Ascension Health when it

---

[26] University of Wisconsin Study at 2.

[27] England Public Health Briefing at 35; *accord* University of Wisconsin Study at 2-3.

[28] *Id.*, CDC Prison Study at 3 ("During a COVID--19 outbreak in a federal prison involving the highly transmissible SARS-CoV-2 Delta variant, transmission was high among vaccinated and unvaccinated persons. . . the duration of positive serial test results was similar between these two groups, and infectious virus was cultured from both vaccinated and unvaccinated participants.").

[29] CDC Director, Dr. Rochelle Walensky, Oct. 8, 2021, *available at*: https://youtu.be/swlUv2SbmT8 .

[30] As of July 2021, there were eight SARS-CoV-2 variants considered to pose threats to human society. Among these is the Lambda variant currently spreading in Chile where the vaccination rate is "relatively high . . . suggesting that the Lambda variant is proficient in escaping from the antiviral immunity elicited by vaccination." "SARS-CoV-2 Lambda variant exhibits higher infectivity and immune resistance," Izumi Kimura *et al.*, (July 28, 2021) at 4. *Id.* (**App. 53 at 1-31**), *available at*: https://www.biorxiv.org/content/10.1101/2021.07.28.454085v1.

forged ahead with the wholesale denial of religious exemptions claiming that "risk" justified rejecting religious exemptions en masse.

696.    Research over the summer of 2021 confirmed the transmissibility of the SARS-CoV-2 virus. A study available as preprint from University of Wisconsin-Madison demonstrated "[t]esting a subset of these low-Ct samples revealed infectious SARS-CoV-2 in 15 of 17 specimens (88%) from unvaccinated individuals and 37 of 39 (95%) from vaccinated people" suggested continued risk of transmission.[31] Additionally, on October 29, 2021, researchers from the UK National Health Institute published their findings noting that "Nonetheless, fully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[32]

697.    As a result, there existed significant scientific consensus that because of the risk of breakthrough infections, reliance upon PPE and mitigation efforts such as Ascension Health employees had practiced for nearly two years, continued to be essential for both vaccinated and unvaccinated persons.[33] These mitigation

---

[31] "Shedding of Infectious SARS-CoV-2 Despite Vaccination," Riemersma, Kasen K., *et al*., (Oct. 15, 2021) (**App. 59 at 1-12**), *available at*: https://www.medrxiv.org/content/10.1101/2021.07.31.21261387v5.

[32] "Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK; a prospective, longitudinal, cohort study," Singanayagam, Anika *et al*., *Lancet Infect., Dis.* (Oct. 28, 2021) (**App. 54 at 1-13**), *available at*: https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00648-4/fulltext.

[33] *See*, *e.g*., Wisconsin Study at 3; CDC Prison Study at 1 ("Even with high vaccination rates, maintaining multicomponent prevention strategies (e.g., testing and masking for all persons and prompt medical isolation and quarantine for incarcerated persons) remains critical to limiting SARS-CoV-2 transmission in congregate settings where physical distancing is challenging.").

measures needed to continue to be practiced whether a hospital had a vaccination

mandate or not. As scientists at the University of Wisconsin observed:

> [T]he finding of high SARS-CoV-2 viral loads in vaccinated individuals has important implications for risk assessment and mitigation. . . . Vaccinated individuals, particularly those who may have high levels of community or occupational exposure to SARS-CoV-2, should be encouraged to continue frequent testing, especially when symptomatic, to limit community spread. *Continued adherence to non-pharmaceutical interventions, such as masking and distancing, will remain important for both vaccinated and unvaccinated individuals because we cannot predict which vaccinated individuals will experience breakthrough infections with high viral loads.* This somewhat unexpected finding also underscores the uncertainty about the long-term performance of SARS-CoV-2 vaccines. While vaccines continue to provide outstanding protection against severe disease and mortality, the durability of this protection cannot be reliably predicted. Therefore, it is essential for public health policy to encourage vaccination while also planning for contingencies, including diminished long-term protection.[34]

### The Pfizer Vaccine

698.    The FDA issued an EUA for the Pfizer-BioNTech BNT162b2 ("Pfizer"

or "Pfizer-BioNTech") vaccine on December 11, 2020.[35]

699.    Peer reviewed research linked on the Pfizer website initially reported a

95% effectiveness rate of the Pfizer–BioNTech mRNA COVID-19 vaccine BNT162b2

against the Alpha variant of the SARS-CoV-2 virus.[36]

---

[34] University of Wisconsin Study at 3 (emphasis added).
[35] "Pfizer-BioNTech COVID--19 Vaccine Frequently Asked Questions," U.S. FDA website (accessed Oct. 28, 2021) ("U.S. FDA Pfizer FAQs"). (**App. 47 at 1-10**).
[36] "Impact and effectiveness of mRNA BNT162b2 vaccine against SARS-CoV-2 infections and COVID--19 cases, hospitalizations, and deaths following a nationwide vaccination campaign in Israel: an observational study using national surveillance data," *The Lancet* (May 5, 2021), (**App. 55 at 1-11**) available at:
https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(21)00947-8/fulltext.

700.    However, other researchers reported a lower effectiveness rate for the Pfizer vaccine against the Alpha variant of SARS-CoV-2, such as the 76% rate for the Pfizer shot reported January – July 2021 by the Mayo Clinic Health System.[37]

701.    A gradual decline in efficacy of the Pfizer vaccine against SARS-CoV-2 is observed over a 6-month period.[38]

702.    A study in the *Lancet* reflected a decline in the Pfizer vaccine's effectiveness against infections "from 88% (95% CI 86–89) during the first month after full vaccination to 47% (43–51) after 5 months."[39]

703.    The Pfizer vaccine was less effective against the Delta variant than against the original Alpha variant.

704.    The Mayo Clinic found only a 42% effectiveness rate for the Pfizer vaccine during July 2021 in its Minnesota patients when the prevalence of the Delta variant in Minnesota had increased to over 70% and the Alpha variant prevalence had diminished to only 13% of infections.[40]

---

[37] "Comparison of two highly-effective mRNA vaccines for COVID--19 during periods of Alpha and Delta variant prevalence," *Mayo Clinic* (Aug. 8, 2021) (**App. 87 at 1-29**), *available at*: https://www.medrxiv.org/content/10.1101/2021.08.06.21261707v1.full.pdf

[38] "Safety and Efficacy of the BNT162b2 mRNA COVID--19 Vaccine through 6 Months," *New England Journal of Medicine* (Sept. 15, 2021) (**App. 58 at 1-13**) at 1; available at: https://www.nejm.org/doi/pdf/10.1056/NEJMoa2110345?listPDF=true; "Effectiveness of mRNA BNT162b2 COVID--19 vaccine up to 6 months in a large integrated health system in the USA: a retrospective cohort study," *Lancet* (Oct. 16, 2021) at 1. (**App. 86**), available at: https://www.thelancet.com/action/showPdf?pii=S0140-6736%2821%2902183-8.

[39] *Id.*

[40] "Comparison of two highly-effective mRNA vaccines for COVID--19 during periods of Alpha and Delta variant prevalence," *Mayo Clinic* (Aug. 8, 2021) (**App. 87 at 1-29**), *available at*: https://www.medrxiv.org/content/10.1101/2021.08.06.21261707v1.full.pdf.

705.    Another study found a 43.3% effectiveness rate for the Pfizer vaccine in the United States in September 2021.[41]

706.    In the CDC Prison Study, the CDC researchers found that among fully vaccinated persons without a prior SARS-CoV-2 infection 85% of Pfizer-BioNTech recipients contracted the virus.[42] In other words, only 15% of those individuals vaccinated with the Pfizer vaccine did not contract COVID-19.

707.    Ascension Health regularly relies upon and republishes on the Ascension Health website FDA data and information concerning the COVID-19 vaccines.[43]

708.    Throughout the relevant time frame the FDA reported that "[d]ata are not yet available to inform about the duration of protection that the [Pfizer] vaccine will provide."[44]

709.    According to the FDA, "It is not known if the [Pfizer] vaccine protects against asymptomatic SARS-CoV-2 infection."[45]

---

[41] "SARS-CoV-2 vaccine protection and deaths among US veterans during 2021," Cohn, Barbara A., *et al.*, *Science* (Nov. 4, 2021) (**App. 83 at 1-12**), *available at*: https://www.science.org/doi/10.1126/science.abm0620.

[42] CDC Prison Study at 2.

[43] For instance, information found in Ascension's "Frequently asked questions: COVID-19 vaccination," (**App. 14 at 1-32**) *available at*: https://healthcare.ascension.org/COVID-19/COVID-19-vaccine) under the question: "**Is one vaccine preferred (or safer) than the other? Does it matter which one I take?**" (at p. 4) is identical in wording to information found on the FDA's webpage: U.S. FDA Janssen FAQs (**App. 82 at 1-7**) in response to the question on the FDA website: "**Is it possible to make comparisons about the effectiveness among the three COVID–19 vaccines that the FDA has authorized for emergency use to date?**"), *available at*: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine-frequently-asked-questions.

[44] "Pfizer-BioNTech COVID–19 Vaccine Frequently Asked Questions," U.S. FDA website (accessed Oct. 28, 2021) ("U.S. FDA Pfizer FAQs"). (**App. 47 at 1-10**).

[45] *Id.*

710.    The FDA acknowledged that there is no current scientific evidence that the Pfizer COVID-19 vaccine will reduce transmission of the SARS-CoV-2 virus. The FDA website reported:

> Most vaccines that protect from viral illnesses also reduce transmission of the virus that causes the disease by those who are vaccinated. While it is hoped this will be the case, *the scientific community does not yet know if the Pfizer-BioNTech COVID-19 Vaccine will reduce such transmission.*[46]

### The Moderna Vaccine

711.    The FDA issued an EUA for the Moderna mRNA-1273 COVID-19 vaccine on December 18, 2020.[47]

712.    Moderna "vaccine efficacy against SARS-CoV-2 Delta [variant] wanes over time; [and] there are limited data on the impact of durability of immune responses on protection."[48]

713.    By October 2021 it could be said that, "[r]ecent studies in the United Kingdom, United States, and Qatar have shown reduced efficacy of mRNA-based vaccines against asymptomatic and symptomatic, but not severe, [Delta variant] infection."[49]

---

[46] *Id.*

[47] "Moderna COVID--19 Vaccine Frequently Asked Questions," *U.S. FDA website* ("U.S. FDA Moderna FAQs") **(App. 48 at 1-5)**, *available at*: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-COVID--19/moderna-COVID--19-vaccine-frequently-asked-questions.

[48] "Protection from SARS-CoV-2 Delta one year after mRNA-1273 vaccination in nonhuman primates is coincident with an anamnestic antibody response in the lower airway," Researchers from the National Institute of Allergy and Infectious Diseases in Bethesda, Emory University School of Medicine in Atlanta, Bioqual Inc. in Rockville, and Moderna Inc. in Cambridge (Oct. 24, 2021) ("Moderna Research Study") **(App. 56)** at 1; *available at*: https://www.biorxiv.org/content/10.1101/2021.10.23.465542v1.full.

[49] *Id.*

714.   In the CDC Prison Study, CDC researchers had found that among fully vaccinated persons without a prior SARS-CoV-2 infection 54% of Moderna recipients contracted the virus.[50]

715.   Another study found a 58.0% effectiveness rate for the Moderna vaccine in the United States in September 2021.[51]

716.   Throughout the relevant time frame the FDA reported that "[d]ata are not yet available to inform about the duration of protection that the [Moderna] vaccine will provide."[52]

717.   According to the FDA, "It is not known if the [Moderna] vaccine protects against asymptomatic SARS-CoV-2 infection."[53]

718.   The FDA acknowledged that there is no current scientific evidence that the Moderna COVID-19 vaccine will reduce transmission of the SARS-CoV-2 virus. The FDA website reported:

> Most vaccines that protect from viral illnesses also reduce transmission of the virus that causes the disease by those who are vaccinated. While it is hoped this will be the case, *the scientific community does not yet know if Moderna COVID-19 Vaccine will reduce such transmission.*[54]

---

[50] CDC Prison Study at 2.
[51] "SARS-CoV-2 vaccine protection and deaths among US veterans during 2021," Cohn, Barbara A., *et al.*, *Science* (Nov. 4, 2021) (**App. 83 at 1-12**), *available at*: https://www.science.org/doi/10.1126/science.abm0620.
[52] *Id.*
[53] U.S. FDA Moderna FAQs.
[54] *Id.*

## The Johnson & Johnson Vaccine

719.    The FDA issued an EUA for the Johnson & Johnson (also known as "Janssen") COVID-19 vaccine on February 27, 2021.[55]

720.    In the clinical trial upon which the FDA based its EUA for the Johnson & Johnson vaccine, "the vaccine was approximately 67% effective in preventing moderate to severe/critical COVID-19 disease occurring at least 14 days after vaccination and 66% effective in preventing moderate to severe/critical disease at least 28 days after vaccination."[56]

721.    Another study found a 13.1% effectiveness rate for the Johnson & Johnson vaccine in the United States in September 2021.[57]

722.    Throughout the relevant time frame the FDA reported that "[d]ata are not yet available to inform about the duration of protection that the [Johnson & Johnson] vaccine will provide."[58]

723.    According to the FDA, "It is not known if the [Johnson & Johnson] vaccine protects against asymptomatic SARS-CoV-2 infection."[59]

---

[55] "Janssen COVID--19 Vaccine Frequently Asked Questions," *U.S. FDA website*, ("U.S. FDA Janssen FAQs") (**App. 82 at 1-12**), *available at*: https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine-frequently-asked-questions,.

[56] U.S. FDA Janssen FAQs.

[57] "SARS-CoV-2 vaccine protection and deaths among US veterans during 2021," Cohn, Barbara A., *et al*., *Science* (Nov. 4, 2021) (**App. 83 at 1-12**), *available at*: https://www.science.org/doi/10.1126/science.abm0620.

[58] *Id.*

[59] U.S. FDA Janssen FAQs.

724.    The FDA acknowledged that there is no current scientific evidence that the Johnson & Johnson COVID-19 vaccine will reduce transmission of the SARS-CoV-2 virus. The FDA website reported:

> Most vaccines that protect from viral illnesses also reduce transmission of the virus that causes the disease by those who are vaccinated. While it is hoped this will be the case, *the scientific community does not yet know if Janssen COVID-19 Vaccine will reduce such transmission.*[60]

## Natural Immunity

725.    Israeli researchers in a large study[61] conducted during the summer of 2021 (and issued in late August 2021) "in one of the most highly COVID-19–vaccinated countries in the world, examined medical records of tens of thousands of Israelis, charting their infections, symptoms, and hospitalizations between 1 June and 14 August, when the Delta variant predominated in Israel"[62] and found natural immunity stronger and longer lasting that that induced by the Pfizer vaccine. These researchers concluded:

> This study demonstrated that natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity. Individuals who were both previously

---

[60] *Id.*

[61] *See* "Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections," *Maccabie Healthcare Services* (Aug. 25, 2021) ("Israel Study") at 3 (**App. 49 at 1-32**), *available at*: https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.full-text.

[62] "Having SARS-CoV-2 once confers much greater immunity than a vaccine—but vaccination remains vital," *Science* (Aug. 26, 2021), *available at*: https://www.science.org/content/article/having-sars-cov-2-once-confers-much-greater-immunity-vaccine-vaccination-remains-vital. (**App. 85 at 1-6**)

infected with SARS-CoV-2 and given a single dose of the vaccine gained additional protection against the Delta variant.[63]

726.    The Israel Study found that "never-infected people who were vaccinated in January and February were, in June, July, and the first half of August, six to 13 times more likely to get infected than unvaccinated people who were previously infected with the coronavirus. In one analysis, comparing more than 32,000 people in the health system, the risk of developing symptomatic COVID-19 was 27 times higher among the vaccinated, and the risk of hospitalization eight times higher."[64]

727.    Charlotte Thålin, a physician and immunology researcher at Danderyd Hospital and the Karolinska Institute in Stockholm who studies immune responses to SARS-CoV-2, said the Israel Study is "a textbook example of how natural immunity is really better than vaccination."[65]

728.    Several Plaintiffs have recovered from the COVID-19 virus and acquired natural immunity confirmed by antibody testing. Despite the evidence for natural immunity, Ascension Health did not take into account natural immunity in assessing the religious exemption requests of the Ascension Entities employees and other Ascension Health associates.

---

[63] Israel Study at 3.

[64] "Having SARS-CoV-2 once confers much greater immunity than a vaccine—but vaccination remains vital," Science (Aug. 26, 2021), available at: https://www.science.org/content/article/having-sars-cov-2-once-confers-much-greater-immunity-vaccine-vaccination-remains-vital. (**App. 85 at 1-6**).

[65] *Id.*

## CMS Interim Final Rule with Comment

729.   On November 5, 2021, the Centers for Medicare & Medicaid Services (CMS) of the U.S. Department of Health & Human Services released a proposed interim final rule with comment (i.e., "IFC") it referred to as "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination" (hereafter, the "IFC").

730.   The IFC became effective as of January 4, 2022.

731.   The IFC applies to a vast variety of "21 types of providers and suppliers, ranging from hospitals to hospices and rural health clinics to long term care facilities (including skilled nursing facilities and nursing facilities, collectively known as nursing homes)."[66] Many of these providers do not have in place the robust COVID-19 mitigation measures employed at Ascension Health facilities or require stringent compliance with masking measures, as the IFC points out.

732.   Citing several studies,[67] the IFC confirms that mitigation measures (such as masking, COVID-19 testing, etc.) are "highly effective" at preventing

---

[66] 86 Fed. Reg. 61,556 (Nov. 5, 2021).

[67] "Incidence of Nosocomial COVID--19 in Patients Hospitalized at a Large US Academic Medical Center," Rhee, Chanu, *et al.*, JAMA (**Sept 9, 2020**) (**App. 65 at 1-9**) ("Findings In this cohort study of 9149 patients admitted to a large US academic medical center over a 12-week period, 697 were diagnosed with COVID--19. In the context of a comprehensive and progressive infection control program, only 2 hospital-acquired cases were detected: 1 patient was likely infected by a presymptomatic spouse before visitor restrictions were implemented, and 1 patient developed symptoms 4 days after a 16-day hospitalization but without known exposures in the hospital. **Meaning** These findings suggest that overall risk of hospital-acquired COVID--19 was low and that rigorous infection control measures may be associated with minimized risk."), *available at*: https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2770287; "Risk Factors Associated With SARS-CoV-2 Seropositivity Among US Health Care Personnel," Jacob, Jesse T., *et al.*, JAMA (**Mar. 10, 2021**) (**App. 70 at 1-13**) ("**Findings** In this cross-sectional study of 24 749 HCP in 3 US states, contact with an individual with known coronavirus

COVID-19 transmission in healthcare settings "when implemented correctly and consistently," stating:

> Because SARS–CoV–2, the virus that causes COVID-19–19 disease, is highly transmissible, Centers for Disease Control and Prevention (CDC) has recommended, and CMS reiterated, that health care providers and suppliers implement robust infection prevention and control practices, including source control measures, physical distancing, universal use of personal protective equipment (PPE), SARS–CoV–2 testing, environmental controls, and patient isolation or quarantine. *Available evidence suggests these infection prevention and control practices have been highly effective when implemented correctly and consistently.*[68]

733.     However, the IFC recommends a vaccination mandate across all 21 types of CMS-regulated healthcare facilities because, according to the IFC, "[s]tudies have also shown . . . that consistent adherence to recommended infection prevention and control practices can prove challenging—and those lapses can place patients in jeopardy."[69]

734.     The IFC reports that, "[i]n outbreaks reported from acute care settings in the U.S. following implementation of universal masking, *unmasked exposures* to other health care workers *were frequently implicated*."[70]

---

disease 2019 (COVID--19) exposure outside the workplace was the strongest risk factor associated with SARS-CoV-2 seropositivity, along with living in a zip code with higher COVID--19 incidence. None of the assessed workplace factors were associated with seropositivity. **Meaning** In this study, most risk factors associated with SARS-CoV-2 infection among HCP were outside the workplace, suggesting that current infection prevention strategies in health care are effective in preventing patient-to-HCP transmission in the workplace."), *available at*: https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2777317.
[68] 86 Fed. Reg. 61,557 (Nov. 5, 2021).
[69] *Id.*
[70] *Id.* (emphasis added).

156

735.    The IFC relies upon six (6) studies of COVID-19 transmission in healthcare settings to support its conclusion that consistent adherence to masking and non-vaccination mitigation measures are "challenging."[71] These six studies are

---

[71] "Nursing home staff networks and COVID--19," Chen, M. Keith, et al., (**Dec. 28, 2020**) (**App. 71 at 1-7**) (Using analysis of smartphone data collected from March 13 – May 31, 2020, from nursing home workers, this study concluded that a significant cause of COVID--19 outbreaks were nursing home workers that worked at more than one facility. The study recommended workers be restricted to working at a single facility, that testing of workers be increased and "allocation of PPE, testing, and other preventive measures should be targeted thoughtfully, recognizing the current potential for transmission across homes."), *available at*: https://www.pnas.org/content/pnas/118/1/e2015455118.full.pdf; "Hospital-Acquired SARS-CoV-2 Infection Lessons for Public Health," Richterman, Aaron, *et al.*, *JAMA*. 2020;324(21):2155-2156 (**Nov. 13, 2020**) (**App. 64 at 1-2**) (study noting the success of masking in reducing COVID--19 transmission in healthcare settings and recommending universal eye protection during clinical encounters, COVID-19 testing and concluding "[t]hrough these measures, transmission could be further minimized (and perhaps even eliminated)");, *available at*: https://jamanetwork.com/journals/jama/fullarticle/2773128; "State-wide Genomic Epidemiology Investigations of COVID--19 Infections in Healthcare Workers – Insights for Future Pandemic Preparedness, Watt, Anne E., et al., (**Sept. 8, 2021**) (**App. 67 at 1-30**) (reporting results of genome sequencing on 765 COVID--19 cases in Victoria, Australia between March and October 2020 to identify source of healthcare worker infections with COVID--19 and identified major contributors to be mobility of staff and patients between wards and facilities and behaviors of individual patients; makes the case for more usage of genome sequencing in healthcare investigations), *available at*: https://www.medrxiv.org/content/10.1101/2021.09.08.21263057v1.full-text; "Transmission of community- and hospital-acquired SARS-CoV-2 in hospital settings in the UK: A cohort study," Mo, Yin, *et al.*, (**Oct. 12, 2021**) (**App. 66 at 1-20**) (study of data from 4 teaching hospitals in the UK from Jan. – Oct. 2020 concluded that exposure to another patient who had acquired the virus while in the hospital was associated with an additional 8 infections per 1000 patients while exposure to an infectious healthcare worker was associated with substantially lower infection risks of 2 per 1000 patients; the researchers noted that over the time period of the study use of PPE increased such that from June onwards there was universal masking, social distancing, isolation of exposed patients and healthcare workers, etc.; authors approved suggestion of others that "enhanced PPE for [healthcare workers] and ventilation may play a role" in limiting transmission), *available at*: https://journals.plos.org/plosmedicine/article?id=10.1371/journal.pmed.1003816; "Healthcare-associated COVID--19 in England: a national data linkage study," Bhattacharya, Alex, *et al.*, (**Feb. 19, 2021**) (**App. 67 at 1-30**) (study reviewed hospital admission records and national test data in England from Jan. 2, 2020 to Aug. 31, 2020; authors reported that up to 15% of COVID--19 infections from hospitalized patients probably came about from infection while in healthcare, no attempt was made to ascertain whether such infections arose from healthcare workers or other patients; authors noted that "[t]he overall effect of . . . limitations [to the study] will likely have been to over-estimate probable and definite hospital-onset case numbers," noting that this period

reproduced in Plaintiffs' Appendix and briefly described and linked above in footnote 89.

736.    None of these six studies recommend vaccination as a means of reducing COVID-19 transmission in healthcare facilities, and it appears none of the research cited in the IFC presents data from a controlled study seeking to measure whether vaccination alters risk of healthcare workers transmitting the SARS-CoV2 virus in a hospital setting.

737.    Instead, all six studies recommend focusing upon diligent use of PPE and other mitigation measures, including primarily masking, and COVID-19 testing to identify asymptomatic infections for healthcare workers.[72]

738.    In terms of masking, one study relied upon in the IFC pointed to "findings [that] suggest that overall hospital transmission of SARS-CoV-2 in the

---

covered a time with little preparedness for the pandemic, the authors observed that preparedness in the UK should be better due to "comprehensive guidelines for infection prevention . . . pre-admission testing of . . . patients . . . [and weekly] screen[ing] [of] staff . . . in periods of higher community prevalence"), *available at*: https://www.medrxiv.org/content/10.1101/2021.02.16.21251625v1.full-text; "Occupational COVID--19 exposures and secondary cases among healthcare personnel, Ibiebele, Jessica, *et al.*, *Am J Infect Control*. 2021 Oct; 49(10): 1334–1336 (**Aug. 8, 2021**) (**App. 69 at 1-4**) (study conducted from Jun. 1 – Dec. 31, 2020, primarily analyzed 1,655 cases where a healthcare worker was exposed to COVID--19 from a patient that did not wear a cloth face covering or facemask and the healthcare worker was unmasked or was masked but did not wear eye protection and was within 6 feet of the case for at least 15 minutes and cases-known as Tier 1 cases-and 311 cases where a healthcare worker was in in contact with an aerosol-generating procedure (AGP) and did not wear an N95 respirator (or equivalent), eye protection, gown and gloves-none as Tier 2 cases; authors recommended "[m]itigation factors must include widespread testing and adherence to isolation precautions and PPE guidelines including maintaining physical distancing when masks must be removed around other employees"), *available at*: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8349432/.
[72] *See* studies at fn. 88 above.

setting of universal masking is likely rare, even during periods of high community prevalence."[73]

739.   This paper cited an example of "[a] detailed contact tracing study of 226 patients exposed to health care workers with confirmed COVID-19 during the surge in Boston found only 1 possible transmission, and this was in the context of a 30-minute encounter during which both patient and health care worker were unmasked." It also referenced, "a complementary analysis of the same hospital system, [where] researchers found no convincing cases of in-hospital transmission among more than 9000 admitted patients after implementation of universal masking for staff and patients."[74]

740.   The study concluded, "[w]hat is clear is that these hospital-based outbreaks have not revealed a failure of universal masking, but rather challenges in systems such as inadequate support to maintain masking adherence and basic human nature, in which individuals tire of masking. In particular, breakdowns have occurred in small workrooms and during mealtime in facilities that were not designed to allow adequate physical distancing during a respiratory pandemic."[75]

741.   All six studies analyzed data from 2020 when the Alpha variant was the primary strain of COVID-19; none discuss the more transmissible Delta variant; none suggest that use of masking, targeted use of N95 masks, appropriate hygiene and PPE, pre-work health assessments and temperature checks, along with regular

---

[73] *See* Richterman, Aaron, *Hospital-Acquired SARS-CoV-2 Infection: Lessons for Public Health*, JAMA 2155 (Dec. 1, 2020) (**Ex. 64 at 1-2**).
[74] *Id.*
[75] *Id.*

COVID-19 testing (all regular practices at Ascension Health facilities) are insufficient to eliminate any material risk of healthcare workers transmitting COVID-19 in a hospital setting.

742.   Thus, the studies upon which CMS relied in its IFC support Plaintiffs' position that mitigation measures that were already in place in Ascension Health facilities, and to which they strictly adhered, were reasonable accommodations which would have allowed them to continue working with patients without suspension on November 12, 2021, and without any materially increased risk to patients or the workplace.

743.   The IFC requires compliance with Title VII and other federal anti-discrimination laws, including that "employers following CDC guidelines and the new requirements in this IFC may . . . be required to provide appropriate accommodations, to the extent required by Federal law, for employees who request and receive exemption from vaccination because of a . . . sincerely held religious belief, practice, or observance."[76]

## B.   Ascension Vaccine Mandate[77]

744.   On July 27, 2021, Ascension Health's President and CEO, Joe Impicciche, sent an announcement to all Ascension Health employees (*i.e.*, "associates"), stating in part:

> Like many health systems across the country, including in many of our markets, we are moving to require our associates to be vaccinated against COVID-19 . . .

---

[76] 86 Fed. Reg. 61,569 (Nov. 5, 2021).
[77] As used in this section, the term "Ascension" refers collectively to Ascension Health, Inc. and Ascension – St. Vincent.

> Tens of thousands of Ascension Health associates have already been vaccinated with the available vaccines, as have millions of people across the country and the world. But *we must do more to overcome this pandemic* as we provide safe environments for those we serve.
>
> *Ascension Health will require that all associates be vaccinated against COVID-19, whether or not they provide direct patient care, and whether they work in our sites of care or remotely.*
>
> *This includes* associates employed by subsidiaries and partners; physicians and advanced practice providers, whether employed or independent; and *volunteers and vendors entering Ascension Health facilities.*[78]

(emphasis added).

745.    Mr. Impicciche's motive for imposing a vaccine mandate is that he believes "there is a moral obligation to make use of the vaccines" and "increasing the utilization rate of COVID-19 vaccination . . . is a moral imperative." (emphasis added).[79]

746.    Ascension Health's vaccine mandate is even more encompassing than the IFC. The IFC *does not* apply to those who work remotely.[80] However, Ascension Health's mandate *does* apply to those working remotely.

747.    Ascension Health's mandate is absolute in every way—there is no alternative for periodic testing, mask wearing, targeted use of N95 masks, etc., even

---

[78] Joe Impicciche (Ascension President and CEO) Letter to Ascension Associates re. COVID-19 Vaccination, (July 27, 2021) (**App. 10 at 1-2**).

[79] Joe Impicciche (Ascension President and CEO) Letter to Employees re: Pope Francis' statement COVID-19 vaccination and "act of love" and moral obligation, (Aug. 19, 2021) (**App. 11 at 1-12**).

[80] 86 Fed. Reg. 61,570 (Nov. 5, 2021) ("Individuals who provide services 100 percent remotely, such as fully remote telehealth or payroll services, are not subject to the vaccination requirements of this IFC.").

for employees who have already had COVID-19 and still enjoy immunity from the disease. Employees must choose vaccination or face suspension leading to certain termination.

## C.    Plaintiffs' Sincerely Held Religious Beliefs[81]

748.    The statement of Ascension Health's President and CEO that there is a moral obligation of everyone to receive a COVID-19 vaccine is directly at odds with the sincerely held religious beliefs of the Plaintiffs.

749.    Ascension Health has not challenged the sincerity of Plaintiffs' religious beliefs.

750.    Plaintiffs' beliefs easily fit within the common understanding of religious beliefs under Title VII which is "that a religious belief is a belief that is considered religious 'in [the] person's own scheme of things' and is 'sincerely held.'" *Adeyeye*, 721 F.3d at 448 (quoting *Redmond v. GAF Corp.*, 574 F.2d 897, 901 n. 12 (7th Cir.1978)).

## D.    Ascension Health's Religious Exemption Process[82]

751.    Ascension Health informed all its employees that it offered religious exemptions to its COVID-19 vaccine mandate.

752.    Ascension Health's Questions and Answers about Ascension Health's Associate COVID-19 Vaccination Policy ("Ascension Health Vaccination Policy Q&A") provides:

---

[81] As used in this section, the term "Ascension" refers collectively to Ascension Health, Inc. and Ascension – St. Vincent.
[82] As used in this section, the term "Ascension" refers collectively to Ascension Health, Inc. and Ascension – St. Vincent.

> In those instances when someone may not be able to get the
> COVID-19 vaccine because of a medical condition or strongly
> held religious belief, we will provide a process for requesting an
> exemption. Requests for exemptions will be reviewed by
> members of Associate and Occupational Health, Human
> Resources, and Mission Integration. The exemption application
> will be available the week of August 16. Exemption applications
> are due by October 1 to allow time for review. A decision will be
> made and shared with you by October 12 on the status of the
> exemption request. [83]

753.    Ascension Health's announcement of a religious exemption process is

in line with EEOC guidance on private employers issuing COVID-19 vaccine

mandates. *See* What You Should Know About COVID-19 and the ADA, the

Rehabilitation Act, and Other EEO Laws §§ K.1 & K.2., EEOC (May 28, 2021),

https://www.eeoc.gov/wysk/what-you-should-know-about-COVID-19-and-ada-

rehabilitation-act-and-other-eeo-laws.

754.    Ascension Health repeatedly stated that if an employee was not

vaccinated by November 12, 2021, they will be "suspended pending further

investigation" and that "failure to comply will be deemed a voluntary resignation of

the associate."[84]

755.    Associates were told that all decisions regarding exemptions are made

at Ascension Health's national level and cannot be changed at the local level.

Ascension Health managers explained to associates this policy meant that

---

[83] Ascension Vaccination Q&A at 8-9 (added July 30, 2021) (**App. 12**) ("When can I send in
an exemption and what is the process?").
[84] Ascension Vaccination Q&A at 11 (added July 28, 2021) (**App. 12**) ("What happens to an
associate who declines to be vaccinated against COVID-19?").

associates denied a religious exemption who did not submit to COVID-19 vaccination would be terminated on or about November 12, 2021.

756.   The understanding that Ascension Health associates who did not get a COVID-19 vaccine by November 12, 2021, would be terminated on or about that date was reinforced by Ascension Health emails *until November 5, 2021*.

757.   On November 5, 2021, Ascension Health, for the first time, communicated to all associates that, those not approved for exemptions who did not take a COVID-19 vaccine would be *suspended* on November 12, 2021, and then *terminated* on January 4, 2022:

> Ascension Health's requirement for all associates and medical staff members to receive the COVID-19 vaccine by Nov. 12, 2021, remains in effect. Associates and medical staff members who do not meet this requirement will be suspended. However, in alignment with the Centers for Medicare & Medicaid Services (CMS) timeline, associates will be reinstated if they complete and upload documentation of their fully vaccinated status by Jan. 4, 2022. Failure to meet this requirement will be considered a voluntary resignation.[85]

758.   Ascension Health set a deadline of October 1, 2021, for requests for exemptions from its vaccine mandate to be submitted. Ascension Health also set the same October 1 date as the deadline to apply for exemptions to Ascension Health's Influenza vaccine requirement.

759.   The October 1 submission deadline chosen by Ascension Health provided only six-weeks to process all requests for exemptions from COVID-19 and Influenza vaccination before the November 12, 2021, deadline for associates to be

---

[85] 11/5/2021 email from Nick Ragone, Chief Marketing and Communications Officer (Ascension), Subject: An Important Message Regarding COVID-19 Vaccination.

vaccinated. However, because two of the three vaccines require about a two-week period between injections, this meant that Ascension Health allotted only about a month to process all religious exemptions across its nationwide network.

760.   Plaintiffs all applied before the October 1 deadline for religious exemptions from the COVID-19 vaccine.

## Ascension Health's Resign to Apply Ploy

761.   Ascension Health forced applicants for an exemption from its COVID-19 vaccine mandate to use a cumbersome online application system that (1) limited the words they could provide when requesting an exemption and (2) made it appear that exemptions from the vaccine mandate were entirely at Ascension Health's discretion because Ascension Health associates were told that they were required to either: (a) take the vaccine or (b) "resign" from employment if their exemption request was not approved.

762.   The automated online religious exemption application interface created by Ascension Health asked applicants to click a drop down stating: "'I Agree' to voluntarily resign if my request is denied and I do not comply."

763.   Through this method Ascension Health actively sought to require its employees to prejudice or limit their Title VII rights (or to believe that they had waived their Title VII rights, including their right to contest Ascension Health's exemption decision) merely to be able to request an exemption from Ascension Health's vaccine mandate.

764.    Ascension Health's "resign" requirement messaging was thereafter followed up on by Ascension Health managers who asked exemption applicants when they were going to "resign."

765.    On November 5, 2021, Ascension Health notified its associates that any associates not vaccinated by November 12, 2021, "will be suspended" and that failure to be vaccinated by January 4, 2022, "will be considered a voluntary resignation."

766.    Ascension Health's coercive effort to leverage the exemption process from the outset as a tool to limit its associates' rights and encourage them to (a) believe they had to resign if an exemption was not granted to them, or (b) abandon the exemption process, and (c) had the effect of making some employees believe that the exemption process was entirely at Ascension Health's discretion, and (d) discouraged Ascension Health employees from asserting their rights under Title VII.

**Ascension Health's First Week in October Religious Exemption Denials**

767.    Ascension Health told associates that exemption applications would be available the week of August 16 and due by October 1.

768.    Plaintiffs submitted their applications for exemption but all received denials.

769.    No associate was contacted by Ascension Health's exemption processors to ask any questions about accommodations or to discuss their application in any way.

770.   It is apparent that Ascension Health outsourced its religious exemption processing.

771.   Every exemption denial came from the same generic and anonymous email address: Ascension Healthprod@service-now.com.

772.   No local input was permitted into Ascension Health's religious exemption review process.

773.   Ascension Health's confusing exemption process created a sense of the inevitability of denials that put pressure on associates who had sought religious exemptions to capitulate and receive the vaccine.

774.   By waiting until the first week in October or later to deliver denials Ascension Health put additional pressure on associates to capitulate and reduced the opportunity for associates to interact with Ascension Health as by the time denials were received only about three weeks remained before an associate would need to be vaccinated to comply with Ascension Health's original November 12 deadline.

775.   Ascension Health's convoluted exemption process discouraged some associates from even applying for a religious exemption.

776.   For instance, after Plaintiff Patrick Fowler's denial, faced with no other option, Mr. Fowler gave in to Ascension Health's demands and took the vaccine soon after the denial of his application. Mr. Robert Runge was also coerced into taking the vaccine.

777.   Ascension Health's failure to fully assess or scrutinize initial religious exemption requests as required by Title VII and to instead deny initial exemption requests with little or no scrutiny, put applicants for religious exemption at immediate risk of termination and ratcheted up the pressure on those whose religious accommodation requests had been perfunctorily denied.

**Ascension Health's Refusal to Engage in an Interactive Process with Those Requesting Accommodation**

778.   At no time did Ascension Health engage any Plaintiff in give and take discussion about potential accommodations. Although several Plaintiffs tried to engage Ascension Health in dialogue, they were ignored and no face-to-face or verbal meetings on religious exemption accommodations took place with any Plaintiff. Due to Ascension Health's disinterest in communicating with any Plaintiff about their request for religious exemption there was:

(a)   No discussion about what mitigation measures any Plaintiff used to prevent COVID-19 transmission;

(b)   No discussion about what mitigation measures any Plaintiff would be willing to use to prevent COVID-19 transmission;

(c)   No discussion about the level of mitigation measures employed by Ascension Health personnel in Plaintiff's unit and hospital in order to prevent COVID-19 transmission;

(d)   No discussion about statistical data relating to transmission rates in Plaintiffs unit or hospital;

(e)   No discussion about what parts of Ascension Health facilities any Plaintiff might be willing to avoid (such as breakrooms, lounges, cafeterias, waiting rooms, etc.) as an accommodation;

(f)   No discussion about the frequency of COVID-19 testing any Plaintiff might agree to as an accommodation;

(g)     No discussion about any prior exposure of Plaintiff to the SARS-Co-V-2 virus;

(h)     No discussion about antibody levels and other indicia of immunity to the SARS-Co-V-2 virus that the Plaintiff might have;

(i)     No discussion about the Plaintiff's reliability and why they could be depended upon to rigorously employ mitigation measures;

(j)     No discussion about the current level of community spread of the SARS-Co-V-2 virus;

(k)     No discussion about the vaccination rate in Plaintiff's unit;

(l)     No discussion about the vaccination rate in Plaintiff's hospital;

(m)     No discussion about the vaccination rate among Ascension Health's patients at Plaintiff's healthcare facility;

(n)     No discussion about the number of individuals with medical exemptions who are caring for patients in Plaintiff's unit, in Plaintiff's hospital and within the Ascension Health system;

(o)     No discussion about policies and procedures of Plaintiffs who exclusively provide telehealth or telemedicine services outside the hospital setting and who do not have direct contact with patients;

(p)     No discussion about policies and procedures for Plaintiffs who provide support services outside of the hospital setting and who do not have contact with patients and staff; and

(q)     No discussion about the lack of SARS-Co-V-2 virus transmissions within Plaintiff's unit.

779.   As a result, no Plaintiff has reason to believe any of the foregoing topics or any other relevant factor was ever considered by Ascension Health in relation to any Plaintiff's religious exemption request, and Plaintiffs reasonably believe that no such factors were considered by Ascension Health.

**Ascension Health's "Out of the Blue" 7-Day Appeal Deadline**

780.    Many of the applicants for religious exemptions received a perfunctory, boilerplate email stating that their request for exemption had been denied, but this email confusingly stated that, although their request for exemption was denied, the associate had seven-days to submit additional information to Ascension Health.

781.    Nothing about Ascension Health's prior written instructions to its associates alerted them that those applying for exemptions would have an appeal opportunity, or that they could submit documents and information to Ascension Health outside the online submission process, or that an appeal process would give them 7-days to submit documents after denial of an application for exemption.

782.    Notification to associates about the 7-day appeal period came "out of the blue" and was only contained in the email Ascension Health sent denying their request for religious exemption. It was not, for instance, referenced in Ascension Health's Q&A document. In fact, from August onward the Q&A document told associates, "there will not be an appeal process."[86]

783.    As a result, some Plaintiffs did not even become aware that they had received an email giving them only 7-days to appeal until several days into the short period.

784.    The short 7-day deadline put further pressure on associates seeking religious exemptions.

---

[86] Ascension Vaccination Q&A at 5 (added August 16, 2021) (**App. 12**) ("If a request for exemption is denied is there an appeal process?").

785.    The notice that documentation could be submitted to Ascension Health was confusing because it followed a written denial of the associate's application for exemption.

786.    The notice did not explain why an associate should submit documentation given the associate's exemption request had already been denied.

787.    Moreover, Ascension Health's perplexing communication did not explain what information Ascension Health might be looking for, or even how to submit the documentation.

788.    The "out of nowhere" appeal and document submission process was another confusing aspect of the exemption process for associates and appears to have been intended to be that way, as it is difficult to believe that a corporation as large as Ascension Health going through a vaccine mandate rollout that had been ongoing for months – and supported by an outside workflow processing company – did not carefully think through the religious exemption process it would put applicants through.

789.    Ascension Health surely could have invited the submission of documentation supporting an applicant's exemption request at the outset of the process before Ascension Health had issued a denial of an associate's exemption request had it wanted to.

790.    Yet, Ascension Health chose instead to take requesters through a process that severely limited the word count of their initial request and did not initially provide a process for submitting documents, then only advised requesters

of an opportunity to submit documentation after the requester's application had been denied.

791.    These confounding aspects of Ascension Health's exemption process had at least two impacts: (a) they limited the number of religious exemption requesters who would submit documentation to only the most patient and persistent, and (b) they put additional time pressure on all applicants for exemptions, giving them a short deadline that they had no opportunity to plan for, and it perhaps induced some to abandon their request for exemption.

## Ascension Health's Run Out the Clock Strategy

792.    Ascension Health's chaotic exemption process was either an utter disaster of organization, coupled with a callous refusal to reasonably communicate with associates seeking religious exemptions, or a calculated effort to game associates into not pursuing their legal rights.

793.    The unexpected out of the blue appeal process initially provided the Plaintiffs false hope that they might still convince Ascension Health of the merits of their claims. Yet, their requests were still denied.

794.    Thus, the process Ascension Health chose to employ to process religious exemption requests ran many associates to the brink of suspension until just about a week before the November 12 deadline, as many Plaintiffs received virtually identical boilerplate emails confirming their exemption requests had been denied.

**Ascension Health's Associate Suspension and "Voluntary Resignation"
Maneuver and Last-Minute "Individualized Assessment" Emails**

795.   On November 5, 2021, after CMS issued its IFC Rule earlier in the

day, Ascension Health sent an email informing associates that any associate who

was unvaccinated by November 12 "will be suspended" and if they were not fully

vaccinated by January 4, 2022, it would "be considered a voluntary resignation."

796.   This maneuver imposed additional hardship upon religious exemption

requesters by imposing a two-month suspension without pay merely because they

requested a religious exemption. It also extended by an additional two months the

covenant not to compete of any suspended associate with a covenant not to compete.

By imposing a suspension and then describing an associate's termination

inaccurately as a "voluntary resignation," these characterizations made it more

difficult for those who sought religious exemptions to obtain unemployment

compensation.

797.   Ascension Health's last-minute creation of a 2-month mandatory

suspension purgatory for applicants for religious exemption underscores the

arbitrariness of Ascension Health's original November 12, 2021, deadline for

receiving the vaccine.

798.   Also, between November 4-6, 2021, after they had already been

notified that their exemption requests had been denied, many Plaintiffs received

another unprompted, out of the blue, email.

799.   This email repeated that the Plaintiff had been denied an exemption

and then disingenuously stated that the associate had been denied based on an

"individualized assessment," without saying anything about what the alleged assessment entailed.

800.   Ironically, the numerous "individualized assessment" emails sent out by Ascension Health were not individualized in any way. They were simply mechanized, mass-produced emails evidently sent merely to insert into the chain of emails received by each associate the magic words, "individualized assessment."

801.   Despite what the email claimed, however, Plaintiffs did not receive any truly individualized communication from Ascension Health in relation to their religious exemption requests addressing the individual circumstances of any Plaintiff.

**Ascension Health's Last-Minute Religious Exemption U-Turn**

802.   After putting thousands of Ascension Health associates through the turmoil of unpaid suspensions and termination notices, on or about December 17, 2021, Ascension Health began calling back to work thousands of suspended associates whose religious exemptions had been denied.

803.   These call backs, initiated only a little over a month after so many individuals had been suspended without pay, were utterly inconsistent with the singular justification given associates for denying their religious exemptions which had uniformly been a claim of increased risk.

804.   Ascension Health's communications and explanations given for its call backs were less than fulsome. Associates were called by supervisors on scripted phone calls and most questions were unanswered or deferred to Human Resources.

805.   In general, many associates were not even told that their religious exemptions had been granted but instead were simply advised they were being called back to work and given only a matter of days to decide whether to return to work.

806.   Associates were told that if they did not promptly return, they would be considered to have voluntarily resigned.

807.   If they asked Associates who were also informed they would not be repaid any of the wages they lost through Ascension Health's unpaid suspensions.

808.   Nor were any apologies issued by Ascension Health management for the considerable turmoil they put their healthcare workers through.

### Discriminatory Treatment of AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend: Lengthy Unpaid Suspension and Delayed Termination

809.   As explained above, despite unvaccinated, similarly situated, co-workers being recalled, AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend were not permitted to return to work.

810.   Ultimately, AGACNP-BC Maupin was kept on unpaid suspension for thirty-nine (39) days, and St. Vincent attempted to run her one-year covenant not to compete period from her December 20, 2021 termination date.

811.   CNM Monte was kept on unpaid suspension for seventy-two (72) days, and St. Vincent attempted to run her one-year covenant not to compete period from her January 22, 2022 termination date.

812.   While NP Stafford has yet to receive written notice, she has learned that she was terminated on December 20, 2021 and was kept on unpaid suspension for thirty-nine (39) days.

813.   Additionally, while ANP Weisend was temporarily recalled on December 26, 2021, nineteen (19) days later, on January 14, 2022, she was terminated "due to a reduction in force affecting [her] department," information that upon information and belief, should have been known prior to her recall, at a minimum.

814.   There is no reasonable explanation for St. Vincent's and Ascension Health's treatment of AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend, raising a strong inference of religious discrimination and/or retaliation for pursuing their religious rights.

## CLASS ALLEGATIONS

**On behalf of Plaintiffs Mr. Chad Denney, Ms. Brenda Hartman,
Mr. Chris Parr, Mr. Robert Runge, PA-C Amanda Thiergartner,
ANP Alaynah Weisend, and Mr. Andrew Zenthofer,
and others similarly situated**

815.   Plaintiffs Nurse Heather King, Ms. Brenda Hartman, Mr. Chris Parr, Mr. Robert Runge, PA-C Amanda Thiergartner, ANP Alaynah Weisend, and Mr. Andrew Zenthofer are identified as potential class representatives to bring this class action under Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

816.   Through this action, Plaintiffs seek to represent a class of all current or past Ascension Health and/or St. Vincent Health employees who have requested

or will request religious exemption or accommodation from Ascension Health's

COVID-19 vaccine mandate and have:

> (a)    been terminated, discharged or constructively discharged as a consequence of not taking a COVID-19 vaccine, or

> (b)    resigned or left employment after announcement of Ascension Health's COVID-19 mandate, or

> (c)    been placed on unpaid suspension and recalled to work and not paid the wages lost as a result of being placed on unpaid suspension, or

> (d)    been placed on unpaid suspension and not paid the wages lost as a result of suspension and never recalled to work, or

> (e)    received the COVID-19 vaccine against their religious beliefs in fear of termination;

> (f)    received a COVID-19 vaccine following Ascension Health's denial of their request for a religious exemption; and

> (g)    received a dose of the COVID-19 vaccine against their religious beliefs in fear of termination but did not receive the second dosage;

817.   Plaintiffs anticipate that they may ultimately seek three or more

subclasses when they move for class certification, including:

> (a)    employees who sought religious accommodations and were placed on unpaid suspension as a result of not receiving a COVID-19 vaccine and were later asked to return to work but not paid all wages lost as a result of being placed on unpaid suspension;

> (b)    employees of St. Vincent Health with written employment contracts who were denied religious exemptions to Ascension Health's vaccine mandate and were suspended and/or terminated by St. Vincent Health for not receiving a COVID-19 vaccine and/or who received notice from St. Vincent Health or Ascension Health that their employment would be suspended or terminated if they did not receive a COVID-19 vaccine because their application for religious exemption was denied; and

(c)    employees of Ascension entities without a written employment contract who were denied religious exemptions to Ascension Health's vaccine mandate and were suspended and/or terminated by Ascension Entities for not receiving a COVID-19 vaccine and/or who received notice from Ascension Health and/or Ascension Entities that their employment would be suspended or terminated if they did not receive a COVID-19 vaccine because their application for religious exemption was denied.

818.    The class is so numerous that joinder of all members is impractical. While the exact class size is unknown to Plaintiffs at this time, it is expected to exceed 2,500 employees. The precise number and identification of the class members will be ascertainable from Ascension Health's records during discovery.

819.    There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

(a)    Did Ascension Health and/or the Ascension Entities provide their employees with an adequate mechanism for requesting an accommodation when it required requests to be submitted through an online system which limited the amount of information that could be provided in support of an exemption request and by an arbitrary date?

(b)    Did Ascension Health and/or Ascension Entities comply with its obligations under federal law to engage in the interactive process when responding to each accommodation request?

(c)    Did Ascension Health and/or Ascension Entities comply with its obligations under federal law when it sought to require associates to agree to resign if their religious exemption request was denied by Ascension Health?

(d)    Did Ascension Health and/or Ascension Entities comply with its obligations under federal law when it issued accelerated denials of applicants for religious exemptions and then offered them an arbitrary seven (7) day appeal period in which to submit additional evidence to Ascension Health?

(e)     Did Ascension Health and/or Ascension Entities comply with its obligations under federal law through providing its employees a confusing and chaotic process for seeking religious exemptions?

(f)     Was the uniform and perfunctory one-sentence justification that Ascension Health gave all employees for denying their religious exemption requests pretextual?

(g)     Was the uniform and perfunctory one-sentence justification that Ascension Health gave all employees for denying their religious exemption requests sufficient to establish undue hardship?

(h)     Did Ascension Health and/or Ascension Entities comply with its obligations under federal law to reasonably accommodate employees with religious objections to the vaccine mandate and to not discriminate when it offered no accommodations and denied religious exemption requests on the basis of alleged increased risk while granting medical exemption requests?

(i)     Did Ascension Health and/or Ascension Entities intentionally pursue a strategy to terminate or not grant a religious exemption for as many associates as possible who sought a religious exemption to taking a COVID-19 vaccine?

(j)     Was the statement of Ascension Health's President and CEO, made to all Ascension Health associates, that receiving COVID-19 vaccination was a "moral obligation" and that increasing the number of persons vaccinated was a "moral imperative" a motive for Ascension Health's denial of religious exemptions?

(k)     Did Ascension Health and/or Ascension Entities engage in religious discrimination when it told all Ascension Health and Ascension Entities' employees that they were morally required to be vaccinated and then denied a high percentage of religious exemption requests to Ascension Health's vaccine mandate?

(l)     Did Ascension Health and/or Ascension Entities retaliate against employees who engaged in protected activity when it initially responded to all or most exemption requests by denying the request and then engaging in a common pattern of conduct designed to discourage or dissuade employees from requesting (or continuing to seek) an accommodation?

(m)    Did Ascension Health and/or Ascension Entities retaliate against employees who engaged in protected activity when it

purposefully and perfunctorily denied requests for religious exemption without fully examining them?

(n)     Did Ascension Health and/or Ascension Entities fail to reasonably accommodate the religious exemption requests of employees who had previously recovered from the SARS-CoV-2 virus when Ascension Health failed to consider immunity gained from prior infection in evaluating religious exemption requests?

(o)     Did Ascension Health and/or Ascension Entities violate federal law by failing to repay (or causing its associated hospitals to fail to repay) lost wages to employees who had sought religious exemptions and who were placed on unpaid suspension?

(p)     Did St. Vincent Health breach its employment contracts with its employees by not maintaining reasonable written policies related to religious exemptions and/or its Covid-19 vaccine mandate and terminating Plaintiffs and those similarly situated without cause?

(q)     Did St. Vincent Health breach its employment contracts with its employees by terminating employees for not complying with unreasonable employer policies?

(r)     Did St. Vincent Health breach its employment contracts with its employees by terminating employees for allegedly not complying with Ascension Health policies?

(s)     Did St. Vincent Health breach its employment contracts with its employees by placing employees on unpaid suspension?

(t)     Did St. Vincent Health conspire with Ascension Health to breach St. Vincent Health's employment contracts with its employees by not maintaining reasonable written policies related to religious exemptions and/or its Covid-19 vaccine mandate and conspire with Ascension Health to terminate Plaintiffs and those similarly situated without cause?

(u)     Did Ascension Health interfere with employment contracts with St. Vincent?

820.    Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested accommodations from Ascension Health's and/or Ascension Entities' vaccine mandate, and sought to maintain their employment

with Ascension Health and/or Ascension Entities formally or effectively denied those requests without engaging in the interactive process and/or in breach of Plaintiffs' contractual rights.

821.    For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

822.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

## COUNT I

### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.

### Religious Discrimination—Retaliation

### On behalf of all named Plaintiffs and others similarly situated

823.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

824.    Title VII prohibits Ascension Health and the Ascension Entities from retaliating against an employee for engaging in protected activity. *See Boston v. U.S. Steel Corp.,* 816 F.3d 455, 464-65 (7th Cir. 2016).

825.    Plaintiffs engaged in protected activity when they requested (or sought to request) religious accommodations from Ascension Health's vaccine mandate.

826.    Attempting to leverage access to the religious application process itself to require Ascension Health and/or Ascension Entities' employees to sign away their Title VII rights and "voluntarily resign" if Ascension Health denied their

application is itself retaliatory and an attempt to limit the Title VII rights of those requesting religious accommodation.

827.    Ascension Health's "voluntarily resign" ploy is further evidence of the lack of good faith inherent in Ascension Health's handling of its vaccine mandate exemption process.

828.    The lack of face-to-face or telephonic communication with requesters about the circumstances in which they work or other relevant matters raises an inference that little or no inquiry or individualized evaluation was given to the requests.

829.    Ascension Health's pattern and practice of sitting on associates' exemption requests for lengthy periods ranging up to 50 days and then responding with the same perfunctory, pro forma, denials that everyone else received also supports the conclusion that no individualized inquiry was undertaken as to any religious exemptions.

830.    Further, springing an arbitrary additional seven-day period to submit additional information to Ascension Health after the associate's initial request for exemption had already been denied suggests that Ascension Health did not operate the religious exemption process in good faith.

831.    These actions did, and were intended to, coerce Plaintiffs and other employees to either forgo their religious beliefs and receive the COVID-19 vaccine or abandon or not fully document their applications for religious exemption.

832.   Ascension Health's cumbersome, chaotic, and confusing religious exemption process constituted retaliation towards associates seeking religious exemptions.

833.   Ascension Health's discriminatory treatment of religious accommodation requests—arbitrarily cutting off the deadline for submitting religious accommodations while at the same time granting requests for medical accommodation—supports an inference that Ascension Health planned to not grant religious accommodation requests and that the religious exemption process was a charade.

834.   Further, Ascension Health's false characterization of Plaintiffs as being "suspended" was coercive, prejudicial to Plaintiffs, and in retaliation for Plaintiffs seeking a religious exemption.

835.   Ascension Health's and Ascension Entities' refusal to pay Plaintiffs for the wages they lost while purportedly suspended without pay was the result of the arbitrary and illegal failure to earlier grant religious exemptions to Plaintiffs and violated Title VII.

836.   Ascension Health's false characterization of Plaintiffs as voluntarily resigning effective January 4, 2022, was prejudicial and in retaliation for Plaintiffs seeking a religious exemption.

837.   Further, Ascension Health's emails sent to Plaintiffs claiming that "individualized assessment[s]" of their circumstances had occurred were false and

were intended to mislead Plaintiffs and dissuade them and others similarly situated from pursuing their rights under Title VII.

838. Plaintiffs' religious beliefs and their protected activity of seeking a religious exemption were the causes of Ascension Health's adverse employment actions.

839. By retaliating against Plaintiffs for engaging in protected activity, *i.e.*, filing requests for religious exemption and seeking accommodation, Ascension Health has violated Title VII. This violation has harmed and continues to harm Plaintiffs.

840. The Ascension Entities are fully responsible for the discriminatory conduct of Ascension Health because the Ascension Entities permitted Ascension Health to handle vaccination procedures and the religious exemption process in relation to St. Vincent employees.

841. Plaintiffs have filed charges with the EEOC complaining of these retaliatory and unlawful actions on a class wide basis.

842. Wherefore, Plaintiffs request that the Court grant them the relief requested in their prayer for relief below.

**COUNT II**

**Violation of Title VII, 42 U.S.C. § 2000e,** *et seq.*

**Religious Discrimination—Direct and Indirect Methods**

**On behalf of all named Plaintiffs and others similarly situated**

843. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

844.   Pursuant to 42 U.S.C.A. § 2000e-2(a)(1) it is "an unlawful employment practice for an employer. . . to discharge any individual . . . because of such individual's . . . religion[.]"

845.   The Supreme Court has observed that this "intentional discrimination provision prohibits certain motives, regardless of the state of the actor's knowledge," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015), and that "Title VII does not demand mere neutrality with regard to religious practices [of employees]—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]" *Id.* at 775.

846.   "Title VII has been interpreted to protect against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs." *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 391 (E.D.N.Y. 2016) (citation omitted).

847.   Therefore, Title VII will support a claim for "reverse religious discrimination: that defendants subjected claimants to discrimination by imposing religious practices and beliefs on claimants." *Id.*

848.   "Title VII . . . protects employees from discrimination because they do not share their employer's religious beliefs." *Id.* at 392.

849.   Thus, for example, "[a]n employer discriminating against any non-Catholic violates the anti-discrimination laws no less than an employer

discriminating only against one discrete group[.]" *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 378 (2d Cir. 2003).

850.    In connection with Ascension Health's vaccination mandate, Ascension Health's President and CEO stated in official communications to all Ascension Health associates that it is a "Catholic . . . moral imperative" to "increase[e] the utilization rate of COVID-19 vaccination"[87] and that Ascension Health's vaccine mandate furthers this goal.

851.    Ascension Health's effort to impose an allegedly "Catholic . . . moral imperative" upon employees and require them to set aside their personal religious beliefs on pain and penalty of losing employment is overtly discriminatory.

852.    Title VII prohibits Ascension Health from requiring its employees conform to a religious belief that COVID-19 vaccination is a "moral imperative."

853.    Ascension Health's inhospitable view of the religious beliefs of employees who find taking the COVID-19 vaccines to be morally objectionable and contrary to their religious practices supports an inference that Plaintiffs were discriminated against based on their refusal, on religious grounds, to receive a COVIS-19 vaccine and due to their applying for religious exemption.

854.    Additional evidence of Ascension Health's discrimination and animus towards those unwilling to receive a COVID-19 vaccine due to sincerely held

---

[87] Joe Impicciche (Ascension President and CEO) Letter to Associates re: Pope Francis' statement COVID-19 vaccination and "act of love" and moral obligation, (Aug. 19, 2021) (**App. 11 at 1-12**).

religious beliefs is Ascension Health's handling of religious exemption requests in comparison to its treatment of exemption requests based on secular reasons.

855.    Ascension Health's discriminatory treatment in the handling of religious exemption requests vis-à-vis medical exemption requests, *i.e.*, favoring medical exemptions while disfavoring religious exemptions, presents a classic case of reverse discrimination. *See, e.g., Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519, at *5 (6th Cir. Oct. 7, 2021) (discrimination in the handling of COVID-19 vaccination requirements for student-athletes vs. no vaccination requirement for non-athletes).

856.    Reliance on a pretextual or insufficient reason for its adverse employment decisions raises an inference of discrimination.

857.    Further evidence of Ascension Health's bias and discrimination against Plaintiffs is the perfunctory and plainly pretextual reason given every applicant denied a religious exemption.

858.    The totality of the circumstances related to Ascension Health's cumbersome, chaotic, and confusing religious exemption process also supports an inference of religious discrimination.

859.    It is now clear that the reason given by Ascension Health for not providing accommodation (i.e., "increased risk") was pretextual as Ascension Health did not consider individualized information about Plaintiffs relevant to risk.

860.    To try to cover up Ascension Health's failure to individually assess the circumstances of religious exemption applicants, on or about November 4-6, 2021,

weeks after most requesters had already received notification their request for religious exemption had been denied, representatives of Ascension Health sent Plaintiffs, and many others similarly situated, identical, robotic, boilerplate, emails from a centralized email address, [Ascension Healthprod@service-now.com](mailto:Ascension Healthprod@service-now.com), stating that an "individualized assessment" of the circumstances surrounding each associate's religious exemption request had been undertaken.

861.   However, making a claim of "individualized assessment" in mass produced emails sent to scores of religious exemption applicants from an anonymous email address does not make it so.

862.   These last-minute emails are in fact an admission by Ascension Health that an individualized assessment *should have been* conducted, and indeed was required by Title VII to have been conducted but was not.

863.   These emails further demonstrate that knowing that Ascension Health had not fulfilled its legal obligations to Plaintiffs and others similarly situated, Ascension Health representatives sought to cover up Ascension Health's serial failures to comply with Title VII.

864.   It is reasonable to infer from the totality of the circumstances that Ascension Health did not bother engaging in an interactive process with those seeking religious exemption because Ascension Health intended to discriminate against those seeking religious exemptions and never intended to provide them with a reasonable accommodation.

865.   Ascension Health and/or the Ascension Entities discriminated against Plaintiffs by failing to grant them religious exemptions and then putting them on unpaid suspensions.

866.   By discriminating against Plaintiffs because of their sincerely held religious beliefs and their decisions to apply for religious exemptions Ascension Health and/or the Ascension Entities violated Title VII, and this violation has harmed and continues to harm Plaintiffs.

867.   The Ascension Entities are fully responsible for the discriminatory conduct of Ascension Health because the Ascension Entities permitted Ascension Health to handle vaccination procedures and the religious exemption process in relation to the Ascension Entities' employees and these Ascension Entities carried out Ascension Health's directive to suspend unvaccinated employees without pay.

868.   Plaintiffs have filed charges with the EEOC complaining of these unlawful actions on a class wide basis.

869.   Wherefore, Plaintiffs request that the Court grant them the relief requested in their prayer for relief below.

## COUNT III

### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

### Religious Discrimination—Failure to Accommodate

### On behalf of all named Plaintiffs and others similarly situated

870.   Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

871.   Title VII prohibits Ascension Health from discriminating against employees based on their religion. This "include[s] all aspects of religious

observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

872.   "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

873.   *The employer must carry the burden of proving undue hardship.* 42 U.S.C. § 2000e(j); EEOC Religious Accommodation Regulation, 29 C.F.R. § 1605.2(b) and (c)(1).

874.   For many Plaintiffs, Ascension Health has provided a one-sentence justification for its denial of Plaintiffs' requests for religious exemptions:

> "Due to the nature of your role, approving this accommodation poses undue hardship to the organization due to increased risk to the workplace and patient safety."

875.   Ascension Health's perfunctory explanation is vague and prevents or dissuades applicants from proposing potential accommodations. For instance, the phrase "this accommodation" is not specific and does not identify the accommodation(s) that Ascension Health is stating would impose an undue hardship.

876.    For the other Plaintiffs, no justification was provided beyond Ascension Health's mere denial and demand to comply with the vaccination requirement by November 12, 2021.

877.    As there was no dialogue with any Plaintiff, the explanation given, or the lack thereof, by Ascension Health is not meaningful. Because there was no dialogue there was no discussion of accommodations. Therefore, a Plaintiff could not know to which accommodation Ascension Health was referring.

878.    Also, Ascension Health's statement that there is a hardship "to the organization due to increased risk to the workplace and patient safety" is vague, conclusory, and of no explanatory value. Ascension Health does not explain, and has never explained to any Plaintiff, how a risk to workplace and patient safety is increased by the associate not receiving a COVID-19 vaccine, particularly considering the many protections against COVID-19 transmission already in place in Ascension Health facilities.

879.    Throughout the religious exemption process neither Ascension Health nor the Ascension Entities provided a cogent explanation of its position, and never communicated relevant facts and reasoning upon which it relies, so that Plaintiffs could assess Ascension Health's one-sentence justification and meaningfully respond to it.

880.    The undue hardship analysis requires an employer to engage in an individualized assessment of each employee's circumstances. This is clear from the statutory language requiring the employer to demonstrate inability to "reasonably

accommodate *an employee's* . . . religious observance or practice without undue hardship." 42 U.S.C. § 2000e(j) (emphasis added). The reference to "*an employee's*" makes clear that the undue hardship analysis is to be unique to the employee and to that employee's circumstances.

881.   "A mere assumption that many more people, with the same religious practices as the person being accommodated, may also need accommodation is not evidence of undue hardship." *EEOC Religious Accommodation Regulation*, 29 C.F.R. § 1605.2(c) (1).

882.   Thus, while it may have been expedient for Ascension Health to provide the same single-sentence justification, or no justification at all, to every religious exemption requester in the country, under Title VII it was not permissible for Ascension Health to do that alone and meet the requirements of the statute.

883.   As explained above, Ascension Health is aware of its duty to conduct individualized assessments and sought to cover-up its failure to do so with last-minute, boilerplate emails to all religious exemption applicants.

884.   Each Plaintiff had unique circumstances relevant to the undue hardship analysis that should have been undertaken to address their situation. Yet, they were all treated with the same one-size fits all approach. Thus, this aspect of Ascension Health's Title VII approach was insufficient as well.

885.   For example, although the named Plaintiffs work for Ascension Health and/or the Ascension Entities in some compacity, they work in different hospitals, some work remote, within different care units within those hospitals. Each Plaintiff

had different job functions. Further, the hospitals have differing patient bases. In fact, some Plaintiffs had no interaction with patients. Each of these factors and others impact assessment of risk levels. Yet, Plaintiffs received the same, identical, one-sentence justification or no justification.

886.   There is nothing which suggests to Plaintiffs that the statutorily required individualized assessment of undue hardship was undertaken by Ascension Health and/or the Ascension Entities, let alone that any assessment of their circumstances was accurate. Further, Ascension Health and/or the Ascension Entities' failure to engage in an interactive process and conduct individualized assessments demonstrates that the statutory process for determining undue hardship was not followed by Ascension Health and/or the Ascension Entities.

887.   The foregoing demonstrates that Ascension Health's approach was *procedurally* flawed. However, the content of Ascension Health's repetitive one-sentence justification given to many Plaintiffs and many other Ascension Health associates, and the simple avoidance of any justification, confirms that it was *substantively* flawed as well.

888.   "An employer must . . . present evidence of undue hardship" and not "rely merely on speculation*," Smith v. Pyro Min. Co.,* 827 F.2d 1081, 1085–86 (6th Cir. 1987), and the lack of substantive content in Ascension Health's one-sentence justification (and indeed in every communication Ascension Health sent Plaintiffs) demonstrates that Ascension Health has not established undue hardship.

889.    Merely, stating that there is increased risk to the workplace and patient safety without explaining why and without providing evidentiary support cannot be sufficient to meet Ascension Health's obligation under Title VII to establish undue hardship. Establishing "undue hardship" requires assessment of actual circumstances at the employer's place of business and of proposed and potential accommodations, and Ascension Health's robotic, one-sentence justification used throughout the country and in myriad contexts demonstrates that Ascension Health did not do the work of assessing undue hardship. For the other Plaintiffs with no explanation, Ascension Health simply ignored its required assessment.

890.    Undue hardship analysis must start with an analysis of proposed accommodations. As explained above, neither Ascension Health nor the Ascension Entities identified potential accommodations. Therefore, Ascension Health did not reach the first step of analyzing accommodations. An employer violates Title VII if it fails to attempt an accommodation after accommodation is requested. *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("[a]fter failing to pursue [a voluntary waiver of seniority rights] or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship."); *EEOC v. Ithaca Indus., Inc.*, 849 F.2d 116 (4th Cir. 1988) *cert denied* 488 U.S. 924 (1988) (same).

891.    An employer must demonstrate attempted accommodation before it claims undue hardship as a defense. *See*, *e.g.*, *Redmond v. GAF Corp.,* 574 F.2d 897, 901-2 (7th Cir. 1978); *Shaffeld v. Northrop Worldwide Aircraft Serv. Inc.*, 373 F. Supp. 937, 944 (M.D. Ala. 1974). Ascension Health's one-sentence justification demonstrates that it did not consider potential accommodations.

892.    However, it is clear Ascension Health could have considered accommodations beyond even those mitigation measures that are already in place in Ascension Health facilities, and there are reasonable accommodations Ascension Health could have implemented to accommodate Plaintiffs.

893.    In May 2021, the EEOC issued guidelines addressing the COVID-19 vaccines and rights and obligations of employers, titled "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws – Technical Assistance Questions and Answers" (hereafter "EEOC COVID-19 Guidance"). The EEOC COVID-19 Guidance provides "examples of reasonable accommodations or modifications that employers may have to provide to employees who do not get vaccinated due to disability; religious beliefs, practices, or observance; or pregnancy." Reasonable accommodations the EEOC has identified as potentially not imposing an undue hardship on the employer include requiring the unvaccinated employee entering the workplace to:

(1)     wear a face mask,

(2)     work at a social distance,

(3)     work a modified shift,

(4)      get periodic tests for COVID-19,

(5)      be given the opportunity to telework, or

(6)      accept a reassignment.

*EEOC COVID-19 Guidance*, K.2.

894.   For some 20 months Ascension Health has had the opportunity to test many relevant accommodations in the hospitals in which Plaintiffs are employed, including daily assessments of personal health and potential exposure, availability of targeted COVID-19 testing, protocols requiring non-work when symptomatic or potentially exposed to COVID-19, contact tracing, handwashing and hygiene, use of PPE, including masking (such as N-95 masks in appropriate circumstances), face shields, gowns, and disposable gloves as required under the circumstances.

895.   In addition, there are other accommodations that are potentially available. For instance, the EEOC has specifically identified testing of employees before they enter the workplace. The *EEOC COVID-19 Guidance* states, "an employer may choose to administer COVID-19 testing to employees before initially permitting them to enter the workplace and/or periodically to determine if their presence in the workplace poses a direct threat to others." *EEOC COVID-19 Guidance*, A.6.

896.   Before summarily rejecting Plaintiffs' requests for religious exemptions Ascension Health was required to *analyze* the potential available accommodations in a real-world context. Had it done so, it would have found accommodations that would eliminate undue hardship. Therefore, Ascension Health's assertion that

undue hardship exists justifying denial of Plaintiffs' religious exemption requests is in error.

897.   Ascension Health's and/or Ascension Entities action of bringing thousands of unvaccinated employees back to work demonstrates that there existed means of accommodating Plaintiffs' requests for religious exemptions on or about (and before) November 12, 2021, which was the day Plaintiffs were placed on unpaid suspension.

898.   Plaintiffs lost substantial wages as a result of Ascension Health and/or Ascension Entities not granting them religious exemptions and instead placing them on unpaid suspension.

899.   Ascension Health's and/or Ascension Entities' failure to grant religious exemptions as required by Title VII resulted in injury to Plaintiffs and others similarly situated, including, but not limited to:

    (a)    Suspensions without pay, in most instances lasting for six weeks or more;

    (b)    Deterioration in job skills;

    (c)    Lost bonus pay;

    (d)    Lost seniority;

    (e)    Loss of preferential shifts and other adverse impacts on working conditions;

    (f)    Loss of wages; and

    (g)    Extreme stress and anxiety.

900.   In some instances, the refusal of religious exemptions led to employees, including some Plaintiffs, receiving vaccines against their religious beliefs. In all

instances, the refusal of religious exemptions led to the employee's job being placed in jeopardy with associated stress, anxiety and emotional trauma.

901.   AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend have been further harmed by not being recalled to work, which has cost them additional wages.

902.   St. Vincent Health is fully responsible for the discriminatory conduct of Ascension Health because St. Vincent Health permitted Ascension Health to handle vaccination procedures and the religious exemption process in relation to St. Vincent employees.

903.   Plaintiffs have filed charges with the EEOC complaining of these discriminatory and unlawful actions on a class wide basis.

904.   Wherefore, Plaintiffs request that the Court grant them the relief requested in their prayer for relief below.

## COUNT IV

**Breach of Written Employment Contracts—Against St. Vincent Health**

**On behalf of Plaintiffs AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, ANP Weisend and others similarly situated**

905.   Plaintiffs restate the foregoing paragraphs as if fully set forth herein.

906.   AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend have valid written contracts of employment with St. Vincent Health containing "for cause" termination provisions.

907.   With respect to compliance with employer policies, Appendix E-3.2(h) of the respective employment contracts of CNM Monte, NP Stafford, and

PA-C Thiergartner authorize "for cause" termination upon "repeated failure or refusal after ten (10) days' notice and an opportunity to cure, to comply with any *reasonable written Policy(ies) of Employer*." Appendix E-3.2(h) (emphasis added).

908.   The term "Policies of Employer" or "Policies" is expressly defined by Article 1.1 of the employment contracts of CNM Monte, NP Stafford, and PA-C Thiergartner to "mean the personnel policies and other written policies, practices, and procedures of Employer and/or St. Vincent Health, Inc. (the "Health Ministry") and the bylaws and rules of the medical staff(s) of all hospitals and facilities where Provider has privileges."

909.   With respect to compliance with employer policies, Appendix E-4.2(i)-(j) of the respective employment contracts of AGACNP-BC Maupin and ANP Weisend authorize "for cause" termination upon "repeated failure or refusal to comply with any *written Policy(ies) of Employer*" only "after notice of the same and failure to cure such breach within ten (10) days." Appendix E-4-2(i)-(j). (emphasis added).The term "Policies of Employer" or "Policies" is expressly defined by Article 1.1 of the employment contracts of CNM Monte, NP Stafford, and PA-C Thiergartner to "mean the personnel policies and other written policies, practices, and procedures of Employer and/or St. Vincent Health, Inc. (the "Health Ministry") and the bylaws and rules of the medical staff(s) of all hospitals and facilities where Provider has privileges."

910.   The term "Policies of Employer" or "Policies" is expressly defined by Article 1.1 of the employment contracts of AGACNP-BC Maupin and ANP Weisend

to "mean the personnel policies and other written policies, practices, and procedures of Employer, AMG, and/or St. Vincent Health, Inc. (the "Health Ministry") and the bylaws and rules of the medical staff(s) of all hospitals and facilities where Provider has privileges."

911.   The term "Policies of Employer" or "Policies" does not include policies of Ascension Health.

912.   The term "Employer" is defined in the introductory paragraph of St. Vincent's standard employment contracts, including those entered into with AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend.

913.   The contracts of AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend do not authorize suspension without pay.

914.   However, on November 12, 2021, St. Vincent Health placed AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend on suspension without pay and stopped paying them in violation of their written employment contracts.

915.   As a result of the suspension without pay breach of their employment contracts AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend lost a minimum of six (6) weeks' wages.

916.   NP Stafford continued to lose additional wages as she continues to be on suspension without pay and has not been given final written notice of purported termination by St. Vincent until their effective termination dates.

917.   On January 26, 2022, St. Vincent sent CNM Monte a Notice of Administrative Suspension informing her that she was "in violation of Hospital Policy and all of your privileges are administratively suspended, effective immediately" (the "Notice of Administrative Suspension). The Notice of Administrative Suspension is submitted as Exhibit 126 in Plaintiffs' Appendix of Exhibits, and this Notice of Administrative Suspension is incorporated herein by reference as if fully set forth.

918.   In CNM Monte's Notice of Administrative Termination, it states:

> Ascension announced a COVID-19 vaccination requirement on July 27, 2021 (the "Vaccine Requirement") which required you to be vaccinated against COVID-19 and submit documentation of your vaccination status no later than November 12, 2021, or be approved for a medical or religious exemption. All Ascension hospitals have since adopted a policy that requires associates and credentialed providers and medical staff members to be vaccinated for the safety of patients and visitors, staff, and the community. Additionally, the federal government is now requiring health care workers at participating Medicare and Medicaid facilities to be vaccinated.
>
> Several communications were sent to you regarding the Vaccine Requirement. As of today, you have not submitted documentation of your COVID-19 vaccination status or received approval for an exemption.
>
> **Consequently, you are in violation of Hospital Policy and all of your privileges are administratively suspended, effective immediately**. Of note, as this suspension is administrative in nature and not a professional review action, this suspension will not be reported to the National Practitioner Data Bank (NPDB) or state licensing agency.

919.   On November 19, 2021, St. Vincent sent AGACNP-BC Maupin, NP Stafford, PA-C Thiergartner, and ANP Weisend a Notice of Breach of Employment Agreement purporting to initiate the ten-day notice period for

termination of their written employment contracts with St. Vincent (the

"Termination Notice"). The Termination Notices are submitted as Exhibits 126-129

in Plaintiffs' Appendix of Exhibits, and the Termination Notices are incorporated

herein by reference as if fully set forth.

920.    AGACNP-BC Maupin, NP Stafford, PA-C Thiergartner, and

ANP Weisend's Termination Notice states:

> As you know, *Ascension announced* a COVID-19 vaccination
> requirement on or about July 27, 2021 (the "Vaccine
> Requirement") which required you to be fully vaccinated against
> COVID-19 and submit documentation of your vaccination status
> no later than November 12, 2021 or be approved for an
> exemption by this same date.
>
> You have not submitted documentation of your COVID-19
> vaccination status or been approved for an exemption as of
> today. We are writing to notify you that you are in breach of the
> Agreement ***for failure to comply with Ascension policies.***
> You are administratively suspended without pay as of today and
> will remain on an unpaid suspension until you have complied
> with the Vaccine Requirement or your employment is
> terminated.

(emphasis added).

921.    It is clear from the face of the Notice of Administrative Suspension and

Termination Notices that St. Vincent Health is in breach of its written contracts

with NP Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, ANP Weisend.

922.    The written employment contracts of CNM Monte, NP Stafford, and

PA-C Thiergartner do not permit suspension or termination based on alleged non-

compliance with "Ascension Health policies." Rather, their written employment

contracts provide that CNM Monte, NP Stafford, PA-C Thiergartner can only be

terminated after written notice for non-compliance "with any *reasonable written Policy(ies) of Employer*."

923.   Further, the written employment contracts of AGACNP-BC Maupin and ANP Weisend do not permit suspension or termination based on alleged non-compliance with Ascension Health policies." Rather, their written employment contracts provide that AGACNP-BC Maupin and ANP Weisend can only be termination after written notice for non-compliance with "any *written Policy(ies) of Employer.*"

924.   AGACNP-BC Maupin, CNM Monte, NP Stafford, PA-C Thiergartner, and ANP Weisend' s employer is St. Vincent Health, and they have not entered into an employment contract with Ascension Health, therefore, pursuant to their written contracts with St. Vincent they cannot be suspended or terminated for allegedly not complying with "Ascension Health policies".

925.   Nor can they be suspended without pay under the plain terms of the contracts.

926.   Further, Ascension Health's "Vaccine Requirement" alleged in the Termination Notices is not set forth in a written policy provided to St. Vincent Health employees. Ascension Health issued letters, press releases, Q&As and other information about "associates" taking the Covid-19 vaccines, however, Plaintiffs are unaware of a written policy issued by Ascension Health on the topic.

927.   Third, even if Ascension Health's Covid-19 practices are applicable to CNM Monte, NP Stafford, and PA-C Thiergartner, they are not "reasonable"

policies and were not administered reasonably as required by their written employment contracts.

928.    The manner in which religious exemptions for St. Vincent Health employees have been administered has not been reasonable.

929.    For example, discriminating against the unvaccinated with religious objections and terminating them, while permitting others who are unvaccinated, such as those with medical exemptions, to continue to care for patients is not reasonable.

930.    It is also not reasonable to ignore the natural immunity of those who have previously recovered from COVID-19.

931.    Nor is it reasonable to ignore the substantial evidence that vaccination will not materially change the risk of transmission of COVID-19 in healthcare facilities and yet refuse religious exemptions to the COVID-19 vaccines on the ground that failure to receive the vaccines increases risks to patients and the workplace.

932.    AGACNP-BC Maupin was given final written notice of termination by St. Vincent as specified in section E-4.2 of his Employment Agreement. However, that notice was invalid to terminate her contract as explained above. Therefore, St. Vincent continues to be in breach of AGACNP-BC Maupin's Employment Agreement which has not been properly terminated for any valid reason.

933.    CNM Monte was given final written notice of termination by St. Vincent as specified in section E-3.2 of her Employment Agreement. However,

that notice was invalid to terminate her contract as explained above. Therefore, St. Vincent continues to be in breach of CNM Monte's Employment Agreement which has not been properly terminated for any valid reason.

934.   NP Stafford was not given written notice of termination by St. Vincent as specified in Section E-3.2 of her Employment Agreement. Therefore, St. Vincent continues to be in breach of NP Stafford's Employment Agreement, which has not been properly terminated.

935.   Furthermore, NP Stafford has been kept on unpaid suspension since November 12, 2021, in violation of her written employment contract with St. Vincent Health.

936.   Regarding ANP Weisend, while St. Vincent purports that it was due to a reduction in force, on information and belief, there was no reduction in force and this was not an accurate reason for ANP Weisend's termination. Therefore, St. Vincent continues to be in breach of ANP Weisend's Employment Agreement.

937.   AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend have suffered lost wages and other injuries as a result of the foregoing wrongful breaches of their written employment contracts.

938.   AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend continue to be damaged by St. Vincent Health's refusal to pay them wages due under their Employment Agreement which has not been properly terminated.

939.   PA-C Thiergartner was recalled.

940.     AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend lost the opportunity to continue to practice medicine during the period of their purported suspension without pay which resulted in a deterioration of their skills, a loss of experience, and a loss of seniority which has had a detrimental impact on their careers.

941.     AGACNP-BC Maupin, CNM Monte, NP Stafford, and ANP Weisend continue to be further damaged by St. Vincent Health's refusal to allow them to practice medicine at St. Vincent Hospital as required by their Employment.

942.     Wherefore, Plaintiffs request that the Court grant them the relief requested in their prayer for relief below.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff requests that the Court grant the following relief:

1.    Certify this action as a class action under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

2.    Certify at least three (3) subclasses: (1) employees who sought religious accommodations and were placed on unpaid suspension as a result of not receiving a COVID-19 vaccine and were later asked to return to work but not paid all wages lost as a result of being placed on unpaid suspension; (2) employees of St. Vincent Health with written employment contracts who were denied religious exemptions to Ascension Health's vaccine mandate and were suspended and/or terminated by St. Vincent Health for not receiving a COVID-19 vaccine and/or who received notice from St. Vincent Health or Ascension Health that their employment would be suspended or terminated if they did not receive a COVID-19 vaccine because their application for religious exemption was denied; and (3) employees of Ascension Entities without a written employment contract who were denied religious exemptions to Ascension Health's vaccine mandate and were suspended and/or terminated by Ascension Entities for not receiving a COVID-19 vaccine and/or who received notice from Ascension Health

206

and/or Ascension Entities that their employment would be suspended or terminated if they did not receive a COVID-19 vaccine because their application for religious exemption was denied.

3.    Declare that Ascension Health and the Ascension Entities have violated Title VII by failing to properly assess whether the requested accommodations to its COVID-19 vaccine mandate sought by Plaintiffs satisfy the "undue burden" threshold;

4.    Declare that Ascension Health and the Ascension Entities have violated Title VII by discriminating against employees who have sought religious exemptions to the vaccine mandate by failing to provide reasonable accommodations to Ascension Health's COVID-19 vaccine mandate;

5.    Declare that Ascension Health and the Ascension Entities have violated Title VII by retaliating against employees who engaged in protected activity;

6.    Declare that Ascension Health and the Ascension Entities Vincent violated Title VII by suspending without pay employees who sought religious exemptions and did not receive COVID-19 vaccination;

7.    Declare that St. Vincent Health has breached written contracts with its employees by suspending and/or terminating them for not complying with Ascension Health's vaccination mandate.

8.    Declare that St. Vincent Health has breached written contracts with these employees by suspending them without pay, a remedy not provided for in the contracts.

9.    Declare that St. Vincent Health did not adopt a written vaccination policy.

10.    Declare that St. Vincent Health's administration of any vaccination policy was unreasonable.

11.    Enter injunctive relief providing for one or more of the following:

(a)    Granting Plaintiffs' request for religious exemptions to the COVID vaccines;

(b)    Removing from each Plaintiff's personnel file any reference to any suspension, discipline or termination for cause;

(c)    Invalidating any Plaintiff's covenant not to compete with any Ascension Entity;

(d)     Reinstating each Plaintiff to a position that is comparable or better than the position they occupied on or about November 12, 2021 (including, but not limited to, in terms of hours, pay, seniority, benefits, shifts and other incidents of employment; and/or

(e)     Any other injunctive relief necessary to afford any Plaintiff full relief.

12.     Award Plaintiffs, and those similarly situated, damages, including lost wages due to unpaid suspension, lost wages due to wrongful discharge or constructive discharge, back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental and emotional distress, suffering and anxiety, reductions in wages, expenses costs and other damages due to Defendant's wrongful conduct.

13.     Award Plaintiffs reasonable attorneys' fees and costs; and

14.     Grant any other relief that the Court deems just, proper, and equitable.

15.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all issues upon which there is a federal right to a jury trial.

Dated: May 27, 2022

Respectfully Submitted,

**KROGER, GARDIS & REGAS, LLP**

/s/ William Bock, III
William Bock, III, Atty. No. 14777-49
Adam R. Doerr, Atty. No. 31949-53
Allyse E. Wirkkala, Atty. No. 31815-49

ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-900